# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUE LAKE FOREST PRODUCTS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 01-570C Judge Williams |
| TIMBER PRODUCTS COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 01-627C Judge Williams |
| CLR TIMBER HOLDINGS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 04–501C Judge Williams |

## DEFENDANT'S RESPONSE TO "NOTICE OF SUBSEQUENT EVENTS"

Defendant, the United States, respectfully responds to plaintiffs' February 7, 2007 "notice of subsequent events." For the reasons set forth below, the documents relied upon by plaintiffs do not provide support for their assertion that the Government has waived attorney-client privilege.[1]

---

[1] Plaintiff's Notice of Subsequent Events is cited, "Pl. Not. __". References are to page numbers. "A__" refers to defendant's appendix, a copy of which is attached to this brief.

The attorney-client privilege "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." Genentech, Inc. v. United States Int'l Trade Comm'n., 122 F.3d 1409, 1415 (Fed. Cir. 1997); see also Shearing v. Iolab Corp., 975 F.2d 1541, 1546-47 (Fed. Cir. 1992). It protects communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice. American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 745 (Fed. Cir. 1987). The advice provided by counsel to the client is privileged to the extent it discloses, directly or indirectly, what the client told the lawyer. Id.

The work product doctrine protects documents and tangible things prepared in anticipation of litigation or for trial by a party or its representative. See Hickman v. Taylor, 329 U.S. 495, 511-12 (1947); Sparton Corp. v. United States, 44 Fed. Cl. 557, 564 (1999). "[A] waiver of work product protection encompasses only the items actually disclosed . . . [and] does not imply that work product protection has been destroyed for other documents of the same character." Sparton Corp. v. United States, 44 Fed. Cl. 557, 565 (Fed. Cl. 1999) (quoting 6 James Wm. Moore, Moore's Federal Practice § 26.70[6][c] at 26-228 (3d ed.1997)). Thus, "broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to [Fed. R. Civ. P.] 26(b)(3)." Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1222-23 (4th Cir.1976); K.W. Muth Co. v. Bing-Lear Mfg. Group, L.L.C., 219 F.R.D. 544, 567 (E.D. Mich 2003) ("There appears to be substantial authority for the proposition that a waiver of the attorney work product privilege as to particular documents does not extend to other documents addressing the same subject matter.").

Plaintiffs' current submission deals solely with the alleged waiver of the attorney-client privilege. The waiver issue previously has been exhaustively briefed in connection with

plaintiffs' pending motion and will not be repeated here. As a initial matter, we note that the documents in question do not appear to constitute communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice, see American Standard, 828 F.2d at 745, nor do they constitute advice provided by counsel to the client that discloses what the client told the lawyer. Id. Therefore, the production of those documents does not result in a subject matter waiver of the attorney-client privilege. Below, we discuss each of the alleged documents upon which plaintiffs have based their latest filing and demonstrate that those documents do not provide grounds for finding a waiver of the attorney-client privilege.[2]

1. Deposition Exhibit 31. This exhibit includes a fax cover sheet sent to a number of individuals – including two individuals that plaintiffs identify as attorneys – and a draft report. The draft report states that it is a pre-decisional working document not subject to FOIA. The report is technical in nature and contains much historical information. It clearly appears not to have been written by an attorney and plaintiffs have not asserted that the document independently constitutes an attorney-client communication. Rather, it appears that plaintiffs' waiver argument is based upon the fax cover sheet transmitting the document. See Pl. Not. 6. However, the fax cover sheet contains little substantive discussion, except to describe, in a general way, what is contained in the report. Plaintiffs have failed to demonstrate that the production of what amounts to a transmittal cover sheet briefly describing a complex technical report constitutes a subject matter waiver regarding privileged attorney-client communications in this case. Moreover, the

---

[2] For ease of reference, the numbering contained in this brief corresponds to that contained in plaintiffs' submission.

mere fact that certain of the recipients of the draft were attorneys does not make the draft subject to attorney-client privilege.

2. Deposition Exhibit 35A. This exhibit includes a fax cover sheet from Sue Zike, transmitting a draft letter (also included) from the Department of Justice to Michael Axline, the attorney for plaintiff in Oregon Natural Resources Council v. United States Forest Service, 59 F. Supp.2d 1085 (W.D. Wa. 1999) ("ONRC Action"). Also included is a memorandum dated July 28, 1999 from Forest Service counsel to two regional foresters.

A. The fact that the draft letter to Mr. Axline was produced in discovery does not constitute a subject matter waiver. The July 31, 1998 draft is an earlier version of an August 3, 1998 letter sent to Mr. Axline. See Aug. 3, 1998 letter, A1. The August 3, 1998 letter is not subject to the attorney-client privilege because it was provided to a party outside of the Government. Moreover, a comparison of the draft and final versions of the letters reveals that the substance of those letters essentially is the same, although some of the wording has been slightly altered, and certain relatively minor revisions or corrections have been made. A1-A4. Because the draft letter merely discloses information otherwise not privileged – indeed information that was conveyed to a third party within a few days – there has been no waiver of the attorney-client privilege.

B. Similarly, production of the fax cover sheet does not constitute a waiver. The fax cover sheet does not appear to disclose any information disclosed by a client to an attorney for the purpose of obtaining legal advice. American Standard, 828 F.2d at 745. Indeed, the main substantive disclosure in the cover sheet – that officials from two national forests were willing to notify bidders before bid opening – has little relevance and is routine information that could be

ascertained by simply asking the appropriate officials whether, as of a certain date, they were willing to notify bidders prior to bid opening of the subject information. Similarly, the other substantive information disclosed, that there presently was no reason to plan on delaying award of the sales, also could be ascertained by asking the appropriate officials whether, as of a certain date, they had any plans to delay awarding the sales. Finally, the reference to the last sentence of the first paragraph on the second page of the draft letter refers to the following statement: "In the interest of facilitating settlement discussions, the Forest Service is prepared to notify bidders of the three timber sales scheduled for auction in August that these timber sales have been identified in connection with this lawsuit." That identical language is contained in the final version of the letter that was sent to Mr. Axline. The remainder of the information in the cover sheet is non-substantive in nature (e.g., transmittal information and notice that a meeting is being held), the disclosure of which does not constitute a waiver.

C. Production of the July 28, 1998 memorandum from Department of Agriculture counsel to two regional foresters likewise does not waive attorney-client privilege. The memorandum was sent to transmit two unprivileged letters received from Mr. Axline. The first paragraph of the memorandum merely describes the substance of the two unprivileged letters. The second paragraph requests that certain information be provided by a certain date, but does not reveal any otherwise privileged information. The third paragraph simply instructs the recipients of what information should be provided to prospective timber sale bidders. Given that the information was something that was intended to be provided to parties outside of the Government, the fact that a Government attorney was reminding Forest Service officials not to forget to provide the information does not constitute a subject matter waiver. The fourth

paragraph of the letter merely concerns staffing issues. In sum, none of the information in the memorandum constitutes "communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice." American Standard, 828 F.2d at 745.

3. Deposition Exhibit 35B. This exhibit consists of a fax cover sheet from the Department of Justice to Sue Zike, dated August 27, 1998, transmitting correspondence from Mr. Axline to the Department of Justice and the attachments to Mr. Axline's correspondence (i.e., lists of timber sales). Obviously, the letter from Mr. Axline, who represented the plaintiffs in the ONRC Action, and its attachments, do not constitute an attorney-client communication. Therefore, plaintiffs' waiver assertion must be focused upon the fax cover sheet. The waiver assertion must fail, however, because the cover sheet contains virtually no substantive information. Indeed, the only information contained in the cover sheet is that the unprivileged documents are being transmitted, that Ms. Zike's presence is requested at a meeting to discuss the letter, and a vague, difficult to read inquiry regarding the status of what may be a timber sale.

4. Deposition Exhibit 41A. This exhibit consists of two emails prepared by Sue Zike. Neither email contains any legal analysis or substantive legal advice. Further, plaintiffs appear to be relying upon the fact that they were authored by Sue Zike, the litigation coordinator for the Pacific Northwest Region, who happens to be an attorney. However, Ms. Zike was not acting as an attorney in an advice-giving role, nor was she representing the Forest Service in the ONRC Action. Further, although the two emails were prepared in connection with the ONRC Action, as noted above, "broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to [Fed. R. Civ. P.] 26(b)(3)." Duplan Corp., 540 F.2d at 1222-23; K.W. Muth Co., 219 F.R.D. at 567 ("There

appears to be substantial authority for the proposition that a waiver of the attorney work product privilege as to particular documents does not extend to other documents addressing the same subject matter."). Therefore, the disclosure of the two documents does not constitute a subject matter waiver. Further, as set forth below, the information disclosed in the documents is narrow and administrative in nature.

A. The first email describes court proceedings, apparently in the ONRC Action. The email reveals the fact that the parties entered into a briefing schedule; it discusses the terms of a stipulation entered into by the parties; it describes a chart apparently related to the stipulation provision requiring 10 days notice of a decision to award a sale; and it notes that a 10-day letter would be sent to the ONRC Action plaintiffs regarding two timber sales. This information presumably is part of the public record in the ONRC Action. Therefore, the underlying information is not privileged and the disclosure of an email containing that information does not constitute a waiver. The email also provides very generalized instructions regarding the need to compare the issues in the appeal of the sale to those in the ONRC Action amended complaint. Disclosure of that statement does not constitute a subject matter waiver because the instructions relate solely to administrative matters, do not provide substantive legal advice, and do not reveal the substance of a confidential communication from a client to an attorney. Further, as noted above, disclosure of work product does generally does not result in a broad subject matter waiver. Similarly, the statement that the agency must assure the Department of Justice that it has a strong defense on sales that the agency intends to award, and that the Department of Justice is not asking to be part of the award decision, is itself unremarkable and does not constitute a

waiver. Finally, the statement that the "sale list" is not to be distributed outside of the agency reveals no information protected by the attorney-client privilege.

B. The second email discusses matters related to the ONRC Action, including assertions apparently being made by the plaintiffs in that case. The email also discusses a request for information by the Department of Justice, and states that the information needs to be provided promptly. The information requested is routine, e.g., sales that have been awarded or that the Forest Service intends to award. Finally, the email contains the author's speculation about whether there may be delays in some awards or in the start of operations. This email generally is concerned with administrative matters and obtaining information. It does not contain the type of information that would result in a waiver of the attorney-client privilege.

5. Deposition Exhibit 41D. This exhibit is an email from Sue Zike to a Forest Service contracting officer. Although plaintiffs claim that the email contains "legal advice," the subject matter is unremarkable. Essentially, the email attempts to resolve some confusion over whether certain timber sales were "at risk." The "legal advice" provided is that the agency should abide by a representation apparently made to the court in a stipulation in the ONRC Action. See Zike Deposition at 47, lines 1-9. Plaintiffs have made no showing that a broad subject matter waiver of attorney-client privilege should result from the disclosure of routine advice that contracting personnel should comply with representations made to others in court proceedings, let alone demonstrated the scope of such alleged waiver.

It appears that, in appropriate, and extreme, circumstances, a court may recognize an "at issue waiver" of attorney work product protection. See, e.g., Windbond Electronics Corp. v. International Trade Commission, 262 F.3d 1363, 1375-76 (Fed. Cir. 2001), corrected on other

grounds, 275 F.3d 1344 (affirming International Trade Commission finding that appellant waived work product protection and attorney-client privilege relating to inventorship of a patent by expressly relying upon an attorney's statement as a "central part" of appellant's effort to obtain a certificate of correction and then using that certificate to convince the commission to reconsider the enforceability of the patent). However, for the reasons stated in our opposition to plaintiffs' revised motion to compel and at the hearing on December 3, 2004, and above, an at issue waiver should not be applied here.

**CONCLUSION**

In sum, plaintiffs' attempt to rely upon the additional documents submitted with its motion to further support its assertion that there has been a subject matter waiver regarding the attorney-client privilege should be rejected and its motion should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

***s/Kathryn A. Bleecker***
KATHRYN A. BLEECKER
Assistant Director

***s/Richard P. Schroeder***
RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-7788
Attorneys for Defendant

February 26, 2007

U.S. Departme f Justice

Environment and Natural Resources Division

EAB
90-1-4-09179

*General Litigation Section*
*P.O. Box 663*
*Washington, DC 20044-0663*

*Telephone (202) 305-0504*
*Facsimile (202) 305-0506*

August 3, 1998

Michael Axline
Western Environmental Law Center
1216 Lincoln Street
Eugene, OR 97401

Via Fax: 541-485-2457

Re: ONRC v. Forest Service, Civ. No. C98-942WD

Dear Michael:

This is in response to your letters of July 27 and 28, 1998, which identified 32 timber sales that your clients believe do not comply with the Northwest Forest Plan and are scheduled for auction before a settlement meeting can be arranged. There appears to be a significant discrepancy between the timber sale information that you provided and the agency information. In the interest of settlement, and subject to Rule 408 of the Federal Rules of Evidence, we are providing the following information. Further, we propose a meeting during the week of August 17, 1998, to discuss your complaint, your concerns regarding these timber sales and your clients' settlement proposal.

Of the seven BLM timber sales identified, it appears that three BLM timber sales have been auctioned but not yet awarded. (See timber sale list attached) One of these sales, North Murphy has been appealed and the award withheld pending a decision on the stay request portion of the appeal. West Botkin was protested and the protest denied but there has been no appeal as of today. There was no appeal of Slippery Moose and the award is pending. The four remaining timber sales will not reach an auction date until after the week of August 17, allowing time to reconsider that auction in light of a meeting. In the interest of facilitating settlement discussions, the BLM is prepared to postpone the award of the identified timber sales through the week of August 17, 1998. Further, consistent with agency practice, BLM will notify bidders on the three timber sales scheduled for auction in August that these timber sales have been identified in connection with this lawsuit.

Of the 25 Forest Service timber sales identified, three are scheduled for auction in late August and only Lois is scheduled for auction during the week of August 17. However, timber sales

that you refer to as "L. Horse Peak" and "Yaka Guard" may refer to sales that have been auctioned or awarded. Aside from these five sales, the remaining sales should not interfere with a meeting during the week of August 17 either because no final decision has been made, any advertisement or auction would occur later, or the Forest Service has no current plans to offer the timber for sale. In the interest of facilitating settlement discussions, the Forest Service is prepared to notify bidders on the three timber sales scheduled for auction in August that these timber sales have been identified in connection with this lawsuit.

Please confirm that we have identified the relevant timber sales and an appropriate week for settlement discussions. In order for us to have a productive meeting, we request that you provide us with a settlement offer by August 10, 1998. This will allow the Forest Service and BLM sufficient time to provide a carefully considered response. Please contact John Watts at 202-305-0495 if you have any questions regarding this matter before August 10, 1998.

Sincerely,

Edward A. Boling
John Watts
Trial Attorneys

cc: Owen Schmidt
Roger Nesbit
Robert Simmons

Bureau of Land Management

| Sale | District | Status |
|---|---|---|
| Deer Mom | Medford | In 15 day protest period beginning with advertisement on 7/29/98. Auction on 8/27/98. |
| Bummer Swamp 1 | Salem | In 15 day protest period beginning with advertisement on 7/31/98. Auction on 8/26/98. |
| Jones 25 | Coos Bay | Advertisement on 8/6/98 will begin 15 day protest period. Auction on 8/28/98. |
| Remote Control | Coos Bay | Advertisement on 8/6/98 will begin 15 day protest period. Auction on 8/28/98. |
| North Murphy | Medford | Sold, award withheld pending resolution of IBLA appeal. |
| Slippery Moose | Salem | Sold 7/29/98, award pending. |
| West Botkin | Salem | Sold 7/29/98, award pending. |

Forest Service

| Sale | Forest | Status |
|---|---|---|
| Lois Timber Sale | Willamette | Auction scheduled for 8/19/98, award 30 to 60 days after auction. |
| Lost Creek Thin | Umpqua | Auction scheduled for 8/26/98, award 5 days after auction. |
| Heli-Tower | G.Pinchot | Advertised 7/31/98 for auction 8/31/98. |
| Little River Demo | Umpqua | In NMFS consultation, no decision date. |
| Jefferson Heli | Klamath | In NEPA review, no decision has been made. |
| Upper South Fork Salmon | Klamath | Advertisement 9/7/98 for auction 10/7/98 and award up to 30 days after auction. |
| Collins Hazard | Klamath | Decision due on 9/10/98, advertise on 9/14/98 for auction 9/29/98 and award up to 30 days after auction. |
| Jolt Heli Salvage | Klamath | Decision due on 9/10/98, advertise on 9/14/98 for auction 9/29/98 and award up to 30 days after auction. |
| Jack Heli | Klamath | In appeal period. If no appeal, advertise on 8/25/98 for auction on 9/22/98 and award up to 30 days after auction. |
| Little Horse Research | Klamath | Awarded 6/15/98. |

| | | |
|---|---|---|
| Blue Canyon YG Thin | Klamath | Advertisement planned for 2/99, auction 3/99, award 4/99. |
| Bars | Mt. Hood | 3/13/98 decision, appeal denied 7/6/98. No advertisement date. |
| Batwing | Mt. Hood | 3/16/98 decision, appeal denied 7/6/98. No advertisement date. |
| Bear Cub | Mt. Hood | 3/16/98 decision, appeal denied 7/6/98. No advertisement date. |
| Burnt Granite | Mt. Hood | 7/19/93 decision, no advertisement date. |
| Misc. Salvage | Mt. Hood | No such sale. This has been removed from 6 month list. |
| Bonanza II | Mt. Hood | 5/24/93 decision, no advertisement date. |
| Break | Mt. Hood | 12/23/93 decision, no advertisement date. |
| Mt. Defiance | Mt. Hood | 7/20/98 decision, still in appeal period. No advertisement date. |
| Ringo | Mt. Hood | 6/27/96 decision. No advertisement date. |
| Solo | Mt. Hood | In NEPA comment period, no decision has been made. |
| Tarzan | Mt. Hood | In NEPA comment period, no decision has been made. |
| Abbott Salmon | Mt. Hood | No such timber sale. Plaintiffs may mean Abbott Road or Salmon Curves: |
| Abbott Road | Mt. Hood | Advertised 7/27/98 for auction 9/11/98. |
| Salmon Curves | Mt. Hood | No advertisement date. |
| Yaka Guard | Mt. Hood | No such timber sale. Plaintiffs may mean Yaka or Yaka 22/23: |
| Yaka | Mt. Hood | Awarded 5/15/98. |
| Yaka 22/23 | Mt. Hood | Auctioned 7/17/98, award pending. |
| Cowpoke | Mt. Hood | No advertisement date. |

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 26th day of February 2007, a copy of the foregoing **DEFENDANT'S RESPONSE TO "NOTICE OF SUBSEQUENT EVENTS"** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Richard P. Schroeder