# In the United States Court of Federal Claims

**Nos. 01-570C, 01-627C, 04-501C**
**(Filed: March 29, 2007)**
**(Not For Publication)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **BLUE LAKE FOREST PRODUCTS, INC.,** | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **THE UNITED STATES,** | * |
| **Defendant.** | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **TIMBER PRODUCTS COMPANY,** | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **THE UNITED STATES,** | * |
| **Defendant.** | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **CLR TIMBER HOLDINGS, INC.** | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **THE UNITED STATES,** | * |
| **Defendant.** | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

_____

## MEMORANDUM OPINION AND ORDER
## BASED UPON <u>IN CAMERA</u> REVIEW

_____

<u>**WILLIAMS**</u>, **Judge**

This discovery dispute involves privilege claims by the Government which required the Court to review three binders of documents in camera.[1]  Two binders contain documents of the President's Council On Environmental Quality (CEQ) and the third, documents from the Department of Interior (DOI), United States Department of Agriculture (USDA), Forest Service (FS), Bureau of Land Management (BLM), and the Department of Justice (DOJ).[2]

## Privilege Standards

### Attorney-Client Privilege

The attorney-client privilege protects disclosure of confidential communications between a client and his attorney for the purpose of obtaining legal advice.  In re Echostar Commc'ns Corp., 448 F.3d 1294, 1298-1299 (Fed. Cir. 2006) (citing United States v. Zolin, 491 U.S. 554, 562 (1989) and Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)); Genentech, Inc. v. United States ITC, 122 F.3d 1409, 1415 (Fed. Cir. 1997).  Courts recognize the privilege in order to promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law.   See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); XYZ Corp. v. United States, 348 F.3d 16, 22 (1st Cir. 2003).

---

[1] In a companion decision entitled "Opinion and Order Granting Plaintiffs' Revised Motion to Compel in Part" issued this date, the Court found an at-issue waiver of the attorney-client privilege and work-product protection and a subject-matter waiver of the attorney-client privilege. Specifically, the Court determined:

  1)  There has been an at-issue wavier of the attorney-client privilege and work product immunity with respect to 1) documents relating to Defendant's interpretation of the Northwest Plan (NEPA equals implementation) and 2) Defendant's decision to award the timber sales despite developments in the ONRC Action litigation.

  2)  Defendant has waived the attorney-client privilege for the Brouha Memorandum, Deposition Exhibits 31, 35A, 35B, 41A and 41D and all documents on the same subject matter.  The Court defines that subject matter to be: 1) the Government's interpretation and implementation of survey and manage requirements under the Northwest Forest Plan, and 2) the Government's actions in response to the ONRC Action lawsuit regarding timber sales.

[2]  These latter documents are described in Defendant's July 29, 2005 and August 18, 2005 amended "DE" privilege logs; the 155 CEQ documents are described in the CEQ Privilege Log.

Work Product Immunity

The attorney work product protection attaches to documents prepared in anticipation of litigation or for trial by a party or his representative. United States v. Gulf Oil Corp., 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985). The work product rule is set out in Rule 26(b)(3) of the Rules of the Court of Federal Claims (RCFC), which provides in part:

> Subject to the provisions of subdivision (b)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materiels when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

RCFC 26(b)(3).

"Unlike the attorney-client privilege, which protects all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails." Echostar, 448 F.3d at 1301; see also Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 369-70 (D. C. Cir. 2005). Courts "recognize work-product immunity because it promotes a fair and efficient adversarial system by protecting 'the attorney's thought processes and legal recommendations' from the prying eyes of his or her opponent." Echostar, 448 F.3d at 1301 (quoting Genentech, 122 F.3d at 1415).

In assessing whether a document was prepared "in anticipation of" litigation, a court must examine the connection between the creation of the materials and the litigation at issue to determine whether a legally sufficient causal relationship exists between their creation and the prospective litigation. See 6 Moore's Federal Practice § 26.70[1], at 26-208 (Matthew Bender 3d ed. 1998). As the Second Circuit recognized:

> The formulation of the work-product rule . . . cited by the Third, Fourth, Seventh, Eighth and D.C. Circuits, is that documents should be deemed prepared "in anticipation of litigation," and thus within the scope of the Rule, if "in light of the nature of the document and the

3

> factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."

Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024, at 343 (1994)).  The Adlman Court elaborated: "Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within [the protections afforded by the work product doctrine]."  United States v. Adlman, 134 F.3d. at 1202.

Deliberative Process Privilege

The deliberative process privilege falls within the scope of the executive privilege.  Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1306 n.3 (Fed. Cir. 2006); In re Sealed Case, 121 F.3d 729, 745 (D.C. Cir. 1997).  The deliberative process privilege covers documents "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  DOI v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)(quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)).[3]

For a document to fall within the deliberative category of the executive privilege, it must be both pre-decisional and deliberative. Vons Cos., Inc. v. United States, 51 Fed. Cl. 1, 22 (2001).  To qualify as pre-decisional, the information must address matters "antecedent to the adoption of agency policy." Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990) (quoting Jordan v. Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978)).  Additionally, to be deliberative, a document must reflect "the give-and-take of the consultative process," rather than constituting a "body of secret law." Vons, 51 Fed. Cl. at 22 (quoting Coastal States Gas Corp. v. Dep't of Energy, 67 F.2d 854, 866-67 (D.C. Cir. 1980)).

The executive privilege is a qualified one, and can be overcome upon a showing of evidentiary need weighed against the harm that may result from disclosure.  Kaiser, 157 F. Supp. at 946; see Marriott, 437 F.3d at 1307.  In Walsky, the Court stated three requirements for assertion of the privilege:

---

[3]  The deliberative category of the executive privilege was first articulated and adopted by the Court of Claims in Kaiser Aluminum & Chem. Corp. v. United States, 157 F. Supp. 939 (Ct. Cl. 1958).  The Kaiser Court characterized this privilege as an evidentiary privilege and recognized that "the power must lie in courts to determine executive privilege in litigation."  157 F. Supp. at 947. This privilege subsequently has been widely recognized in Federal courts.  CACI Field Servs., Inc. v. United States, 12 Cl. Ct. 680, 686 n.7 (1987) (citing Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.D.C. 1966), aff'd, 384 F.2d 979, cert. denied, 389 U.S. 952 (1967)).

> First, the head of the agency that has control over the requested
> document [or information] must assert the privilege after personal
> consideration. Second, the head of the agency must state with
> particularity what information is subject to the privilege. Third, the
> agency must supply the court with "precise and certain reasons" for
> maintaining the confidentiality of the requested document [or
> information].

Walsky, 20 Cl. Ct. at 320.  Subsequently, the Federal Circuit clarified that "an Agency head may delegate the authority to invoke the deliberative process privilege on the Agency's behalf." Marriott, 437 F.3d at 1307-08.

### Privilege Waiver Standards

In a companion decision this Court held that:

> By voluntarily filing the Brouha Memorandum in the Administrative
> Record of another lawsuit, the Government waived its attorney-client
> privilege for that document and all communications on the same
> subject matter.  The Court reasoned: It is settled in this Circuit that a
> voluntary, intentional waiver of the attorney-client privilege applies
> to all other communications relating to the same subject matter.  Fort
> James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005)

Opinion and Order Granting Plaintiffs' Revised Motion to Compel in Part, slip op. at 21.  However, subject-matter waiver is not broadly applied to the work-product protection or the deliberative process privilege.  The Federal Circuit recently recognized that work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege, only extends to "factual" or "non-opinion" work product concerning the same subject matter as the disclosed work product.  Echostar, 448 F.3d at 1302; see Gen. Elec. Co. v. Johnson, No. 00-5855, 2006 U.S. Dist. LEXIS 64907, at *55-56 (D.D.C. Sep. 12, 2006).  With respect to deliberative process, the District Court for the District of Columbia  recently recognized:  "The concept of subject-matter waiver is almost uniquely a function of the attorney-client relationship.  There is no authority for applying the waiver rule to the deliberative process privilege." Gen. Elec., 2006 U.S. Dist. LEXIS 64907 at * 55-56.  See generally In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997) (release of a document only waives the deliberative process privilege for the document or information specifically released, not for related materials. Marisol v. Giuliani, No. 95 Civ. 10533, 1998 U.S. Dist. LEXIS 3719, at *23 (S.D.N.Y Mar. 23, 1998)).

**The Council on Environmental Quality Privilege Log**

Defendant submitted the declaration of James L. Connaughton, Chairman of the CEQ, with its CEQ Privilege Log, as justification for Defendant's deliberative process, attorney-client, and work-product privilege claims for the CEQ documents. Mr. Connaughton, as CEQ's chairman, has the authority to assert the deliberative process privilege for CEQ. Mr. Connaughton personally reviewed all the documents. Connaughton Dec. ¶¶ 1, 2. Mr. Connaughton states:

> CEQ was established through enactment of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 et seq. ("NEPA"). The purposes of NEPA are to "declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality." 42 U.S.C. § 4321. Under section 204 of NEPA, it is the duty and function of CEQ to, inter alia, review and appraise programs and activities of the Federal Government in light of the policies set forth in NEPA and to make recommendations to the President with respect to the extent to which these programs and activities are contributing to the policies of NEPA. . . .

Connaughton Decl. (Sept. 3, 2004) ¶ 2.

Mr. Connaughton states that the documents for which he is asserting deliberative process privilege "are all pre-decisional . . . . [and] make recommendations and/or express opinions on legal policy matters . . . ." Id. ¶¶ 4 and 6. Mr. Connaughton further states:

> As described, infra, with regard to each document withheld on [the basis of deliberative privilege], these documents reflect deliberations regarding litigation over implementation of the Northwest Forest Plan and proposals for interpretation and amendment of the Northwest Forest Plan. The Northwest Forest Plan was adopted in 1994 to end court injunctions that brought timber production to a standstill by providing an adequate level of habitat protection for old growth forest species and a predictable timber supply for economic stability. . . .

> The documents for which I am asserting the deliberative process privilege also make recommendations and/or express opinions on legal or policy matters. Given the complexity of the legal and policy

6

issues presented in the context of litigation over the Northwest Forest Plan, and the diversity of viewpoints on these issues, there has been a great deal of discussion and deliberation on related legal and policy matters. Various individuals within the Administration have expressed opinions and/or made legal and policy recommendations regarding the implementation of the Northwest Forest Plan. These opinions and recommendations have been considered and weighed in the formulation of the CEQ and Administration policy relating to the Northwest Forest Plan. . . .

In order for CEQ and the Administration as a whole to formulate the most appropriate policies related to the Northwest Forest Plan, officials involved in the process must be able to deliberate amongst themselves as freely and as candidly as possible. Only in such an atmosphere can CEQ receive the honest and unfettered opinions of involved officials so that the most appropriate policy may be developed . . . . Accordingly, CEQ must be allowed to take proper precautions against premature disclosure of recommendations and deliberations in order to foster the free and candid deliberations that are critical to effective policy development.

Id. ¶¶ 4, 6, 7. Mr. Connaughton did not, in his declaration, explain on a document-by-document basis why each was subject to the deliberative process privilege. Rather, he asserted the privilege "globally" for the 155 documents, claiming they were all deliberative in two respects -- 1) reflecting "deliberations regarding litigation over the Northwest Forest Plan" and 2) making recommendations and expressing opinions on the implementation of the Northwest Forest Plan. Id. ¶¶ 3, 4, 6; Revised CEQ Privilege Log.

The documents for which Mr. Connaughton asserts attorney-client and work-product privileges "are located in the files of the General Counsel of CEQ, Dinah Bear, or the Deputy General Counsel of CEQ, Edward A. Boling." Id. ¶ 8. Mr. Connaughton states that "[at] all times, CEQ has kept confidential all documents identified in the [September 2, 2004 privilege log] as attorney-client and/or work-product privileged." Id.

The following are the Court's rulings with respect to the documents listed on Defendant's "Council on Environmental Quality Privilege Log."

    1.    **Document 2: Memorandum, October 6, 1999 - 2 pages**
                **From: P. Coppelman, Principal Deputy Asst. Attorney General**
                **To: George T. Frampton, Acting Chair, CEQ**
                **RE: Litigation Report from Northwest Forest Plant Interagency Steering**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client, work-product.

This document is a two-page memorandum discussing cases and issues currently developing in the Pacific Northwest.

**Ruling**:  The privileges have been waived for only part of the document, paragraph 1 on page 1 entitled ONRC Action v. F.S.& B. L. M., (W.D. Wash).  The remaining paragraphs of this document, i.e., paragraph 2,3,4 beginning on the bottom of page 1 through page 2 are privileged, and the subject matter waiver does not cover these paragraphs.  Therefore, Defendant is directed to provide a redacted version of this document to Plaintiffs.

2.   **Document 4: Draft Agenda Interagency Steering Committee, Pacific Northwest Forest Plan, October 6, 1999 - 3 pages.**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client, work-product.

This document is a draft agenda for the interagency steering committee and contains several topics for discussion.  One sentence in this draft is covered by the subject-matter waiver of the attorney-client privilege which occurred by Defendant's voluntarily disclosure of the Brouha Memorandum and privileged documents in other COFC litigation.  The sentence for which the subject matter waiver occurred relates to the ONRC litigation and is two lines under "II. Litigation Report - Peter Coppleman."  The first two lines discussed the ONRC case, and these two lines need to be disclosed.  The remainder of the document is privileged under the deliberative process privilege and need not be produced.

**Ruling**:  Defendant is directed to produce a redacted version of this page.

3.   **Document 13:  Memorandum from Peter Coppleman to Dinah Bear, September 24, 1999 regarding litigation report for IFC coordinating committee - 3 pages.**

**Privileges Asserted by Defendant:** Deliberative process, attorney-client, work-product.

**Ruling:** Covered by the deliberative process and work-product privileges.

4.   **Document 19: Draft agenda for the ISC meeting, April 30, 1999 - 3 pages with handwritten notes.**

**Ruling:** Covered by the deliberative process privilege.

5.     **Document 22: Memorandum -- 2 pages**
          **From: Ted Boling and John Watts, Trial Attorneys**
          **To: Lois Schiffer, Assistant Attorney General, et al.,**
          **Re: ONRC Action**

**Privileges Asserted by Defendant:** Deliberative process, attorney-client, work-product.

**Ruling:** Covered by the deliberative process privilege.

6.     **Document 26: Memorandum - August 11, 1998**
          **From: Kathleen A. McGinty**
          **To: Ellen Athas, Deputy General Counsel**
          **Re: Northwest Forest Plan, Survey and Manage Provisions for Certain Species**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client, work-product.

3-page memorandum plus 3 pages of questions regarding review/schedule change.

**Ruling**: Covered by deliberative process privilege.

7.     **Document 27: Fax transmitting settlement letter (fax is undated, but letter is dated Nov. 25, 1998.**
          **To: Dinah Bear, et al**
          **From: Ted Boling**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client, work-product and settlement.

**Ruling**: Covered by deliberative process privilege.

8.     **Document 30: E-mail dated January 4, 2001**
          **From: D. Prather**
          **To: S. Odell, R. Nesbitt, O. Schmidt, E. Boling, et al. -- 2 pages.**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

This e-mail is a document fragment regarding the survey and manage response to public comments.

**Ruling**: Covered by deliberative process and attorney-client privileges and work-product protection.

9.      **Document 37: E-mail dated October 24, 2000**
        **From N. Hayes**
        **To: E.A. Boling**
        **Re: Survey and Manage Issues**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

**Ruling**: Covered by the deliberative process, attorney-client and work-product privileges. Not encompassed by waiver.

10.     **Document 46: E-mail dated October 3, 2000**
        **From: G.T. Frampton**
        **To: E.A. Boling**
        **Re: Survey and Manage briefing**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

Comment upon funding and transmitting electronic copy of Survey and Manage briefing which was not attached.

**Ruling**: Covered by the deliberative process and attorney-client privilege, not encompassed by waiver.

11.     **Document 57: E-mail dated October 3, 2000**
        **From: E.A. Boling**
        **To: G.T. Frampton, D. Bear**
        **Re: Survey and Manage briefing, status of S&M, EIS schedule, scheduling of FS briefing of S.J. Lyons**.

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

**Ruling**: Covered by deliberative process privilege and attorney-client privilege, not encompassed by waiver.

12.     **Document 60: E-mail dated October 30, 2000**
        **From: E.A. Boling**
        **To: N. Hayes**
        **Re: Survey and Manage Briefing and ESA Compliance - 1 page**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

**Ruling**: Covered by the deliberative process privilege and the attorney-client privilege, not encompassed by the waiver.

13.     **Document 63: Briefing - SEIS for Amending the Survey and Manage, protection bumper and other litigation measures, standards and guidelines - 20 pages. Missing pages.**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

**Ruling**: Covered by deliberative process privilege.

14.     **Document 64: Chart dated September 15, 2000, entitled Response to Washington Office Review, marked predecisional draft document - not subject to FOIA - 30 pages**.

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

**Ruling**: Covered by the deliberative process privilege.

15.     **Document 65: Notes dated August 22, 2000, entitled Survey and Manage SEIS Washington Office Staff Review - 13 pages. Includes memorandum on Pacific Northwest traffic plan and roadless initiative**.

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

**Ruling:** Covered by the deliberative process privilege.

16.     **Document 69: Questions regarding Northwest's Survey and Manage Program, March 1, 2000 - 2 pages. Questions were asked by D. Bear and S. Kasdin**.

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

**Ruling**: Covered by the deliberative process privilege.

17.     **Document 70: Issued paper, January 19, 2000. Entitled "ISSUE: Northwest Forest Plan Survey and Manage Program and SEIS - 01/19/00 - 1 page. From: DOJ Litigation File**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

**Ruling**: Covered by the deliberative process privilege.

18.     **Document 71: Memorandum dated June 5, 1998 -2 pages.**
        **From: E. Athas, Deputy General Counsel**
        **To: Kathleen A. McGinty, Chair CEQ**
        **cc: D. Bear**
        **Re:  Northwest Forest Plan: Survey and Manage Provisions for Certain Species**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

ONRC's observations on Survey and Manage, dated 4/3/98 containing 3-page fax from Doug Heiken, Western Oregon Field Representative, ONRC, containing 1-page draft dated May 29, 1998, regarding species IV. 9 Liverwort; 1-page draft; analysis of species of proposed change in survey schedule, fungi, alorea;  4/20/98 Questionnaire - 3 pages - excerpts from April 4, 1994 ROD, pages 36-38.  Total 13 pages.

**Ruling**: Covered by the deliberative process privilege.

19.     **Document 73: Decision Memorandum for Secretary, November 19, 1999**
        **From: Mike Dombeck**
        **To: James R. Lyons**
        **Re: (Facsimile regarding survey and manage funding, Northwest Plan - 2 pages).**

**Privileges Asserted by Defendant**: Deliberative process.

Discusses funding options and recommendations.  Unsigned, contains handwritten note, one page attachment.

**Ruling**: Covered by the deliberative process privilege.

20.     **Document 80: Draft paper, containing handwritten date of March 28, 1999 entitled "Assumptions for Survey and Manage Funding Estimates."  3 pages From: The DOJ Litigation File**

**Privileges Asserted by Defendant**: Deliberative process.

Discusses surveys required by Judge Dwyer's ruling.

**Ruling**: This draft is covered by the deliberative process privilege, however, it is overcome by Plaintiffs' need.

21.   **Document 82: Draft dated September 23, 1999, Not for Distribution, for internal review only. Comments from a letter from Jerry Franklin to Rep. Chenoweth - 3 pages. Also contains memorandum dated September 15, 1999 from Jerry Franklin to Chairman Chenoweth regarding statement re the survey and manage provision of the Northwest Forest Plan dated September 15, 1999 - 1 page**.

**Privileges Asserted by Defendant**: Deliberative process, attorney-client and work-product.

These documents are covered by the deliberative process privilege in that they are draft, predecisional, proposed comments on a draft letter.

22.   **Document 84: Memorandum - 1 page.**
      **From: Unknown**
      **Re: Timber sales under a preliminary injunction due to Judge Dwyer's ruling.**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Contains attachments, and charts prepared by Sue Zike listing the timber sales enjoined (2 pages). One page of timber sale information data described as a September 9, 1999 e-mail from Susan Zike to one Stritch, Nancy Green et al regarding FY '99 timber sale information and sales delayed due to Judge Dwyer's ruling.

**Ruling:** To the extent these documents were protected by the attorney-client or work-product privileges, these privileges have been waived by the disclosure of the Brouha Memorandum and deposition exhibits 31, 35A, 35B, 41A and 41D.

Defendant has not demonstrated that these documents are subject to the deliberative process privilege. There is no indication on the documents themselves that they are predecisional or for what purpose the documents were compiled. They are not marked as deliberative or predecisional. The charts were prepared by Sue Zike and appear to be purely factual containing a list of the timber sales which were enjoined on August 2, 1999 and August 26, 1999.

This document also reiterates the Forest Services and BLM's interpretation of the implementation of ground-disturbing activities.

To the extent this document could be deemed covered by the deliberative process privilege, that privilege would be overcome by Plaintiffs' need.

13

23.    **Document 88**: **Proposal to increase the range of survey and manage SEIS, dated September 3, 1999**
       **From: P. Hall and K. Denton**

**Privileges Asserted Claimed by Defendant**: Deliberative process.

This predecisional document considers alternatives and describes the need for a proposed action.

**Ruling**: Covered by the deliberative process privilege.

24.    **Document 89**: **Legislative Referral Memorandum, September 8, 1999 - twelve pages**
       **From: John D. Burnim (for) Assistant Director for Legislative Reference**
       **To: Legislative Liason Officer for distribution to 1) Michael A. Levitt - Department of Commerce; 2) Judy Jablow- Council on Environmental Quality; 3) Jane Lyder- Department of Interior; 4) Jon P. Jennings- Department of Justice; 5) EOP personnel including Stuart R. Kasdin, Mark A. Weatherly, Kimberly A. Newman, Donna M. Rivelli, Dinah Bear, Gary C. Reisner, Charles E. Kieffer, Robert E. Barker, and Joyce M. Wakefield.**
       **Re: Agriculture Questions and Answers on Forest Survey and Monitoring**

**Privileges Asserted by Defendant:** Attorney-client, work-product, deliberative process.

This document consists of a one-page fax cover sheet, one-page response form, and a ten-page attachment. The document discusses factual differences between Fifth, Eighth, and Eleventh United States Circuit Courts of Appeal cases.

**Ruling**: Protected by work-product immunity. The documents were prepared in anticipation of litigation. Protected by deliberative process. This is the same document as number 1 above on the DE privilege log -- DE 89 Tab 1.

25.    **Document 91**: **Memorandum dated August 4, 1999**
       **From: D. Craig and Sue Zike**
       **To: A. Bartuska, D. Birmingham, K. Toffenetti and J. Watts**
       **Re: ONRC Action: Rough estimate of awarded sales effected August 2nd Ruling - 18 pages.**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Cover memo attaching Forest charts showing the status of sales from a list plaintiffs provided to the Government during early settlement discussions in ONRC Action.

**Ruling:** To the extent this document is encompassed by the attorney-client privilege, that privilege has been waived by disclosure of the Brouha Memorandum and deposition exhibits 35A, 35B, 41A and 41D. To the extent this document is covered by the deliberative process and work-product privileges, those privileges are overcome by need.

26.     **Document 92: E-mail dated July 23, 1999 - 1 page.**
        **From: E. Athas**
        **To: D. Bear**
        **Re: Survey and manage EIS**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Discussion of phone call with J. Nelson and P. Hall regarding alternative approaches and considerations pertinent to EIS.

**Ruling**: Covered by deliberative process privilege.

27.     **Document 95: Memorandum dated December 11, 1998**
        **From: C. Jauhola**
        **To: Dinah Bear**
        **Re: ONRC Action v. USF,BLM; timber program overview for fiscal years 1995-1999 and effects of surveying certain FY 1998 timber sales in Forest Service Regions 5 and 6 in western Oregon, BLM**.

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Forwarding final draft of briefing materials (3 documents on Northwest Forest Plan, Timber Sales Program and Survey and Manage Species issue in response to G. Frampton's request at December 2, 1998 meeting.)

**Ruling**: To the extent these documents are subject to the attorney-client privilege that privilege was waived by production of the Brouha Memorandum, Deposition exhibits 31, 35A, 35B, 41A, and 41D. The work product protection is subject to at-issue waiver.[4]

_____

[4] The Court, in its companion decision issued this date, found an at-issue waiver of the
(continued...)

To the extent this document is subject to the deliberative process, that privilege is overcome by Plaintiffs' need.

28.　　**Document 98: Facsimile dated August 4, 1999 - 5 pages**.

**Privilege Asserted Claimed by Defendant**: Deliberative process.

Document fragment -- page 2 of a fax regarding acreage calculations. Attachment - apparent comments re meaning of 11th Cir. Court of Appeals ruling, purpose of appropriations bill and other issues.

**Ruling**: Covered by the deliberative process privilege.

29.　　**Document 99: Email dated August 6, 1999  -  4 pages.**
**From: N. Marlow**
**To: R. Kapla**
**Re: Forwarding e-mail dated 8/6/99 from D. Bear to N. Marlow re weekly report status updates discussing survey and manage; agreement regarding national forests.  Also attached is the same e-mail sent again.**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process privilege.

30.　　**Document 100: Email dated September 14, 1999**
**From: K. Escobar**
**To: V. Viola**
**Re: Prep for MEG trip to Oregon/Washington (ARMS 46)**

Contains predecisional deliberations.

**Ruling**: Covered by the deliberative process privilege.

---

[4](...continued)
attorney-client privilege and work product protection with respect to 1) documents relating to Defendant's interpretation of the Northwest Plan (NEPA equals implementation) and 2) Defendant's decision to award the timber sales despite developments in the ONRC Action litigation.

31.     **Document 101: Agriculture Oversight Testimony on Survey and Management (dated September 15, 1999)**

**Privileges Asserted by Defendant:** Attorney-client, Work-product, Deliberative process.

This document is a legislative referral memorandum discussing proposed testimony before a Congressional panel.

**Ruling**: Covered by the deliberative process privilege.

32.     **Document 102: A series of Questions and Answers (Q and A) (dated October 12, 1999)**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses internal Forest Service plans and matters regarding Congress.

**Ruling**: Covered by the deliberative process privilege.

33.     **Document 103: "Roadless area protection internal questions and answers" "Draft" (dated April 29, 2003)**

**Privilege Asserted by Defendant**: Deliberative process.

The document discusses internal direction and future proposals.

**Ruling**: Covered by the deliberative process privilege.

34.     **Document 104: A series of Questions and Answers (Q and A)**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses internal Forest Service plans and matters regarding Congress.

**Ruling**: Covered by the deliberative process privilege.

35.     **Document 105: A series of Questions and Answers (Q and A)**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses internal Forest Service plans and matters regarding Congress.

**Ruling**: Covered by the deliberative process privilege.

36.     **Document 106: A series of Questions and Answers (Q and A)**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses internal Forest Service plans and matters regarding Congress.

**Ruling**: Covered by the deliberative process privilege.

37.     **Document 109: E-mail dated November 3, 1999**
        **From: L. Hikida**
        **To: D. Bear and T. Boling**
        **CC: N. Middlebrook**
        **Re: Predecisional discussing upcoming briefing**.

**Privileges Asserted by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process privilege.

38.     **Document 110: E-mail dated November 10, 1999**
        **From: D. Bear**
        **To: E. Diringer and G. Frampton**
        **Re: Settlement Agreement**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process privilege.

39.     **Document 113: E-mail dated November 12, 1999**
        **From: K. Escobar**
        **To: D. Bear**
        **Re: Washington**

**Privileges Asserted by Defendant**: Deliberative process, attorney-client, work-product.

"Hot issue for Washington."  Requesting D. Bear's advice on contents of communication and includes e-mail from D. Bear to K. Escobar containing advice - 1 page.

**Ruling**: Covered by the deliberative process, attorney-client and work-product privileges.

40.   **Document 114: E-mail dated January 27, 2000**
**From: K. Escobar**
**To: D. Bear**
**Re: NYC, OH, CA.**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Seeking advice and reflecting deliberations.

**Ruling**: Covered by the deliberative process and attorney-client privilege.

41.   **Document 115: E-mail dated January 27, 2000 - 1 page.**
**From: K. Escobar**
**To: T. Brumm**
**Re: Pacific Northwest Timber, most recent draft of a proposed statement reflecting advice and beliefs.**

**Privileges Asserted Claimed by Defendant**: Deliberative process.

**Ruling**: Covered by the deliberative process privilege.

42.   **Document 116: E-mail dated February 17, 2000 - 214 pages.**
**From: J. Rowen**
**To: T. Boling, D. Bear, L. Schiffer, et al.**
**Re: A proposed rule -- a preliminary summary of public concerns.**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process and attorney-client privileges.

43.   **Document 117: E-mail dated February 25, 2000**
**From: K. Escobar**
**To: D. Bear**
**Re: Seeking comment on forest and timber sale issues and containing advice.**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process and attorney-client privileges.

44. **Document 118**: **E-mail dated March 10, 2000**
    **From: D. Bear**
    **To. D. Spielfogel**
    **Re: NWFP letter and suggesting a draft potential response**.

**Privileges Asserted by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the attorney-client and deliberative process privileges.

45. **Document 119**: **E-mail dated March 10, 2000**
    **From: D. Spielfogel**
    **To: E. Diringer**
    **Re: NWFP letter, transmittal of suggested response drafted by D. Bear**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Contains predecisional deliberative information.

**Ruling**: Covered by the deliberative process privilege.

46. **Document 120**: **E-mail dated March 10, 2000**
    **From: D. Bear**
    **To: E. Diringer**
    **cc: D. Spielfogel**
    **Re: NWFP letter forwarding 3-10-00 e-mail from D. Bear to D. Spielfogel**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process and attorney-client privileges (same as 118 above).

47. **Document 121**: **E-mail dated June 6, 2000**
    **From: K. Escobar**
    **To: D. Bear**
    **Re: Washington State "Hot Issues"**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Requesting that D. Bear prepare a section of a report and forwarding e-mail dated 6-6-00 from D. Secora to E. Diringer, N. Marlow, B. Violo, E. Athas, D. Bear, J. Jablow, et al.  cc'd G. Frampton - 3 pages containing advice and deliberative, predecisional information

**Ruling**: Covered by the deliberative process and attorney-client privileges.

48.     **Document 122: E-mail dated June 6, 2000 - 1 page.**
        **From: D. Bear**
        **To: K. Escobar**
        **Re: Washington state "Hot Issues" suggesting changes to draft on roadless and containing advice.**

**Privileges Asserted by Defendant:** Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process and attorney-client privileges.

49.     **Document 125: E-mail dated August 24, 2000**
        **From: N. Hurst**
        **To: E. Boling**
        **Re: "Hope this helps! WA/OR Issues"**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Requesting information from T. Boling regarding forest plan, survey and manage, and timber sales/protest issues.

**Ruling**: Covered by the attorney-client privilege.

50.     **Document 126: E-mail dated October 2, 2000**
        **From: T. Croote**
        **To: L. Milkman, J. Watts, P. Coppleman, D. Bear**
        **Re: E-mail one of 163 pages regarding changes to the forest planning rule, attaching revisions to the forest planning rule.  Attachments: 1) addition to text of planning rule, 2)  ARMS 41 attachment; and 3) 136 pages text of final rule possible draft -- appears to be a draft.**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process and attorney-client privileges.

21

51.   **Document 127: E-mail dated October 3, 2000**
      **From: R. Holthausen**
      **To:  R. Bosch**
      **CC: E. Boling, et al.**
      **Re: Contains the first 5 pages of 8.**

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

Contains questions, opinions and deliberative material.  Attachment - 1 (3 pages).

Draft  briefing SEIS for amending survey and manage protection buffer and other mitigation measures, standards and guidelines (October 18, 2000).

**Ruling**: Covered by the deliberative process privilege.

52.   **Document 131: E-mail dated August 6, 1999**
      **From: N. Marlow**
      **To: R. Capla**
      **Re: Weekly report, forwarding e-mail dated 8/6/99 from D. Bear to N. Marlow re weekly report**.

**Privileges Asserted Claimed by Defendant**: Deliberative process, attorney-client, work-product.

**Ruling**: Covered by the deliberative process and attorney-client privileges.

53.   **Document 132: Draft statement dated September 15, 1999**
      **From: J. Lyons**
      **To: Subcommittee on Forests and Public Land**
      **Re: Draft statement of James R. Lyons, Undersecretary Natural Resources and Environment, U.S. Dept. of Agriculture regarding the survey and management requirements to the President's Northwest Plan before the Subcommittee on Forests and Public Land Management Committee on Energy and Natural Resources, U.S. Senate.**

**Privileges Asserted Claimed by Defendant**: Deliberative process.

**Ruling**: Covered by the deliberative process privilege.

54.     **Document 133: A series of Questions and Answers (Q and A) for Roadless Area Protection (dated April 29, 2003)**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses internal Forest Service plans and matters regarding Congress.

**Ruling**: Covered by the deliberative process privilege.

55.     **Document 134: A series of Questions and Answers (Q and A) Attachment**

**Privilege Asserted by Defendant:** Deliberative process.

**Ruling**: Covered by the deliberative process and attorney-client privileges.

56.     **Document 135: Identical to Document 133, above**.

57.     **Document 136: A series of Questions and Answers (Q and A) Attachment**

**Privilege Asserted by Defendant :** Deliberative process.

**Ruling**: Covered by the deliberative process and attorney-client privileges.

58.     **Document 137: Identical to Document 133, above**.

59.     **Document 138: A series of Questions and Answers (Q and A) for Roadless Area Protection**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses internal Forest Service plans and matters regarding Congress.

**Ruling**: Covered by the deliberative process privilege.

60.     **Document 140: Identical to Document 133, above**.

61.     **Document 141: Identical to Document 138, above.**

62.     **Document 142: Identical to Document 133, above.**

63.     **Document 143: Identical to Document 138, above.**

23

64.     **Document 145: E-mail dated October 18, 1999**
        **From: B. Rossman**
        **To: W. Warren**
        **Re: FY 2000 Interior objectionable language, forwarding updated electronic**
        **version of our "objectionable riders "document"**

**Privilege Asserted by Defendant:** Deliberative process

**Ruling**: Covered by the deliberative process privilege.

65.     **Document 146: E-mail dated October 20, 1999**
        **From:   W. Warren**
        **To: K. Hobbs**
        **Re: 2 of 4 pages regarding "Comments of wildlife survey, rider and conference**
        **report.**

**Privilege Asserted by Defendant:** Deliberative process

**Ruling**: Covered by the deliberative process privilege.

66.     **Document 147: E-mail dated October 20, 1999**
        **From: W. Warren**
        **To: K. Hobbs**
        **Re: FY 2000 Interior objectionable language forwarding e-mail dated 10/18/99**
        **from B. Rossman to W. Warren re FY 2000 Interior objectionable language**

**Privilege Asserted by Defendant:** Deliberative process.

**Ruling**: Covered by the deliberative process privilege

67.     **Document 148: Interior and Related Agencies Appropriations Bill**
        **Objectionable Language Riders**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses language wanted in proposed bills, and is not relevant to this action.

**Ruling**: Covered by the deliberative process privilege.

68.     **Document 149: E-mail dated February 25, 2000**
       **From: K. Escobar**
       **To: N. Marlow**
       **Re: Feb. 24, 2000 Salmon Issues**

**Privilege Asserted Claimed by Defendant**: Deliberative process.

Contains predecisional opinions, advice and legal opinion

**Ruling**: Covered by the deliberative process privilege.

69.     **Document 150: Legislative Referral Memorandum**

**Privileges Asserted by Defendant:** Attorney-client, Work-product, Deliberative process.

This document discusses proposed remarks to a congressional Subcommittee.

**Ruling**: Covered by the deliberative process and attorney-client privileges.

70.     **Document 151: E-mail dated June 8, 2000**
       **From: D. Bear**
       **To: Michael Hickey, et al.**
       **Re: upcoming meeting**

**Privilege Asserted Claimed by Defendant**: Deliberative process.

    Issues for discussion

**Ruling**: Covered by the deliberative process privilege.

71.     **Document 152: E-mail dated June 9, 2000**
       **From: D. Bear**
       **To: Michael Hickey, et al.**
       **Re: Upcoming meeting and forwarding e-mail described in document 151.**

**Privilege asserted by Defendant:** Deliberative process

**Ruling**: Covered by the deliberative process privilege.

72.   **Document 153: Email reminder for hot issues for Vice President August 25, 2000**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses issues for briefing the Vice President.

**Ruling**: Covered by the deliberative process privilege.

73.   **Document 154: "Hot Issues draft briefing paper on Columbia river salmon issues"**

**Privilege Asserted by Defendant:** Deliberative process.

This document discusses proposed plans for conservation.

**Ruling**: Covered by the deliberative process privilege.

**Defendant's July 29, 2005 and August 18, 2005 Amended "DE" Privilege Logs**

Defendant submitted the declarations of two litigation coordinators, Susan M. Zike and Brian E. Stone as justification for Defendant's attorney-client and work-product privilege claims in the amended "DE" privilege logs. Susan M. Zike has been employed as the Regional Litigation Coordinator for the Pacific Northwest Region (Region 6) of the Forest Service, in Portland, Oregon, since 1991. Decl. of Susan M. Zike (Oct. 14, 2005) ¶ 1 (Zike Decl.). As a Litigation Coordinator, Ms. Zike's duties consisted of acting as a liaison between the DOJ and the U.S. Attorneys' Offices for Oregon and Washington, the USDA Offices of General Counsel in Portland, San Francisco, and Washington, D.C., and multiple Forest Service offices, in connection with lawsuits filed against the Forest Service in Region 6. Zike Decl. ¶ 3. Ms. Zike explained:

> In my capacity as Litigation Coordinator, I regularly confer with agency and trial counsel upon litigation matters and then disseminate their advice and recommendations to Forest Service personnel. I also work with Forest Service staff to respond to requests for information from such counsel, including preparation of litigation reports, responses to discovery, and responses to other inquiries that arise in litigation. On some occasions, I transmit the foregoing information to counsel under a cover document containing my explanation of the information and/or my recommendations for its use. As a Litigation Coordinator, I also perform case management activities, which primarily involve providing information to Forest Service officials,

such as forest supervisors, directors, and regional foresters, about
potential or current litigation, legal strategies, and case assessments.

Zike Decl.¶ 4. According to her position description which is titled "Paralegal Specialist," Ms. Zike
"serves as the Regional Litigation and FOIA [Freedom of Information Act] Coordinator responsible
for preparing Regional evaluations to legal challenges resulting from lawsuits against the Agency
. . . ." Attachment to Zike Decl. (Zike Att.).

Ms. Zike began working on the ONRC Action lawsuit shortly after it was filed and was
designated by the R5 and R6 Regional Foresters as the "primary Forest Service contact in the field
for the Department of Justice" in mid-July 1998. Zike Decl. ¶ 5. The Oregon State Director for
BLM asked Ms. Zike to facilitate and coordinate communications between that agency, the Forest
Service, and the Department of Justice. Ms. Zike was also responsible for informing the Office of
the Chief of the Forest Service about the ongoing status of ONRC Action, and participated in the
development of Forest Service and BLM responses to the legal issues raised in ONRC Action. Id.
This entailed having discussions with various Forest Service, BLM and the Northwest Forest Plan
Regional Ecosystem Office (REO) personnel regarding the Government's response and preparing
the litigation report for the DOJ. Id. ¶ 6. Ms. Zike also "regularly developed briefing papers for case
management meetings, which generally were attended by the Regional Foresters and their staff, the
[Office of the Chief of the Forest Service] and staff, the BLM Oregon State Director and her staff,
the REO and staff, and agency and trial counsel." Id. In the briefing papers, Ms. Zike sometimes
assessed "[DOJ] and agency counsel thinking regarding the implications and risks of taking certain
legal positions and made recommendations for a course of action." Id.

Throughout the litigation, the Regional Foresters and their staff consulted Ms. Zike on the
status of the case and on related policy direction for purposes of making sale offerings and awards.
Zike Decl. ¶ 9. Toward the final stages of litigation, Ms. Zike and her paralegal collected "vast
amounts of information concerning timber sales in Regions 5 and 6, including dates of
environmental analysis, the identity of persons who filed administrative appeals of the sale decisions
and the issues raised in those appeals, the identity of purchasers, and the status of harvesting
operations." Zike Decl. ¶ 10. This information was compiled, processed, and transmitted to DOJ
and agency counsel in response to their requests for information. Id. Ms. Zike also participated in
agency preparations for settlement discussions. Id.

Brian E. Stone served as a Litigation Coordinator for Region 5 on the ONRC Action lawsuit.
Decl. of Brian E. Stone (Oct. 13, 2005) ¶¶ 1-2 (Stone Decl. II). Mr. Stone explained his duties:

[M]y official position in Region 5 was Section Head for Timber Sale
Preparation and Valuation. However, from approximately 1991
onwards, I functioned informally as a litigation coordinator for
various lawsuits arising in the region . . . .

27

> In my capacity as a litigation coordinator . . . I was involved in the
> [ONRC Action]. . . . I worked on this litigation from early 1998 until
> my retirement [in May, 2003]. My work primarily involved obtaining
> information or documents from Region 5 in response to requests from
> attorneys employed by the United States Department of Justice
> ("USDOJ") or the United States Department of Agriculture
> ("USDA"). Generally, I was not in direct contact with these
> Government attorneys and I did not work for them. Rather, my
> primary contact was Sue Zike, who was the Litigation Coordinator for
> Region 6, at the time of the ONRC Action. I believe that it is
> accurate to describe my role as that of a liaison between Ms. Zike and
> Forest Service personnel within the Region for the primary purpose
> of disseminating requests for information or documents and obtaining
> responsive information or documents. From time to time, I also
> informally apprised Forest Service personnel of developments in the
> litigation.

Stone Decl. II ¶¶ 1, 3-4.[5]

Although Defendant purported to assert the deliberative process privilege for two documents in its DE privilege log, DE 8 Tab 14 and DE 22 tab 14, Defendant has not filed a declaration from the head of the agency or his or her delegee invoking the privilege. As such, the deliberative process privilege cannot be sustained for these documents.

The following are the Court's rulings with respect to the documents described in Defendant's amended "DE" privilege logs based upon in camera review.

1. **Document DE 89 Tab 1: Legislative Referral Memorandum, September 8, 1999 - twelve pages**
   **From: John D. Burnim (for) Assistant Director for Legislative Reference**
   **To: Legislative Liason Officer for distribution to 1) Michael A. Levitt - Department of Commerce; 2) Judy Jablow- Council on Environmental Quality; 3) Jane Lyder- Department of Interior; 4) Jon P. Jennings- Department of Justice; 5) EOP personnel including Stuart R. Kasdin, Mark A. Weatherly, Kimberly A. Newman, Donna M. Rivelli, Dinah Bear, Gary C. Reisner, Charles E. Kieffer, Robert E. Barker, and Joyce M. Wakefield.**
   **Re: Agriculture Questions and Answers on Forest Survey and Monitoring**

---

[5] The declarations of Ms. Zike and Mr. Stone do not address the documents listed in the privilege logs on a document-by-document basis.

**Privileges Asserted by Defendant**: Attorney-client, Work-product, Deliberative process.

This document consists of a one-page fax cover sheet, one-page response form, and a ten-page attachment and discusses differences between Fifth, Eighth, and Eleventh United States Circuit cases.

**Ruling**: Protected by work-product immunity. The documents were prepared in anticipation of litigation.  Protected by deliberative process.  **Note**: This same document is also located in the binders of the CEQ in camera documents, labeled as Document 89.

2.   **Document DE  0305 & 0306 Tab 6**: E-mail - No date - one page
     **From: Edward L. Matthews**
     **To: Susan Zike**
     **Cc: bstone (litigation coordinator),  ematthews**
     **Re: ONRC Action: WO briefing paper**

**Privilege Asserted by Defendant:** Work-product.

The e-mail provides updated information on Happy Thin and Upper South Fork timber parcels.

**Ruling**: Contains facts, not attorney opinion.  To the extent this document is work product, the privilege was waived under the at-issue waiver.  Alternatively, the work-product protection is overcome by the need of the Plaintiffs.

3.   **Document DE 310 Tab 6**: Letter/E-mail - June 17, 1999- one page
     **From: Ed Matthews, Contracting Officer**
     **To: unknown, but document reads "Confidential Attorney-Client Privilege"**
     **across the top of the page**
     **Re: Status of Upper South Fork Heli TS and Jack Heli TS**

**Privilege Asserted by Defendant:** Work-product.

Document discusses status of Upper South Fork Heli TS and Jack Heli TS by providing the dates of meetings and actions taken at the meetings.

**Ruling**: Not work-product.  Although the document reads "Attorney-Client Privilege" across the top, no other information is provided about the document's recipients or why the document was prepared.

4. **Document DE 312 Tab 6**: **E-mail - No date - one page**
   **From: Edward L. Matthews, Contracting Officer**
   **To: Susan Zike**
   **Cc: bstone (litigation coordinator), emathews**
   **Re: Happy Thin Auction Date**

**Privilege Asserted by Defendant:** Work-product.

The e-mail acknowledges receipt of documents from the litigation coordinator, discusses a proposed auction date on Happy Thin and discusses the validity of a notice as well as an update on Upper South Fork.

**Ruling**: To the extent this document is work product, it is nonopinion and subject to the at-issue waiver. Alternatively, the work-product protection is overcome by the need of the Plaintiffs.

5. **Document DE 457, Tab 6**: **E-mail dated March 1, 1999**
   **From: J. Zander**
   **To: B. Stone and J. Brogan**
   **Re: Edited table of delayed sales**

**Privilege asserted by Defendant:** Work-product.

This e-mail references a telephonic conference with DOJ counsel and matters to be raised at the conference call.

**Ruling**: Protected work product. To the extent this document is work product, it is encompassed within the at-issue waiver.

6. **Document DE 683-687 Tab 6**: **Plaintiffs' Sale List submitted for settlement negotiations in ONRC Action v. USFS, BLM - April 5, 1999 - 9 pages**.

**Privilege Asserted by Defendant:** Work-product.

The document consists of a table listing the names of timber sales in the Western District of Washington (from Plaintiffs' Sale List). Each page includes the statement: "Confidential Subject of Settlement Negotiations FRE 408." Under the heading of "status" it lists some of the sales as "awarded."

**Ruling**: Not protected work product. There is no indication of who completed this document or to whom it was disseminated.

7.  **Document DE 983,Tab 6: Email dated December 17, 2000**
    **From: S. Grimes**
    **To: L. West, S. Carter, J. Flatten, J. Murray, W. Hoffman**
    **Re: forwarding charts of timber sales decisions by forestry relying on November 1996 "Implement Memo"**

**Privilege Asserted by Defendant:** Work-product.

Document entitled Region 5 and 6 Timber Sales, ONRC Action v. USFS, plaintiff sale list submitted April 5, 1999 - 9 pages.  Stamped "Confidential Subject of Settlement Negotiations FRE 408."

**Ruling**: Defendant has not established that this document is subject to the work-product protection.  In the event this document could be deemed to be work product, the charts do not contain opinion but rather purely contain factual material, and the protection is overcome by Plaintiffs' need.  This appears to be a settlement document which Defendant had agreed to produce.

8.  **Document DE 1353, Tab 6: E-mail**
    **From: Sue Zike**
    **To: Susan L. Carter, et al.**

**Privilege Asserted by Defendant:** Attorney-client and Work-product.

Attaching a summary chart and notes about at-risk sales and lawsuit. Chart is dated 7/13/99.

**Ruling**: The attorney-client privilege was waived for this document by Defendant's voluntary production of the Brouha Memorandum, and Deposition Exhibits 35A, 35B, 41A and 41D.  The document is covered by the at-issue waiver.  To the extent this document is work product, the privilege is overcome by Plaintiffs' need.

9.  **Document DE 1538-1556 Tab 6: E-mail and Chart  - no date -twelve pages**
    **From: Susan Zike (litigation coordinator)**
    **To: Robert J. Devin, Susan L. Carter, Jan Flatten, Jamia R. Hansen Murray**
    **Re: ONRC Action; Sale list provided to ONRC (Oregon Natural Resources Council) (their April 5, 1999 list)**

**Privilege Asserted by Defendant:** Work-product.

The e-mail indicates that the attached chart was shared by DOJ with the Oregon Natural Resources Council.

**Ruling**: Not protected work product because the Government shared the information with the plaintiffs in ONRC Action.

    10.    **Document 1707-1708 Tab 6**: **E-mail, no date**
          **From: Susan Zike (litigation coordinator)**
          **To: Susan L. Carter, Jan Flatten, Jamia R. Hansen Murray, Ward Hoffman, Fred Dorn**
          **Re: ONRC Action lawsuit process to determine which sales to award**

**Privilege Asserted by Defendant**: Work-product.

This e-mail indicates that an attached document describes the process to determine which sales, if any, to award in the near future.  The attached memo is not provided.

**Ruling**:  To the extent this document is work product, it is subject to the at-issue waiver. Alternatively, the document contains no opinion, and the work-product protection is overcome by the need of the Plaintiffs.

    11.    **Document DE 1810, Tab 6**: **E-mail dated November 23, 1998**
          **From: S. Zike**
          **To: S. Carter, J. Flatten, J. Murray, W. Hoffman and F. Dom**

**Privileges Asserted by Defendant**: Attorney-client privilege, amended to include work-product.

Described as "e-mail regarding litigation position and award of sales."

**Ruling**:  This document appears to be attorney-client privileged, but this privilege was waived by the Defendant's voluntary disclosure of the Brouha Memorandum, and Deposition Exhibits 31, 35A, 35B, 41A and 41D.  To the extent this document can be deemed work product, the protection is overcome by Plaintiffs' need.

    12.    **Document DE 203 Tab 4**: **E-mail   - January 21, 1999 - one page**
          **From: Brian E. Stone (litigation coordinator)**
          **To: ematthews, klamath**
          **Re: Meeting**

**Privilege Asserted by Defendant:** Work-product.

This e-mail forwards an e-mail from Susan Zike (litigation coordinator) to Brian Stone (litigation coordinator), which describes a plan to discuss sales with attorneys at an upcoming meeting.

**Ruling**:  Protected work-product.  To the extent this document is work product, it is subject to the at-issue waiver.  Alternatively, the work-product protection is overcome by the need of the Plaintiffs.

13. **Document DE 204, Tab 4: E-mail dated January 22, 1999**
    **From: Brian Stone**
    **To: Distribution List**

**Privilege Asserted by Defendant**: Work-product

Described as "one-page e-mail string forwarding attachments (not attached) and describing the process Region 6 utilized to determine which sales to award, describing questions needed to be answered before awarding of sales, from Sue Zike (Region 6).  Prepared in anticipation of litigation."

Discusses the timing of the sales and a potential telephonic conference with R6, DOJ and BLM "regarding which sales should be going forward and their respective strengths and weaknesses . . . relating to this litigation."

**Ruling**:  Although Defendant does not believe this document is subject to the attorney-client privilege, it appears to be subject to this privilege and within the scope of the waiver caused by Defendant's voluntary production of the Brouha Memorandum as well as Deposition Exhibits 31, 35A, 35B, 41A and 41D.

To the extent this document is work product, it is subject to the at-issue waiver.

14. **Document DE 229 Tab 4: E-mail - February 23, 1999  - one page**
    **From: Edward L. Mattthews**
    **To: Susan Zike (litigation coordinator)**
    **Cc: bstone (litigation coordinator), ematthews, klamath**
    **Re: r5-6_proposed_awards.rtf**

**Privilege Asserted by Defendant:** Work-product.

The e-mail references a proposed letter.

**Ruling**:  To the extent this document is work product, it is subject to the at-issue waiver.

15.     **Document DE 230, Tab 4: E-mail dated February 22, 1999 (1 page)**
        **From: Sue Zike**
        **To: Ed Matthews**

**Privileges Asserted by Defendant**: Work-product and attorney-client privilege.

Transmitting draft letter to DOJ regarding action to be taken on certain sales after 3/1/99 (not attached).

**Ruling**: Covered by work-product privilege.  Not encompassed by at-issue waiver.

16.     **Document DE 284, Tab 4: E-mail dated March 31, 1999**
        **From: Brian Stone**
        **To: Distribution List**

**Privileges Asserted by Defendant**: Work-product, attorney-client.

Two-page e-mail discussing specific timber sales, transmitting a 10-page 3/30/99 Region 5 Timber Sales chart.  Chart is a spread sheet containing analysis of timber sales which Defendant claims was prepared in connection with the ONRC Action litigation.  Chart is marked "attorney-client privileged, do not distribute."

**Ruling**:  During an October 7, 2005 hearing the Court ruled that this document was not subject to the attorney-client privilege.  Tr. at 73-77.

To the extent this document could be deemed work product, it does not contain opinion, this protection is overcome by Plaintiffs' need.

17.     **Document DE 305, Tab 4: E-mail with attachment dated April 5, 1999**
        **From: Sue Zike**
        **To: Distribution List (1-page)**

**Privileges Asserted by Defendant**: Work-product, attorney-client.

E-mail discussing potential issues relating to timber sales and ONRC Action transmitting two 9-page 3/30/99 Region 6 timber sales chart.  Chart is a spread sheet analysis of timber sales prepared in connection with ONRC Action and is marked attorney-client privileged do not distribute.

**Ruling:**  The Court ruled that the Defendant did not establish the elements of the attorney-client privilege.  Tr. (Oct. 7, 2005) at 76-77.  To the extent that this document can be deemed work product, it does not contain opinion, and the protection is overcome by Plaintiffs' need.

18.    **Document DE 315 Tab 4**: **E-mail and attached charts - 4/8/99 - fifteen pages**
        **From: Susan Zike**
        **To: Distribution list unavailable**
        **Re: ONRC Action: promised chart attached.**

**Privilege Asserted by Defendant:** Work-product.[6]

The chart -- Region 5 and 6 Timber Sales; Plaintiffs' Sale List Submitted April 5, 1999 -- consists of a chart of R5 and R6 timber sales, including information such as: sale name, NEPA doc date, whether Plaintiff appealed, Ad date, Auction date, Award date, status of sale, and whether notice had been provided to Plaintiffs. The bottom of each page states: "Confidential Subject to Settlement Negotiations F.R.E. 408."

**Ruling**: Not work product. Alternatively, work-product protection overcome by need. Although prepared in anticipation of litigation/settlement, the Chart contains factual information about the sales. It does not reveal the Government's strategy, thought processes, or attorney opinion. Any attorney-client privilege was waived by Defendant's voluntary production of the Brouha Memorandum and Deposition Exhibits 31, 35A, 35B, 41A and 41D. This document is also subject to the at-issue waiver and Defendant's agreement to produce settlement documents.

19.    **Document DE 330 Tab 4**: **Chart - 4/12/99 - four pages - "R5 and R6 Timber Sale"**

**Privilege Asserted by Defendant:** Work-product.[7]

The chart does not indicate its author or to whom it was distributed. The top of the Chart states: "Prepared for Litigation Purposes Only."

**Ruling**: Although apparently prepared in anticipation of litigation/settlement, the Chart contains factual information about the sales. It does not reveal the Government's strategy or thought processes. To the extent it is work product, this protection is overcome by Plaintiffs' need, and subject to the at-issue waiver.

---

[6] As with many documents in this discovery dispute, Defendant had originally claimed the attorney-client privilege, but then abandoned that claim. Compare Privilege Logs dated August 18, 2005 with Privilege Logs dated July 29, 2005, and April 27, 2005.

[7] As with many documents in this discovery dispute, Defendant had originally claimed the attorney-client privilege, but then abandoned that claim. Compare Privilege Logs dated August 18, 2005 with Privilege Logs dated July 29, 2005, and April 27, 2005.

20.   **Document DE 341, Tab 4**: E-mail dated April 14, 1999
        **From: Sue Zike**
        **To: Distribution List**

**Privilege Asserted by Defendant**: Work-product.

Discussing status of sales, transmitting chart (not attached).

**Ruling**: To the extent this is work product, it does not contain opinion, and the protection is overcome by Plaintiffs' need.  This e-mail is subject to the at-issue waiver.

21.   **Document DE 342, Tab 4**: Sales Chart dated April 14, 1999
        **From: Sue Zike**
        **To: Distribution List**

**Privilege asserted by Defendant**: Work-product.

Each page states that the document is "Attorney-Client Privileged."  However, Defendant does not assert attorney-client privilege for this document.

**Ruling**: To the extent this document is work product, it does not contain opinion and the protection is overcome by Plaintiffs' need for the document. This chart is also subject to at-issue waiver.

22.   **Document DE 434, Tab 4**: E-mail, dated July 8, 1999
        **From: Ed Matthews**
        **To: Sue Zike and Brian Stone**

**Privilege Asserted by Defendant**: Work-product.

Updating status Happy Thin sale.

**Ruling**: To the extent this is work product, it contains no opinion, and Plaintiffs' need for the document overcomes the protection.  This e-mail is subject to at-issue waiver.

23.   **Document DE 864, Tab 4**: Fax cover sheet dated November 23, 1999
        **From: Brian Stone**
        **To: Jack West**

**Privilege Asserted by Defendant**: Work-product.

One page handwritten fax cover sheet referencing documents which were faxed but are not attached.

**Ruling**: Protected work product.

24.     **Document DE 1633 Tab 4: Comparison Chart entitled "Comparison of Lawsuit Issues and Administrative Appeal Issues" regarding NEPA decision dated 7/14/98. 2 pages**
        **No author or recipients indicated**
        **Re: Comparison of Lawsuit Issues and Administrative Appeal Issues**

**Privilege Asserted by Defendant:** Work-product.[8]

The document is marked "Privileged and Confidential" and "Not For Circulation Outside the Agency." It lists two appeals of the Jack Heli Sale and includes a table comparing the issues involved in each.

**Ruling**: Protected work-product, covered by the at-issue waiver. Alternatively, the work-product privilege is overcome by Plaintiffs' need.

25.     **Document DE 1142 Tab 5: 10/23/98 fax - 1 page**
        **Defendant's privilege log states that it was sent from Edward Boling (DOJ) to Michael Axline and Marianne Dugan (ONRC Action Plaintiffs' Attorneys) Government's Counter Offer draft, not final.**

**Privilege Asserted by Defendant:** Work product.

One page of a longer document, regarding Survey and Manage protocols for five salamander species and Red Tree Vole.

**Ruling**: Not protected work product.

26.     **Document DE181-182, Tab 5: Memorandum dated November 18, 1999 - 2 pages.**
        **From: Sue Zike**
        **To: Jeremy Anderson, et al.**
        **Re: ONRC Action, estimated FY 00 mmbf**

---

[8] As with many documents in this discovery dispute, Defendant had originally claimed the attorney-client privilege but then abandoned that claim. Compare Privilege Logs dated August 18, 2005 with Privilege Logs dated July 29, 2005, and April 27, 2005.

**Privilege Asserted by Defendant**: Work-product.

**Ruling**: To the extent this is work product, it does not contain opinion, and Plaintiffs' need overcomes the protection.

27.   Document DE 378 Tab 5: E-mail and attached Letter - two pages, dated August 27, 1999

**Privilege Asserted by Defendant:** Work-product.

This e-mail is from Brian E. Stone (litigation coordinator) to Susan Zike (litigation coordinator), with a copy to "vgomez." The e-mail discusses a potential suspension of operations and includes a draft letter.

**Ruling**: Work product. To the extent this document is work product, it is covered by the at-issue waiver.

28.   **Document DE 505-506, Tab 5: E-mail - 2 pages.**
**From: Sue Zike**
**To: E. Matthews, et al.**
**Re: ONRC Action**

**Privilege Asserted by Defendant**: Work-product.

**Ruling**: To the extent this is work product, Plaintiffs' need overcomes the protection. Further, this document is covered by the at-issue waiver.

29.   **Document DE 733 Tab 5: Fax Cover Sheet  - March 2, 1999- one page**
**From: Brian Stone (litigation coordinator)**
**To: Bob Garcia, Debbie Whitman, Virginia Gomez, Ed Matthews, Bev Cox**

**Privilege Asserted by Defendant:** Work-product.

The document is a fax cover sheet that states that Ted Boling's letter to Michael Axline (plaintiffs' Attorney in ONRC Action) regarding Jack Heli is attached, but it is not provided because it was already produced to the plaintiffs.

**Ruling**: Fax cover sheet is protected work product. Defendant already produced the attached letter. Tr.(Oct. 7, 2005) at 88-89.

30. **Document DE 750, Tab 5: One page, undated, e-mail string.**
   **From: Sue Zike**
   **To: Unknown recipients**

**Privilege Asserted by Defendant**: Work-product.

Undated e-mail from Sue Zike to unknown recipients, forwarding a draft chart of proposed sales.  Contains suggestions, directive and a plan.

**Ruling**: To the extent this document is work product, Plaintiffs' need overcomes the protection and it is subject to the at-issue waiver.  Although not claimed by Defendant, the document is covered by the attorney-client privilege and that privilege was waived for this subject matter.

31. **Document DE 782, Tab 5: E-mail dated January 21, 1999, 1 page.**

**Privileges Asserted by Defendant**: Work-product, attorney-client.

This e-mail discusses risk assessment process and plans to discuss issues regarding the sales with the attorneys.

**Ruling**: The attorney-client privilege was waived by Defendant's voluntary production of the Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A and 41D.  To the extent the document is work product, the protection is overcome by Plaintiffs' need.  In addition, the document is covered by the at-issue waiver.

32. **Document DE 789, Tab 5: Portion of e-mail, without header, contains handwritten date 1/6/99.  1 page.**
   **From: Sue Zike**

**Privilege Asserted by Defendant**: Work-product.

This document discusses risk assessment for sales in ONRC Action lawsuit and contains opinion regarding proceedings in the Court.

**Ruling**: Although this document is work product, it is covered by the at-issue waiver.

33. **Document DE 906-908, Tab 5**: 3 pages and 3 documents.

**Privilege Asserted by Defendant**: Work-product.

1) E-mail to B. Stone, et al., from Wayne Chandler - September 3, 1998 regarding projects identified as timber sales;

2) page one of a chart Plaintiffs' sale list submitted August 26, 1998;

3) a memorandum from Sue Zike September 1, 1998, to <u>ONRC</u> <u>Action</u> Coordinators discussing DOJ's settlement efforts, DOJ's requests, a chart; DOJ's impression of information.

<u>Ruling</u>: These documents are covered by the at-issue waiver. To the extent the documents are work product, Plaintiffs' need overcomes the protection.

34.     **<u>Document DE 6, Tab 7</u>: Chart dated August 30, 1999 - 5 pages.**
        **From: Unknown**
        **Re: The status of survey manage surveys, R 5/6 enjoined awarded timber sales, ONRC Action.**

**<u>Privilege Asserted by Defendant</u>**: Work-product.

<u>Ruling</u>: To the extent these are work product, Plaintiffs' need overcomes the protection. This document is covered by the at-issue waiver.

35.     **<u>Document DE 27, Tab 7</u>**:

**<u>Privilege Asserted by Defendant</u>**: Work-product.

One-page e-mail from Susan Zike to L. Stritch, et al., providing answers to specific questions regarding the status of timber sales at a CEQ meeting of 9/9/99. Same as Document DE 58, Tab 7.

<u>Ruling</u>: This document is covered by the at-issue waiver. Alternatively, the work-product protection is overcome by Plaintiffs' need.

36.     **<u>Document DE 58</u>** Same as DE 27, Tab 7 above.

37.     **<u>Document DE 41, Tab 7</u>: Survey Chart, August 30, 1999, 5-pages**
        **From: Unknown**
        **Re: "Status of S&M surveys R5/R6 Enjoined Awarded Timber Sales."**

**<u>Privilege Asserted by Defendant</u>**: Work-product.

**Ruling**: To the extent the document is work product, it does not contain opinion, and the protection is overcome by Plaintiffs' need.  This document is covered by the at-issue waiver.

38.    **Document DE 127, Tab 7: Chart entitled "Status of Survey/Manage Surveys R5/R6 enjoined awarded timber sales" August 30, 1999**

**Privilege Asserted by Defendant:** Work-product.

**Ruling**: To the extent the document is work product, it does not contain opinion and the protection is overcome by Plaintiffs' need.  This document is covered by at-issue waiver.

39.    **Document DE 128: Survey Chart dated August 30, 1999 -  5 pages.
       From: Unknown
       Re: Status of S&M surveys R5/R6 enjoined awarded timber sales - Happy Thin**.

**Privilege Asserted by Defendant**: Work-product.

**Ruling**: To the extent the document is work product, it does not contain opinion and the protection is overcome by Plaintiffs' need.  The document is covered by the at-issue waiver.

40.    **Document DE 269 Tab 7: At-risk Sales Chart - Submitted April 5, 1999 - four pages
       From: unknown author, unknown recipients
       To: Unknown
       Re: "At Risk Sales" as identified by ONRC Action on April 12, 1999.**

**Privileges Asserted by Defendant:** Attorney-client, Work-product.

The chart lists R5 and R6 sales from Plaintiffs' sale list submitted April 5, 1999, and contains information on the sales.

**Ruling**: To the extent this document is work product, the protection is overcome by Plaintiffs' need.  The document is covered by at-issue waiver.  The attorney-client privilege has been waived by Defendant's voluntary production of the Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A and 41D.

41.    **Document DE 271 Tab 7: Sales Chart, August 5, 1999, 10 pages, author/recipient unknown
       Re: "Region 5 and 6 Timber Sales," Plaintiffs' Sale List Submitted April 5, 1999.**

41

**Privilege Asserted by Defendant**: Work-product.

The chart lists the timber sales of Regions 5 and 6 listed in Plaintiffs' Sale List, April 5, 1999, and consists of eight columns providing information about each sale, such as the NEPA document date, the ad date, and the status of the sale.  The chart also contains a few hand-written notes.

**Ruling**: To the extent the document is work product, the protection is overcome by Plaintiffs' need.  This document is covered by at-issue waiver.

42.     **Document DE 277 Tab 7: E-mail -June 14, 1999 - 2 pages**
        **From: Bill Funk**
        **To: Susan Zike (litigation coordinator)**
        **CC: bdevlin, pkain, scrim, mredmond, dcampbell, bwoodard, fdorn**
        **Re: ONRC Sales ready for award this week**

**Privilege Asserted by Defendant**: Work-product.

The e-mail relates the status of certain sales ready for award.

**Ruling**: To the extent document is work product, the protection is overcome by Plaintiffs' need.  This document is covered by at-issue waiver.

43.     **Document DE 654 Tab 7: Letter, 12/4/98- two pages**
        **From: Edward A Boling (trial attorney) and John Watts (trial attorney)**
        **To: Sue Zike (litigation coordinator) and Alan Wood (Forester)**
        **Cc: Owen Schmidt and Roger Nesbit (OGC Counsel)**
        **Re: Oregon Natural Resources Council Action v. U.S. Forest Service and BLM,**
        **Civ. No. C98-942 (W.D. Wash.).**

**Privileges Asserted by Defendant:** Attorney-client, Work-product.

The privilege log for this document states: "Privilege Waived."  The privilege log also states: "To the extent that this document has not been provided before, will provide."

**Ruling**: These privileges have been intentionally waived.[9]

---

[9]  It appears that this is yet another voluntary waiver by Defendant of the attorney-client privilege.  As such, this privilege is waived for all communications on the same subject matter.  This letter from DOJ counsel requests information regarding timber sale awards and instructs FS and

(continued...)

44.   **Document DE 660 Tab 7: E-mail - December 15, 1998- one page**
      **From: Diana Bus (contracting officer)**
      **To: Susan Zike (litigation coordinator), dbus**
      **Re: sales to go ahead and award**

**Privilege Asserted by Defendant:** Work-product.

This e-mail informs Ms. Zike that certain sales are alternative volume sales that the agency needs to move forward.

**Ruling**: To the extent document is work product, protection is overcome by Plaintiffs' need. This document is covered by at-issue waiver.

45.   **Document DE 690, Tab 7: E-mail dated April 12, 1999**
      **From: Sue Zike**
      **To: Distribution List w/attachment**

**Privileges Asserted by Defendant**: Work-product, attorney-client.

The document discusses sales, and the attached chart contains timber sales information prepared in connection with ONRC Action.

**Ruling**: The attorney-client privilege was waived by Defendant's voluntary production of the Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A and 41D.  To the extent the document is work product, the protection is overcome by Plaintiffs' need.  The document is covered by at-issue waiver.

46.   **Document DE 711 Tab 7: E-mail submitting sales chart (not attached) - 4/6/99 - one page**
      **From: Diana Bus (Forest Product Program/Contracting Officer)**
      **To: szike (litigation coordinator), dbus, willamette**
      **Re: 2-26_list_r6.aw**

---

[9](...continued)
BLM to provide DOJ with information regarding the timber sale awards and directs them to compile documents for potential use in ONRC Action.  As such, the disclosure of this document is further support for defining the subject matter waiver of the attorney-client privilege to include: 1) the survey and manage requirements under the Northwest Forest Plan, and 2) the Government's actions in response to the ONRC Action lawsuit regarding timber sales.

**Privilege Asserted by Defendant:** Work-product.

The e-mail indicates a request from counsel apparently in connection with ongoing litigation.

**Ruling**:  To the extent this document is work product, the protection is overcome by the Plaintiffs' need.  The document is covered by the at-issue waiver.

47. **Document DE 731, Tab 7:** **Memorandum dated January 14, 1999 - 3-pages**
**From: Sue Zike**
**To: Peggy Kain, Owen Schmidt, et al.**
**Re: ONRC Action: Sales ready and needing to be awarded**.

**Privilege Asserted by Defendant:** Attorney-client, Work-product.
References request from DOJ.

**Ruling**:  This memorandum is subject to the attorney-client privilege.  However, the privilege was waived by Defendant's voluntary production of the Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A and 41D. The document is also subject to the at-issue waiver for both the attorney-client privilege and the work product protection.

48. **Document DE 798, Tab 7:** **E-mail w/attachment 1-page (handwritten date of 11/23/98 on e-mail)**
**From: Sue Zike**

**Privilege Asserted by Defendant:** Work-product.

E-mail attaching briefing paper, a 3-page memorandum from Sue Zike to Bob Williams, et al., dated November 23, 1998, regarding a counter-offer in <u>ONRC Action v. USFS</u>.  Discussing status of issues, the parties' position and potential resolutions.  Document was apparently to be used for a telephonic briefing involving attorneys.

**Ruling**: To the extent the document is work product, the document is subject to the at-issue waiver.

49. **Document DE 977, Tab 7:** **Memorandum, unsigned, dated Dec. 11, 1998 - 3 pages**
**From: Chris Jouhola, BLM**
**To: Dinah Bear, CEQ Counsel**
**Re: ONRC Action v. USFS, BLM: Timber Program Overview for Fiscal Years 1995 - 1999 and Effects of Surveying FY 1998 Timber Sales in Forest Service Regions 5 and 6 and Western Oregon BLM.**

44

**Privilege Asserted by Defendant**: Work-product.

**Ruling**: To the extent the document is work product, the protection is overcome by Plaintiffs' need.  The document is covered by the at-issue waiver.  The document also appears to be attorney-client privileged and would fall within the subject matter waiver of the Brouha Memorandum as it was prepared one month prior to the Brouha Memorandum and contains many of the same considerations.

50.   **Document DE 988, Tab 7: Memorandum dated December 9, 1998 - 1 page.**
      **From: Sue Zike**
      **To: Bob Williams, et al.**
      **Re: ONRC Action Risks and Benefits of Potential Action on Timber Sales**

**Privilege Asserted by Defendant**: Work-product.

**Ruling**: To the extent this document is work product, the protection is overcome by Plaintiffs' need.  The document is also covered by the at-issue waiver.

51.   **Document DE 1005, Tab 7: Memorandum dated December 1, 1998**
      **From: Bob Williams**
      **To: Al Ferlow, Paul Brouha, et al.**
      **Re: ONRC Action v. USFS (Northwest Forest Plan - Survey/Manage Lawsuit Settlement)**

**Privilege Asserted by Defendant:** Work-product.

This contains a chart comparing issues alleged in negotiations and Government's positions.  It appears to be a draft of the Brouha Memorandum.

**Ruling**: Although Defendant did not assert the attorney-client privilege for this document, it is subject to the attorney-client privilege and that privilege was waived by disclosure of the Brouha Memorandum.  The document is also subject to the at-issue waiver.

52.   **Document DE 57, Tab 8: E-mail dated February 19, 1999 - 2 pages.**
      **From: Sue Zike**
      **To: Owen Schmidt, et al.**
      **Re: Recommended action to take on sales during settlement negotiations.**

**Privilege Asserted by Defendant**: Work-product.

**Ruling**: This document is covered by the at-issue waiver.

53.     **Document DE 75 Tab 8**: **E-mail - October 5, 1998- two pages**
        **From: Robert J. Devlin**
        **To: rogden, szike (litigation coordinator), rescano**
        **Re: GIP sales**

**Privilege Asserted by Defendant:** Work-product.

The e-mail discusses consulting counsel about strategy and requesting advice on certain issues.

**Ruling**: Protected work-product.  No waiver.

54.     **Document 107 Tab 8**: **E-mail - June 14, 1999 - two pages**
        **From: Bill Funk**
        **To: szike (litigation coordinator), bdevlin, pkain, scrim, mredmond, dcampbell, bwoodard, fdorn**
        **Re: ONRC sales ready for award this week**

**Privilege Asserted by Defendant:** Work-product.

Same as Document DE 277 Tab 7, above.

55.     **Document DE 58 Tab 9**: **Fax cover page (one page), Letter (one page) - August 5, 1999, attached Timber Sales Tables (five pages) - August 5, 1999**
        **From: Susan M. Zike (litigation coordinator)**
        **To: John Watts (General Litigation), Darci Bermingham (TM), Mike Gippert (OGC), Owen Schmidt (OGC)**
        **Re: ONRC Action**

**Privilege Asserted by Defendant:** Attorney-client, Work-product.

The fax cover page is hand-written from the litigation coordinator to counsel, transmits information, requests advice and offers her opinion.

**Ruling**: Protected work-product.  Not subject to at-issue waiver or subject matter waiver.

56.     **Document DE 55 Tab 13** : **Memorandum - May 23, 1995 - fourteen pages**
        **From: Donald R. Knowles, Executive Director**
        **To: Intergovernmental Advisory Committee Members (distribution list)**
        **Re: June Intergovernmental Advisory Committee Meeting Agenda and Prework**

**Privileges Asserted by Defendant**: Attorney-client, Work-product.

The document includes the draft agenda, agenda topic overview, and status report for the June 1, 1995 Intergovernmental Advisory Committee Meeting.  The distribution list includes representatives of state and local government and Indian tribes, as well as employees of federal agencies.

**Ruling**: Not attorney-client privileged or protected work-product.  Neither the document itself, nor the privilege log, indicates that any of the individuals who prepared or received the document were attorneys.  The document was disseminated outside the federal government. In addition, there is no indication that the document was prepared in anticipation of litigation.

57.     **Document DE 56 Tab 13: Memorandum - June 8, 1995 - fourteen pages**
         **From: Donald R. Knowles, Executive Director**
         **To: Intergovernmental Advisory Committee Members (distribution list)**
         **Re: June 1995 Intergovernmental Advisory Committee Notes**

**Privileges Asserted by Defendant**: Attorney-client, Work-product.

The document consists of Donald R. Knowles' notes from the June 1995 Intergovernmental Advisory Committee Meeting described in DE 55, Tab 13, above.  The distribution list includes representatives of state and local government and Indian tribes, as well as employees of federal agencies.

**Ruling**: Not privileged.  Neither the document itself, nor the privilege log indicates that any of the individuals who prepared the document or who received the document were attorneys.  In addition, the document was created in the normal course of business, not in anticipation of litigation and was distributed outside the federal government.

58.     **Document DE 57 tab 13: Memorandum - June 29, 1995 - thirteen pages**
         **From: Donald R. Knowles, Executive Director**
         **To: Intergovernmental Advisory Committee members (distribution list)**
         **Re: July Intergovernmental Advisory Committee meeting Agenda and Prework**

**Privileges Asserted by Defendant**: Attorney-client, Work-product.

The document includes the draft agenda, agenda topic overviews and status reports for the July 6, 1995 Intergovernmental Advisory Committee Meeting.  The distribution list includes representatives of state and local government and Indian tribes, as well as employees of federal agencies.

**Ruling**: Not privileged.  Neither the document itself, nor the privilege log indicates that any of the individuals who prepared the document or who received the document were attorneys.  In addition, the document was not created in anticipation of litigation and was disseminated outside the federal government.

59. **Document DE 58 Tab 13**: Memorandum - July 13, 1995 - fifteen pages
    **From: Donald R. Knowles, Executive Director**
    **To: Intergovernmental Advisory Committee Members (distribution list)**
    **Re: July 1995 Intergovernmental Advisory Committee Meeting Notes**

**Privileges Asserted by Defendant**: Attorney-client, Work-product.

The document includes an executive summary of the Advisory Meeting as well as issue summaries.  The distribution list includes representatives of state and local government and Indian tribes, as well as employees of federal agencies.  There is no indication that any of the individuals are counsel.

**Ruling**: Not privileged.  Neither the document itself, nor the privilege log indicates that any of the individuals who prepared the document or who received the document were attorneys.  In addition, the document was not created in anticipation of litigation.

60. **Document DE 59 Tab 13**: Memorandum (four pages); Three Attachments: Jeske/Biswell Issue Paper on the Red Tree Vole (three pages), Survey Protocol (seventeen pages), Answers to Expected Questions (not provided in materials); Answers to Questions - November 4, 1996 - twenty-five pages
    **From: Elaine Y. Zielinski, State Director, OR/WA, USDI BLM and Robert W. Williams, Regional Forester, R6, USDA FS**
    **To: USDI BLM District Managers (Coos Bay, Eugene, Lakeview, Medford, Roseburg, Salem); USDA FS Supervisors within the Range of the Northern Spotted Owl in Oregon**
    **Re: Interim Guidance for Survey and Management Component 2 Species: Red Tree Vole**

**Privileges Asserted by Defendant**: Attorney-client, Work-product.

The memo provides interim guidance to Oregon field units of the FS and the BLM to meet the requirements in the Record of Decision for the Northwest Plan relative to "component 2" surveys for the red tree vole.

**Ruling**: Not privileged.  Neither the document itself, nor the privilege log indicates that any of the individuals who prepared or received the document were attorneys.  In addition, the document

was not created in anticipation of litigation. This document was prepared over one and one-half years before ONRC Action was filed.

61.     **Document DE 75, Tab 13: Memorandum dated July 29, 1998 - 2 pages.**
        **From: Robert M. Simmons, Regional Attorney**
        **To: G. Lynn Sprague, Regional Forester and Robert W. Williams**
        **Re: ONRC v. USFS; 3 facsimile coversheets with no attachments.**

**Privileges Asserted by Defendant**: Attorney-client, work-product.

**Ruling**: The memorandum and the three fax sheets are privileged and subject to the at-issue and subject matter waivers. The attorney-client privilege was also waived by the Government's voluntary production of the Brouha Memorandum and Deposition Exhibits 31, 35A, 35B, 41A and 41D.

62.     **Document DE 134, Tab 13: Fax documents accompanying a cover sheet dated**
        **October 7, 1998**
        **From: Sue Zike**
        **To: Brian Stone**

**Privileges Asserted by Defendant**: Work-product and attorney-client.

Attached are a three-page memorandum dated October 7, 1998, from Sue Zike to Arnie Holden, et al., regarding a settlement meeting October 13-14, with ONRC Action. Contains preparation for the settlement meeting. One page entitled "Special Instructions" dealt with the draft answer in the ONRC Action case and includes a draft answer.

**Ruling**: The first four pages of this document, i.e., the fax cover sheet and three-page memorandum are the subject of the at-issue waiver and the subject matter waiver by Defendant's voluntary production of the Brouha Memorandum and Deposition Exhibits 31, 35A, 35B, 41A and 41D.

The remaining documents in this exhibit are both attorney-client privileged and work product. No waiver has occurred with respect to the contents of these documents and the opinion work-product protection in these documents has not been overcome by a showing of need.

63.     **Document DE 183, Tab 13: E-mail dated November 24, 1998 - 2 pages.**
        **From: Sue Zike**
        **To: Distribution List**

**Privileges Asserted by Defendant**: Work-product and attorney-client.

49

Forwarding an e-mail of unknown date, from B. Devlin informing litigation coordinators about timber sales.

**Ruling**: The attorney-client privilege has been waived by the Government's voluntary production of the Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A and 41D.  The document is also subject to the at-issue waiver.

64. **Document DE 205, Tab 13: E-mail dated December 4, 1998 - 2 pages**
    **From: Sue Zike**
    **To: Distribution List**
    **Re: ONRC Action: Process to award sales named by Plaintiffs**

**Privileges Asserted by Defendant**: Work-product, attorney-client.

**Ruling**: Attorney-client privilege has been waived by Defendant's voluntary production of the Brouha Memorandum and Deposition Exhibits 35A, 41A and 41D.  The document is subject to the at-issue waiver.

65. **Document DE 210, Tab 13: Memorandum dated December 11, 1998**
    **From: Sue Zike**
    **To: ONRC Action Coordinators**
    **Re: "Assessing ONRC Action Named Sales for Award"**
    Discusses DOJ's requests.  Attaches chart entitled "Comparison of Lawsuit Issues and Administrative Appeal Issues and Risk Assessment and Other Considerations in Awarding Sales."

**Privileges Asserted by Defendant**: Work-product, attorney-client.

**Ruling**: This document is covered by the at-issue waiver.  Further, any attorney-client privilege was waived by disclosing documents of the same subject matter, i.e., the Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A and 41D.

66. **Document DE 229, Tab 13: E-mail dated 1/21/99 -1 page string.**
    **From: Brian Stone**

**Privileges Asserted by Defendant**: Work-product, attorney-client.

Forwarding an email from Sue Zike providing advice to the Regions regarding ONRC Action sales that the Government would like to award and the process Region 6 is using to determine risk analysis for the sale.

**Ruling**: Attorney-client privilege has been waived by voluntary production of Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A and 41D.  Document is covered by at-issue waiver.

67.   **Document DE 230, Tab 13: E-mail dated January 22, 1999 - 1 page string.
      From: Brian Stone
      To: Distribution List
      Re: ONRC Action lawsuit, sales, instructions.**

**Privileges Asserted by Defendant**: Work-product, attorney-client.

  Attaches December 11, 1998 e-mail with charts discussed above in Document DE 210.

**Ruling**: Documents are covered by the at-issue waiver.  Any attorney-client privilege was waived by Defendant's voluntary disclosure of the Brouha Memorandum and Deposition Exhibits 31, 35A, 35B, 41A and 41D.

68.   **Document DE 306 Tab 13: Facsimile Cover Page - April 14, 1999- one page
      From: Sue Zike (litigation coordinator)
      To: Susan Carter, Jan Flatter, Jamia A-M, Ward Hoffman, Fred Dorn, Mike
      Redmond, Diana Bus, Craig Snider, Tom Link, Ken Grisby, John Fertig, Mike
      Hupp, Dennis Campbell, Greg Ferguson, Jim Zander, Ed Matthew, Brian
      Stone
      Re: ONRC 4/12 At-Risk Sale List**

**Privileges Asserted by Defendant:** Attorney-client, Work-product.

    The Court previously ordered Defendant to produce the attachment to Plaintiffs, but to submit the fax cover page in camera.  Tr. (Oct. 7, 2005) at 120-21.

    The fax cover page contains a hand-written recipient list.  It does not contain any other information.

**Ruling**: Not privileged.  The fax cover page does not contain any information described in the Government's privilege log.

69.   **Document DE 412 Tab 13: E-mail - no date - one page
      From: Ed Matthews
      To: Distribution List**

**Privileges Asserted by Defendant:** Attorney-client, Work-product.

Mr. Matthews reports what he heard regarding a remedy the plaintiffs requested in the <u>ONRC Action</u> lawsuit.

**Ruling**: Not a privileged attorney-client communication because there is no indication that an attorney drafted or received the communication and because the communication does not seek, give or receive legal advice.  It is also not protected work product.

70.     **Document DE 414, Tab 13: E-mail - 1 page**

**Privileges Asserted by Defendant:** Attorney-client, Work-product.

Providing opinion regarding <u>ONRC Action</u> injunction hearing results of 8/6/99 on awarded sales.   Ed Matthews to Distribution List via email, reports on the Court's ruling, upcoming arguments and provides and "upshot" of this.

**Ruling**: This document is covered by the at-issue waiver.  Further, attorney-client privilege was waived by defendant's voluntary production of the Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A, and 41D.

71.     **Document DE 578, Tab 13: Memorandum dated October 5, 1999 - 3 pages.**
        **From: James Furnish, Deputy Chief, National Forest System**
        **To: Regional Foresters**
        **Re: Implementation of timber sale decisions and pre-award activities.**

**Privileges Asserted by Defendant:** Attorney-client, Work-product.

The letter provides uniform National policies to guide the agency's timber sale pre-award activities in light of certain litigation.

**Ruling**: Attorney-client privilege was waived by voluntary production of the Brouha Memorandum and Deposition Exhibits 35A, 35B, 41A and 41D.  The document is subject to the at-issue waiver.

72.     **Document DE 8 Tab 14: Memorandum - June 24, 1998 (two pages) with**
        **attached "Proposed Memorandum of Understanding" (nine pages)**
        **From: Regional Interagency Executive Committee**
        **To: Katie McGinty, Chair, CEQ**
        **Re: Proposed New Forest Ecosystems Management Memorandum of**
        **Understanding for Concurrence**

**Privileges Asserted by Defendant**: Attorney-client, Work-product, Deliberative process.

The memorandum indicates that on August 29, 1997, assistance was requested in developing a review process leading to the revision and renewal of the Forest Ecosystem Management Memorandum of Understanding. The attachment is entitled "Proposed Memorandum of Understanding for Northwest Forest Management." (seven pages).

**Ruling**: Not subject to attorney-client or work-product privileges. Defendant has not established that the document was drafted by or sent to attorneys. In addition, the memorandum was not prepared in anticipation of litigation. As to deliberative process, the Court rules that Defendant failed to meet the requisites for asserting the privilege in that neither the head of the agency nor his or her delegee invoked the privilege.

73.    **Document DE 22 Tab 14: Letter - February 2, 1999 - three pages**
       **From: Jim Pipkin**
       **To: George Frampton , Esquire and Acting Chair of CEQ**
       **Cc: Don Knowles (REO Executive Director)**
       **Re: Northwest Forest Plan Implementation**

**Privileges Asserted by Defendant**: Attorney-client, Work-product, Deliberative process.

The document discusses the creation of a new coordinating committee. It explains that the new coordinating committee would seek to avoid misunderstandings and conflicts like those experienced between the region and CEQ/DOJ over the history and intent of the change of schedule concerning "survey and manage" activities.

**Ruling**: Not protected by attorney-client or work-product privileges. Although this letter was sent to an attorney, it does not seek legal advice and was not prepared in anticipation of litigation. To the extent this letter can be deemed attorney-client privileged, it is covered by the at-issue and subject-matter waivers. Defendant did not meet the requisites for asserting the deliberative process privilege in that neither the head of the agency nor his or her delegee invoked the privilege.

## Conclusion

1.    Defendant shall produce all nonprivileged documents and all documents for which the privilege has been waived forthwith.

2.    DE Documents 122 Tab 13, and 1 Tab 14, though listed in the Court's October 14, 2005 order, and on Defendant's privilege log, were not submitted to the Court for in camera review. Defendant is directed to submit these documents for in camera review forthwith.

3.    Documents 1, 10,12, 14, 15, 77, 93, 111, and 112, though listed on Defendant's CEQ privilege log, were not submitted to the Court for <u>in camera</u> review. Defendant is directed to submit these documents for <u>in camera</u> review forthwith.

<u>s/Mary Ellen Coster Williams</u>
**MARY ELLEN COSTER WILLIAMS**
**Judge**