**Nos. 01-570C, 01-627C, 04-501C**
**(JUDGE WILLIAMS)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**BLUE LAKE FOREST PRODUCTS, INC.,**
**Plaintiff,**

**TIMBER PRODUCTS COMPANY,**
**Plaintiff,**

**CLR TIMBER HOLDINGS, INC.,**
**Plaintiff,**

**v.**

**THE UNITED STATES,**
**Defendant.**

---

**DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND APPENDIX**

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

ELLEN M. LYNCH
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 353-7994
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
Lori Polin Jones
James L. Rosen
Marcus R. Wah
Ben Hartman
Office of the General Counsel
United States Department of Agriculture

March 7, 2008

**TABLE OF CONTENTS**

TABLE OF CONTENTS ………………………………………………………………….. i

TABLE OF AUTHORITIES ………………………………………………………………ii

DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT………………1

STATEMENT OF T HE ISSUES …………………………………………………………..2

STATEMENT OF THE CASE …………………………………………………………….2

I. Nature Of The Case ……………………………………………………………2

II. Statement Of Facts ……………………………………………………………..3

ARGUMENT ……………………………………………………………………………..5

I. Summary Judgment Standards …………………………………………………5

II. Summary Judgment Is Appropriate Because The Contracts Permit Suspension And Do Not Provide A Warranty……………………………………6

III. The Forest Service Properly Suspended Plaintiffs' Timber Sale Contracts Pursuant To A Contract Provision………………………………………………..8

IV. Contract Provision C6.25 Does Not Create A Warranty ………………………..11

CONCLUSION …………………………………………………………………………….12

## TABLE OF AUTHORITIES

### FEDERAL CASES

Alaska Lumber & Pulp Company v. United States,
2 F.3d 389 (Fed. Cir. 1993) ....................6

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)....................5

Aragona Constr. Co. v. United States,
165 Ct. Cl. 382 (1964) ....................10

Bishop Engineering Co. v. United States,
180 Ct. Cl. 411 (1967) ....................7

Broome Construction, Inc. v. United States,
492 F.2d 829 ....................10

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)....................5, 6

Cherry Hill Sand & Gravel Co. v. United States,
8 Cl. Ct. 757 (1985) ....................7

Crowley v. United States,
398 F.3d 1329 (Fed. Cir. 2005)....................12

Dana Corp. v. United States,
470 F.2d 1032 (Ct. Cl. 1972) ....................7

Do-Well Machine Shop Inc. v. United States,
870 F.2d 637 (Fed. Cir. 1989)....................10

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir. 1985)....................7

Gaston & Associate, Inc. v. United States,
27 Fed. Cl. 243 (1992) ....................7

General Bronze v. United States,
338 F.2d 117 (Ct. Cl. 1964) ....................10

Gould Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991)....................7

Gresham, Smith & Partners v. United States,

24 Cl. Ct. 796 (1991) ....................................................7

Hegeman-Harris & Co. v. United States,
440 F.2d 1009 (Ct. Cl. 1971) ....................................................6

Lockheed Martin IR Imaging Systems, Inc. v. United States,
108 F.3d 319 (Fed. Cir. 1997)....................................................7

Madigan v. Hobin Lumber Co.,
986 F.2d 1401 (Fed. Cir. 1993)....................................................10

McCall v. United States Postal Serv.,
839 F.2d 664 (Fed. Cir. 1988)....................................................10

Scott Timber Co. v. United States,
40 Fed. Cl. 492 (1998) , aff'd in part, rev'd in part, 333 F.3d 1358 (Fed. Cir. 2003) ....8

Scott Timber Co. v. United States,
333 F.3d 1358 (Fed. Cir. 2003)....................................................8, 11, 12

Seaboard Lumber v. United States,
19 Cl. Ct. 310 (1990) ....................................................7

Seaboard Lumber Co. v. United States,
903 F.2d 1560 (Fed. Cir. 1990)....................................................9, 10

Seal-Flex, Inc. v. Athletic Track and Court Const.,
98 F.3d 1318 (Fed. Cir. 1996)....................................................5

State of Arizona v. United States,
216 Ct. Cl. 221 (1978) ....................................................6, 7

Sun Shipbuilding & Dry Dock Co. v. United States,
393 F.2d 807 (Ct. Cl. 1968) ....................................................7

Union Management Corp. v. United States,
179 Ct. Cl. 534 (1967) ....................................................7

Winstar Corp. v. United States,
64 F.3d 1531 (Fed. Cir. 1995), aff'd 518 U.S. 839, 116 S.Ct. 2432 (1996)....................6

Wunderlich v. United States,
342 U.S. 98 (1951)....................................................9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BLUE LAKE FOREST PRODUCTS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 01-570C (Judge Williams) |
| TIMBER PRODUCTS COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 01-627C (Judge Williams) |
| CLR TIMBER HOLDINGS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 04-501C (Judge Williams) |

DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims (RCFC) and the Court's February 14, 2008 order, we respectfully request the Court to enter partial summary judgment in favor of the United States in the above-referenced cases because there is no genuine issue of any material fact and the United States is entitled to judgment as a matter of law. In support of this request, we rely upon plaintiffs' complaints, our proposed findings of uncontroverted facts filed separately pursuant to RCFC 56(h)(1), and the following memorandum

with attached appendix. (App.).

## MEMORANDUM

## STATEMENT OF THE ISSUES

1. Whether, pursuant to contract provision C6.01, the United States Forest Service ("Forest Service") had the authority to suspend plaintiffs' timber sale contracts to comply with a court order issued by the United States District Court for the Western District of Washington.

2. Whether, pursuant to contract provision C6.25, the Forest Service warranted that all protective measures had been taken for endangered, threatened, sensitive, or Category 2 survey species.

## STATEMENT OF THE CASE

### I. Nature Of The Case

In these consolidated cases, plaintiffs, Blue Lake Forest Products, Inc. ("Blue Lake"), Timber Products Company ("Timber Products"), and CLR Timber Holdings, Inc. ("CLR"), allege that the Forest Service breached their respective contracts by wrongfully suspending the Happy Thin, Jack Heli, and Too Wild timber sales in response to a court order. Plaintiffs also allege that the Forest Service warranted that all protective measures had been taken for endangered, threatened, or sensitive species prior to contract award. We will demonstrate that the Forest Service properly suspended the contracts pursuant to a contract clause that permits suspension in response to a court order. Further, the Forest Service did not warrant that all protective measures had been taken for all wildlife prior to contract award.

II. Statement Of Facts[1]

These consolidated cases deal with three timber sale contracts - two located on the Klamath National Forest in California, and one located on the Siskiyou National Forest in Oregon. App. 13-14, 38-39, 70-71. The Forest Service awarded the Happy Thin timber sale contract to Blue Lake as of July 6, 1999, awarded the Jack Heli timber sale contract to Timber Products as of March 2, 1999, and awarded the Too Wild timber sale contract to CLR as of May 14, 1999. App. 11, 36-37, 66-69. Each of these contracts included contract provision C6.01, or CT6.01,[2] which specifically provides for the interruption or delay of operations to comply with a court order. App. 16, 41, 74. Further, all three contracts included contract provision B8.21, which allows for a Contract Term Adjustment ("CTA" or "extension") if the Forest Service requests an interruption or delay of operations of more then ten days. App. 15, 40, 72. The three contracts also included contract provision C6.25, which identified areas needing special measures for threatened, endangered, or sensitive species, and gives the Forest Service the authority to cancel or unilaterally modify the contract if the protection measures are inadequate, if other areas are identified, or if new species are identified. App. 17, 42, 75.

On August 2, 1999, the United States District Court for the Western District of Washington issued an order in Oregon Natural Resource Council Action, et al. v. United States

---

[1] In accordance with RCFC 56(h)(1), we have filed separately our detailed proposed findings of uncontroverted facts.

[2] The text of C6.01 and CT6.01 is essentially identical. The "C" or "CT" (or "B" and "BT") prefix relates to the way the timber is sold - "B" or "C" when timber is sold based upon the actual volume of timber harvested, and "BT" or "CT" when timber is sold based upon estimated timber volume. Because the difference is immaterial, "B," "BT," "C," and "CT" will be used interchangeably throughout this brief for clauses in all three timber sale contracts.

Forest Service and Bureau of Land Management, No. C98-942WD (W.D. Wash.), finding that the Forest Service and BLM did not comply with the Category 2 survey requirements outlined in the Northwest Forest Plan ("NFP"). App. 1-5. The ONRC Action court issued a supplemental order on August 26, 1999, that enjoined operations on twenty-five timber sales, including the three sales at issue in this case. App. 7-10.

The Forest Service, in accordance with the ONRC Action court order, suspended operations on the three timber sales, and sent letters to Blue Lake, Timber Products, and CLR, informing the purchasers that work on the timber sales must be suspended due to a court order. App. 18, 43, 76. The letters all included a copy of the ONRC Action court's August 26, 1999 order. Id.

After all operations on the timber sales were suspended, the plaintiffs availed themselves of the available contract remedies under C6.01, which are limited to out-of-pocket expenses and contract term adjustments. App. 16, 41, 74. Blue Lake filed a claim for $7,964.50 in out-of-pocket expenses on November 17, 2000; the Forest Service approved that claim on January 30, 2001. App. 30-32. On June 13, 2007, Timber Products submitted a claim, including $546,007.94 of out-of-pocket expenses; the Forest Service has not issued a final decision on that claim. App. 56-61. Finally, CLR filed a claim on September 13, 2003, that included a claim for out-of-pocket expenses. App. 78-91. The Forest Service determined that CLR was entitled to $38,558.00 in out-of-pocket expenses. App. 95. In all three cases, the Forest Service denied a portion of plaintiffs' claims based upon language in C6.01 that limits monetary recovery to out-of-pocket expenses; and plaintiffs claimed lost profits, attorney's fees, replacement cost of timber, and other anticipatory losses, such as claims for interest that are not available under

C6.01. App. 16, 41, 74.

Blue Lake filed two requests for CTAs pursuant to BT8.21. App. 33-35. The Forest Service granted these requests, and extended Blue Lake's contract term to June 18, 2002. App. 35. Timber Products also requested CTAs pursuant to B8.21. App. 62, 64. The Forest Service granted these requests, and extended Timber Products' contract term to July 1, 2002. App. 63, 65. CLR requested a reduction in down-payment for the Too Wild timber sale, pursuant to CT4.222. App. 73, 77. The Forest Service granted CLR's request, and reduced its down-payment from $328,200 to $6,564.00. App. 77.

Blue Lake filed its complaint in this Court on October 2, 2001, Timber Products filed its complaint on November 6, 2001, and CLR filed its complaint on March 9, 2004. Plaintiffs allege that the Forest Service breached their timber sale contracts by wrongfully suspending operations.

## ARGUMENT

### I. Summary Judgment Standards

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-51 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. Seal-Flex, Inc. v. Athletic Track and Court Const., 98 F.3d 1318, 1321 (Fed. Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." Id. Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's

case, then the burden shifts to the non-moving party to proffer such evidence. Celotex, 477 U.S. at 325. The Supreme Court has emphasized that the "[s]ummary judgment procedure is not properly regarded as a disfavored procedural shortcut but, rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action . . . .'" Celotex, 477 U.S. at 327 (citations omitted).

As we demonstrate below, the undisputed facts do not support the complaints of Blue Lake, Timber Products, and CLR, that (1) the Forest Service wrongfully suspended the contracts, or (2) that the Forest Service warranted that protective measures for all wildlife had been taken prior to contract award. Therefore, the United States respectfully requests that the Court enter judgment in its favor regarding the Forest Service's right to suspend the contracts, and that the Forest Service did not provide a warranty.

## II. Summary Judgment Is Appropriate Because The Contracts Permit Suspension And Do Not Provide A Warranty

Contract interpretation is a question of law for the Court to decide. Alaska Lumber & Pulp Company v. United States, 2 F.23d 389, 392 (Fed. Cir. 1993). Provisions of a contract must be construed so as to effectuate the spirit and purpose of the contract. State of Arizona v. United States, 216 Ct. Cl. 221, 235 (1978). The purpose of contract interpretation is to carry out the intent of the parties. Hegeman-Harris & Co. v. United States, 440 F.2d 1009, 1014 (Ct. Cl. 1971); accord Winstar Corp. v. United States, 64 F.3d 1531, 1540 (Fed. Cir. 1995) (en banc), aff'd 518 U.S. 839, 116 S.Ct. 2432 (1996).

The Court's first responsibility when construing a disputed contractual provision is to ascertain whether the meaning of the disputed contract provision is plain from the language or

whether an ambiguity exists. Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 802 (1991). A contract is ambiguous only if it is susceptible to differing interpretations, each consistent with the language of the contract as a whole. Sun Shipbuilding & Dry Dock Co. v. United States, 393 F.2d 807, 815-16 (Ct. Cl. 1968); see Gould Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Contract terms are not ambiguous merely because the parties disagree as to their meaning. E.g., Cherry Hill Sand & Gravel Co. v. United States, 8 Cl. Ct. 757, 764 (1985). The Court should not strain to create an ambiguity where none exists. Dana Corp. v. United States, 470 F.2d 1032, 1043 (Ct. Cl. 1972); Bishop Engineering Co. v. United States, 180 Ct. Cl. 411, 416 (1967); Opalack v. United States, 5 Cl. Ct. 349, 259 (1984).

Further, a contract must be construed "as a whole" to harmonize all its provisions. Lockheed Martin IR Imaging Systems, Inc. v. United States, 108 F.3d 319, 323 (Fed. Cir. 1997); State of Arizona v. United States, 216 Ct. Cl. at 235. An interpretation of a contract that "gives reasonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." State of Arizona, 216 Ct. Cl. at 235; Fortec Constructors v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985). Conversely, contract clauses cannot be interpreted in isolation. Gaston & Assoc., Inc. v. United States, 27 Fed. Cl. 243, 249 n.7 (1992) (citing Union Management Corp. v. United States, 179 Ct. Cl. 534 (1967)); see Seaboard Lumber v. United States, 19 Cl. Ct. 310, 316 (1990).

## III. The Forest Service Properly Suspended Plaintiffs' Timber Sale Contracts Pursuant To A Contract Provision

Whether the Forest Service properly suspended these contracts is a question of pure contract interpretation. The Forest Service suspended plaintiffs' timber sale contracts pursuant to a clause in all three contracts that permits the Forest Service to suspend the contract to comply with a court order. The three contracts contain contract provision C6.01. App. 16, 41, 74. C6.01 provides:

> INTERRUPTION OR DELAY OF OPERATIONS. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of the Contracting Officer: . . . (b) To comply with a court order, issued by a court of competent jurisdiction.

Id. The plain and unambiguous language of this contract clause authorizes the Forest Service to suspend timber sale contracts pursuant to court order. Plaintiffs ask this Court to ignore a clear and unambiguous contract provision, to which they agreed, and find that the Forest Service wrongfully suspended these timber sale contracts.

In a case involving the suspension of a timber sale contract pursuant to a court-ordered Temporary Restraining Order, the United States Court of Appeals for the Federal Circuit recognized that the "Forest Service had authority to unilaterally suspend operations under any contracts with the C6.01 clause." Scott Timber Co. v. United States, 333 F.3d 1358, 1366 (Fed. Cir. 2003). Furthermore, "suspension was clearly authorized by contract clause C6.01(b), which vests the Forest Service with the power to suspend the contracts if necessary '[t]o comply with a court order.'" Scott Timber Co. v. United States, 40 Fed. Cl. 492, 500-501 (1998) , aff'd in part, rev'd in part, 333 F.3d 1358 (Fed. Cir. 2003). Similarly, in these cases, the Forest Service, in accordance with the plain language of C6.01, suspended the contracts after the United States

District Court for the Western District of Washington issued an order on August 26, 1999 enjoining a number of timber sales in the Pacific Northwest, including the three sales at issue here. App. 7-10. Contracting officers for the three sales wrote letters to the plaintiffs informing them of the suspension, and each letter referred to the district court's order as the cause of the suspension. App. 18, 43, 76. Undeniably, the Forest Service suspended these contracts "to comply with a court order" and did so in accordance with its contract rights.[3]

Furthermore, in the contract, the parties expressly agreed upon what remedies would be available to plaintiffs in the event a court-ordered suspension was initiated. Clause C6.01 contains a liability provision that defines the available remedies as a contract term adjustment – that is, a term extension – and out-of-pocket expenses. App. 16, 41, 74. The plaintiffs fully availed themselves of the remedies to which they agreed in C6.01, including seeking contract term adjustments and repayment of out of pocket expenses.[4] In essence then, the pending suits

[3] The fact the parties did not engage in detailed discussions or specific negotiations concerning the language of the clause, does not render the clause any less binding or, somehow, unenforceable. As the court of appeals has recognized, even when a contract is a "'take it or leave it' offer[] by the government . . . ," the contractor was not "compelled or coerced into making the contract [with the government]. It was a voluntary undertaking on their part." Seaboard Lumber Co. v. United States, 903 F.2d at 1564-65, citing Wunderlich v. United States, 342 U.S. 98, 100 (1951) (upholding contract terms that denied judicial review of contracting officers' decisions).

[4] Blue Lake requested $7,964.50 for out-of-pocket expenses, and the Forest Service approved that claim. App. 30-32. Timber Products filed a supplemental claim that included out-of-pocket expenses for the Forest Service's consideration on June 13, 2007; the Forest Service is still considering that claim. App. 56-61. CLR submitted a claim that included out-of-pocket expenses, and the Forest Service determined that CLR was entitled to $38,558.00 for out-of-pocket expenses. App. 78-91, 95. Furthermore, both Blue Lake and Timber Products requested, and the Forest Service granted, Contract Term Adjustments ("CTAs") pursuant to B8.21. App. 33-35, 62-65. Finally, CLR requested a temporary reduction in its down payment under CT4.222. App. 77. The Forest Service also granted CLR's request, reducing CLR's down payment for the Too Wild sale from $328,2000 to $6,564. Id.

are an attempt by plaintiffs to obtain additional remedies, over and above that to which they agreed to be bound in the contract. However, the "out-of-pocket expenses" contemplated by the contract specifically do not include "lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser." App. 16, 41, 74.

Plaintiffs are bound by that to which they agreed. As the United States Court of Appeals for the Federal Circuit has recognized; "[a] long line of our precedent has established that agreed upon terms must be enforced." Madigan v. Hobin Lumber Co., 986 F.2d 1401, 1403 (Fed. Cir. 1993) (citing Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1564-65 (Fed. Cir. 1990). This principle is equally correct even when the Government is a party to the contract. General Bronze v. United States, 338 F.2d 117, 124 (Ct. Cl. 1964) ("If the Government is to be held strictly to its contractual obligations as though it were a private obligor, then, of course it s entitled to insist that those who contract with it shall be held to the same accountability."). Indeed, this principle is not merely "well-established," it is bedrock law in our jurisprudence See generally, Do-Well Mach. Shop Inc. v. United States, 870 F.2d 637, 640-41 (Fed. Cir. 1989); McCall v. United States Postal Serv., 839 F.2d 664, 667 (Fed. Cir. 1988); Broome Constr., Inc. v. United States, 492 F.2d 829, 834, 203 Ct. Cl. 521 (1974); Aragona Constr. Co. v. United States, 165 Ct. Cl. 382, 390 (1964).

In the suits pending before this Court, the plain language of the parties' contract gave the Forest Service the authority to suspend the timber sale contracts to comply with a court order and limited a purchaser's remedies in the event of such a suspension. To hold, as plaintiffs here request, that the Forest Service's action in invoking its suspension rights under the contract (pursuant to a court order) amounts to a breach of the contract would vitiate the plain language of

the contract and would conflict with controlling precedent.

Accordingly, the Government is entitled to summary judgment with respect to its authority to suspend the timber sale contracts pursuant to a valid court order.

IV. Contract Provision C6.25 Does Not Create A Warranty

To the extent plaintiffs' complaints can be read to allege that the Forest Service somehow "warranted" its actions pursuant to C6.25, we are also entitled to judgment as a matter of law. This question has been considered, and settled in the Government's favor, by the United States Court of Appeals for the Federal Circuit.

Clause C6.25 provides:

> PROTECTION OF HABITAT OF ENDANGERED, THREATENED, AND SENSITIVE SPECIES. (1/93)
> Location of areas needing special measures for protection of plants or animals listed as threatened or endangered under the Endangered Species Act of 1973, as amended, or as sensitive by the Regional Forester under authority of FSM 2670, are shown on Sale Area Map and identified on the ground. Measures needed to protect such areas have been included elsewhere in the contract or are as follows . . . . If protection measures prove inadequate, if other such areas are discovered, or if new species are listed, Forest Service may either cancel under C8.2 or unilaterally modify this contract to provide additional protection regardless of when such facts become known . . . .

C6.25 (emphasis added). Summary judgment is appropriate in these cases because, as a matter of law, C6.25 of the timber sale contracts does contain any warranty, express or implied, that the Forest Service had taken all protective measures regarding wildlife prior to contract award.

In Scott Timber Co. v. United States, the United States Court of Appeals for the Federal Circuit reviewed the plain language of C6.25, and specifically held that the clause did not create a warranty. Scott Timber Co. v. United States, 333 F.3d at 1371. The Court further held that the

timber purchaser "could not reasonably rely on the assumption that no further measures would ever be needed . . . ." Id.[5] Of course, it goes almost without saying, that the decisions of the appellate court are binding upon this tribunal. Crowley v. United States, 398 F.3d 1329, 1335 (Fed. Cir. 2005).

The plaintiffs cannot establish that the Forest Service warranted, in C6.25 or any other contract clause, that all protective measures were taken for the species on the timber sale contracts at issue here because, as a matter of law, the contract does not create a warranty. In the absence of such a warranty, entry of summary judgment in defendant's favor is warranted.

## CONCLUSION

Because there is no genuine issue as to any material fact and the United States is entitled to judgment as a matter of law, we respectfully request the Court to enter summary judgment in favor of the United States with respect to the Forest Service's authority to suspend the contracts pursuant to C6.01, and that C6.25 did not create a warranty.

[5] That the contracts at issue in Scott Timber were made pursuant to section 318 of the Department of the Interior Appropriations Act of 1990 (so-called "§ 318 contracts") is immaterial. Scott Timber Co. v. United States, 333 F.3d at 1360. While the contracts at issue in these cases are not § 318 contracts, the contract language the court of appeals construed is identical to the language in the contracts at issue here, and, therefore, the appellate court's interpretation regarding that contract language is controlling.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

/s/ Ellen M. Lynch
ELLEN M. LYNCH
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 353-7994
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
Lori Polin Jones
James L. Rosen
Marcus R. Wah
Ben Hartman
Office of the General Counsel
United States Department of Agriculture

March 7, 2008

Certificate of Filing

I hereby certify that on this 7th day of March, 2008, a copy of "Defendant's Partial Cross-Motion For Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Ellen M. Lynch
Ellen M. Lynch