United States Department of Agriculture

Forest Service

# Timber Sale Contract

Purchaser: Blue Lake Forest Products

Sale Name: Happy Thin Heli

Award Date: 07/06/99

Contract No.: 060772

Region: Five

National Forest: Klamath

Ranger District: Happy Camp

☆U.S.GPO:1989-0-624-786

FS-2400-13(7/70)

FS-2400-6T, Page 101 (9/73)

| USDA - FOREST SERVICE<br><br>TIMBER SALE CONTRACT<br>(Applicable to Sales to be Scaled After Felling) | | NAME OF PURCHASER<br>BLUE LAKE FOREST PRODUCTS<br>P O Box 1176<br>Arcata, CA 95518 | | |
|---|---|---|---|---|
| NATIONAL FOREST<br>Klamath | RANGER DISTRICT<br>Happy Camp | REGION<br>Five (PSW) | CONTRACT NO.<br>060772 | |
| SALE NAME<br>Happy Thin Heli Timber Sale | | SUBREGION<br>Coast Range | AWARD DATE<br>07/06/99 | TERMINATION DATE<br>03/31/01 |

The parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and Blue Lake Forest Products,

1

a corporation organzied and existing under the laws of the State of California hereinafter called Purchaser.

2 Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit,was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement; and the parties hereto desiring torecord their agreement; now therefore,

In consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

This contract consists of three Divisions: AT - Specific Conditions, BT - Standard Provisions, and CT - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division CT. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division CT - Special Provisions.

**IN WITNESS WHEREOF,** the parties hereto have executed this contract as of the award date.

UNITED STATES OF AMERICA

BY [signature]

Edward L. Matthews, CONTRACTING OFFICER
(Title) Date: 7/19/99

Two Witnesses:3

[signature] Ronald L. Johnston
(Name)

P.O. Box 1176, Arcata, CA 95518
(Address)

[signature] Kenneth P. Skaggs
(Name)

P.O. Box 1176, Arcata, CA 95518
(Address)

Blue Lake Forest Products
(Purchaser)4

BY [signature]

Bruce M. Taylor, Sr., President
(Title)

P O Box 1176, Arcata, CA 95518
(Business Address)

I,5 Kathleen M. Forsburg, certify that I am the Assistant Secretary of the corporation named as Purchaser herein; that Bruce M. Taylor, Sr. who signed this contract on behalf of Purchaser, was then President of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

[signature] CORPORATE SEAL6

or prior to Termination Date, shall remain in Forest Service.

BT8.12 **Liability for Loss.** If Included Timber is destroyed or damaged by fire, wind, flood, insects, disease or similar cause, the party holding title shall bear the timber-value loss resulting from such destruction or damage, except that such losses caused by insect or disease after felling of timber, shall be borne by Purchaser unless Purchaser is prevented from removing such timber for reasons that would qualify for Contract Term Adjustment. There shall be no obligation for Forest Service to supply, or for Purchaser to accept and pay for, other timber in lieu of that destroyed or damaged. This Subsection shall not be construed to relieve either party of liability for negligence.

BT8.2 **Period of Contract.** All obligations of Purchaser shall be discharged not later than "Termination Date" stated in AT16, unless it is adjusted pursuant to BT8.21 or extended pursuant to BT8.23 or BT8.33, excepting only those obligations for which Forest Service has given written permission to delay performance. Such written permission shall be considered a Contract Term Adjustment for the purpose of Purchaser completing performance of obligations covered by such permission.

BT8.21 **Contract Term Adjustment.** "Contract Term Adjustment" means adjustment only as provided immediately above and for the three circumstances described in this Subsection. Under said circumstances, the contract term shall be adjusted in writing to include additional calendar days in one or more Normal Operating Seasons equal to the actual time lost, except as limited by (b) below.

To qualify for such adjustment, Purchaser shall give written notice of the lost time not later than 30 calendar days after end of Normal Operating Season in which time was lost and at least 10 calendar days before Termination Date. Forest Service shall make prompt written acknowledgement of such notice indicating its concurrence with the number of days Forest Service considers as qualifying for the adjustment. Lost portions of days shall be disregarded in computing time lost. The three circumstances qualifying for a Contract Term Adjustment are:

(a) Purchaser experiences delay in starting scheduled operations or interruptions in active operations either of which stops removal of Included Timber from Sale Area through curtailment in felling and bucking, yarding, skidding and loading, hauling or road construction, as scheduled under BT6.31, for 10 or more consecutive calendar days during a Normal Operating Season due to causes beyond Purchaser's control, including but not limited to acts of God, acts of the public enemy, acts of Government, labor disputes, fires, insurrections or floods.

(b) Causes described in (a) substantially affect the disposition or processing of Included Timber during Normal Operating Season through their effects on primary timber processing facilities, with a resulting delay of 60 calendar days or more in use of such facilities. In such event, Contract Term Adjustment shall not extend for more than 12 consecutive months.

(c) Purchaser (i) accepts Forest Service written request to interrupt or delay operations for any purpose other than suspension under BT4.4 or BT9.3 or (ii) suffers an interruption or delay of Purchaser's Operations affecting skidding, yarding and loading because of fire emergency closure ordered by Forest Service (or another agency in its behalf), and the total of such lost time is 10 or more calendar days during any Normal Operating Season.

If AT7 shows dates for scheduled rate redeterminations that are later than the beginning date of interruption or delay, and Termination Date is eligible for adjustment as described in this Subsection prior to said dates, the rate redetermination shall be made as originally scheduled. If redetermined rates plus Bid Premiums are higher than rates in effect immediately prior to the rate redetermination date, the date on which the redetermined rates shall become effective shall be adjusted by the number of days equal to the days lost prior to said rate redetermination date.

If Termination Date is adjusted as described in this Subsection and later extended under BT8.23, the appraisal for the extension shall be made as of the unadjusted Termination Date, but the date on which the new rates become effective, if higher than Current Contract Rates immediately prior to Termination Date, shall be the adjusted Termination Date.

BT8.22 **Termination for Catastrophe.** In event of Catastrophic Damage, this contract shall be either modified under BT8.33 following rate redetermination under BT3.32 or terminated under this Subsection.

BT8.221 **Termination by Purchaser.** This contract shall be terminated upon election and written notice by Purchaser if Catastrophic Damage rate redetermination under BT3.32 shows that the appraised weighted-average Conversion Return per unit of measure of all Included Timber remaining immediately prior to the catastrophe has been reduced through Catastrophic Damage by an amount equivalent to the normal appraised margin for profit and risk for such timber. Said "Conversion Return" is the difference between the estimated product realization value and total operating costs, including cost of development facilities, as generally used in Forest Service timber appraisals in this contract subregion at time of catastrophe.

BT8.222 **Termination by Forest Service.** This contract shall be terminated by written notice from Forest Service if there is Catastrophic Damage and Purchaser does not agree under BT8.33 to one or a combination of the following within 30 calendar days of receipt from Forest Service of contract modifications proposed to permit the harvest of the catastrophe-affected timber in areas outlined under BT8.33:

(a) To Include Catastrophically-Damaged undesignated timber that normally would be salvaged and cannot reasonably be logged separately from Included Timber; or

(b) To permit salvage operations by others; or

(c) To eliminate areas of damaged or devalued timber from Sale Area.

BT8.23 **Contract Term Extension.** "Contract Term Extension" means an extension of the term of this contract made at request of Purchaser other than a Contract Term Adjustment under BT8.21. This Subsection shall not obligate Forest Service to grant a Contract Term Extension.

When such extension is made, Forest Service shall make an appraisal using standard Forest Service methods and appraisal data in effect 45 calendar days prior to Termination Date. Bid Premiums shall be added to such appraised rates to establish Flat Rates or Tentative Rates for the extension period. In event rates so established would develop Current Contact Value immediately prior to such an extension that is less than Current Contract Value

(a) Theft, forgery, bribery, embezzlement, falsification or destruction of records, making false statements, or receiving stolen property, that is in any way connected with obtaining, attempting to obtain, selling, trading, or processing public timber.

(b) Fraud, criminal offenses, or violation of Federal or State antitrust laws, any of which occurred in connection with obtaining, attempting to obtain, or performing a public contract or subcontract;

(c) Threatening, resisting, intimidating, or interfering with Forest Officers engaged in, or on account of, the performance of their official duties involving the protection, improvement, or administration of National Forest System lands.

CT6.01 - Interruption or Delay of Operations. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of Contracting Officer:

(a) To prevent serious environmental degradation or resource damage that may require contract modification under CT8.3 or termination pursuant to CT8.2;

(b) To comply with a court order, issued by a court of competent jurisdiction; or

(c) Upon determination of the appropriate Regional Forester, Forest Service, that conditions existing on this sale are the same as, or nearly the same as, conditions existing on sale(s) named in such an order as described in (b).

Purchaser agrees that in event of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (i) Contract Term Adjustment pursuant to BT8.21, or (ii) when such an interruption or delay exceeds 30 days during Normal Operating Season, Contract Term Adjustment pursuant to BT8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do not include lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

CT6.1 - Representatives. (7/88) Unless otherwise agreed, Purchaser shall designate, in writing, a representative, who is authorized to receive notices in regard to performance under this contract, and to take related action.

Purchaser's representative shall designate, in writing, a field supervisor, one of whose responsibilities shall be on-the-ground direction and supervision of Purchaser's Operations. This person shall be authorized to receive notices in regard to performance under this contract and take related action. The responsibilities of this person shall include the safeguarding of National Forest resources and performance within the terms of the contract. The field supervisor will furnish Forest Service on-the-ground representatives with names of persons authorized to assume responsibilities in his/her absence. In no case shall Purchaser designate any representative to this contract who is currently debarred, proposed for debarment, or suspended by the Forest Service. Such delegations may be made a part of Purchaser's annual operating schedule under BT6.31.

Contracting Officer shall designate a Forest Service Representative to (a) receive notice in regard to performance under this contract, (b) take action in relation to this contract, and (c) be readily available to the area of construction and logging operations.

artifact is discovered or identified. Discovery of such areas or objects by either party shall be promptly reported to the other party.

In the event of contract modification under this Subsection, Purchaser shall be reimbursed for any additional protection required, provided that any work or extra protection required shall be subject to prior approval by Forest Service. Amount of reimbursement shall be determined by Forest Service and shall be in the form of a reduction in stumpage rates unless agreed otherwise in writing. However, in no event may stumpage rates be reduced below Base Rates. Purchaser shall protect Controlled Areas (CA-1) shown on the Sale Area Map, in accordance with the attached "List of Controlled Areas Subject to CT6.24# and CT6.25#" and all known and identified or discovered historic or prehistoric sites, buildings, objects, and properties related to American history, architecture, archaeology and culture against destruction, obliteration, removal or damage during Purchaser's Operations. Purchaser shall immediately notify Forest Service if damage occurs to any Cultural Resources and immediately halt operations in the vicinity of the Resource where damage occurred until Forest Service authorizes Purchaser to proceed. If such damage is negligently or willfully caused by Purchaser's Operations, Purchaser shall bear costs of investigation and restoration in accordance with 36 CFR 296.14(c), provided that such payment shall not relieve Purchaser from civil or criminal remedies otherwise provided by law.

Wheeled or track-laying equipment shall not be operated within such areas except on roads, landings, tractor roads or skid trails approved under BT5.1 and BT6.422. Unless agreed otherwise, trees will not be felled into such areas. Purchaser may be required to backblade skidtrails and other ground disturbed by Purchaser's Operations within such areas in lieu of cross ditching required under BT6.6.

CT6.25# - Protection of Habitat of Endangered Species. (10/78) Location of areas needing special measures for protection of plants or animals listed as threatened or endangered under the Endangered Species Act of 1973 and R-5 Sensitive Plant and Animal Species List are shown on Sale Area Map and identified on the ground. Measures needed to protect such areas have been included elsewhere in this contract or are as follows:

NONE

If protection measures prove inadequate, if other such areas are discovered, or if new species are listed on the Endangered Species List, Forest Service may either cancel under CT8.2 or unilaterally modify this contract to provide additional protection regardless of when such facts become known. Discovery of such areas by either party shall be promptly reported to the other party.

In the event of contract modification under this Subsection, Purchaser shall be reimbursed for any additional protection required by the modification provided that any work or extra protection required shall be subject to prior approval by Forest Service. Amount of reimbursement shall be determined by Forest Service using standard Forest Service rate redetermination methods in effect at time of agreed change and shall be in the form of a reduction in Current Contract Rates unless agreed otherwise in writing. However, in no event may Current Contract Rates be reduced below Base Rates.

CT6.26 - Water Handling Equipment. (9/30/98) Unless otherwise agreed in writing, Purchaser shall thoroughly wash all water handling equipment and rinse and drain water-holding compartments, including but not limited to water trucks for road watering, including maintenance or road construction, and equipment for fire suppression, prior to arrival on the District. The water used for washing will be drained so as not to put uninfested areas at risk of introduction of the disease. Only empty water handling equipment will be permitted into uninfested areas and will be filled from local uninfested sources. Prior to entry, all equipment will be inspected by Forest Service and treated, unless waived in writing. Infested and uninfested sources and areas will be determined by Forest Service. After this initial treatment, no

United States Department of Agriculture | Forest Service | Klamath National Forest | 1312 Fairlane Road
Yreka, CA 96097-9549
(530) 842-6131
TTY (530) 841-4573

**File Code:** 2450

**Date:** August 27, 1999

CERTIFIED - RETURN RECEIPT
REQUESTED # Z 112 134 799

BLUE LAKE FOREST PRODUCTS
ATTN: Mr. Ron Johnston
P O Box 1176
Arcata, CA 95518

Dear Mr. Johnston:

On August 26, 1999, Judge Dwyer issued an order stating that "federal defendants are preliminary enjoined, pending a decision on the issues on which briefing is to be completed by October 22, 1999, or any earlier order of the court vacating or modifying this order, from approving a plan of operations for or proceeding with operation of the following additional timber sales...Bald Elk YG, Happy Thin Heli, Jack Heli, Beegum Rock, ..." A copy of the order is enclosed.

This court order is from the U. S. District Court, Western District Court of Washington, and is part of the Oregon Natural Resources Council Action, et al, v. U. S. Forest Service and Bureau of Land Management No. C98-942WD.

In accordance with the Court Order you are directed to SUSPEND ALL OPERATIONS, IMMEDIATELY on Happy Thin Heli Timber Sale, Contract No. 060772.

Additional information is being sought regarding bringing affected sales to logical stopping points.

Forest Service will notify you

Sincerely,

Edward L. Matthews (signature)

EDWARD L. MATTHEWS
Contracting Officer

Enclosure

cc: Regional Office
District Rangers

Gomez - Happy Thin

Is your RETURN ADDRESS completed on the reverse side?

**SENDER:**
- ☐ Complete items 1 and/or 2 for additional services.
  Complete items 3, 4a, and 4b.
- ☐ Print your name and address on the reverse of this form so that we can return this card to you.
- ☐ Attach this form to the front of the mailpiece, or on the back if space does not permit.
- ☐ Write "Return Receipt Requested" on the mailpiece below the article number.
- ☐ The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

3. Article Addressed to:
BLUE LAKE FOREST PROD.
MR. RON JOHNSTON
PO BOX 1176
ARCATA, CA 95518

4a. Article Number
Z 112 134 799

4b. Service Type
☐ Registered ☑ Certified
☐ Express Mail ☐ Insured
☑ Return Receipt for Merchandise ☐ COD

7. Date of Delivery
8-30-99

5. Received By: *(Print Name)*

8. Addressee's Address *(Only if requested and fee is paid)*

6. Signature *(Addressee or Agent)*
Cathleen M Forshey

App. 18

PS Form **3811**, December 1994 02595-99-B-0223 Domestic Return Receipt

**BLUE LAKE FOREST PRODUCTS**

1589 Glendale Drive, Arcata, CA 95521 • (707) 822-2968 • FAX (707) 822-4406
MAILING ADDRESS: P. O. Box 1176, Arcata, CA 95518

June 13, 2000

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**P # 231-868-231**

Edward L. Matthews
Contracting Officer
Klamath National Forest
1312 Fairlane Road
Yreka, CA 96097

Re: Contract Disputes Act Claim for Breach Arising Out of the Happy Thin Heli Timber Sale (Contract No. 060772)

Dear Mr. Matthews:

Pursuant to the Contract Disputes Act, I hereby submit the following claim on behalf of Blue Lake Forest Products, Inc. ("Blue Lake") arising under the above-referenced contract in the amount of $886,164.15 plus interest from the date of your receipt of this letter. This claim is for damages incurred by Blue Lake as a direct result of the Forest Service's material breach, wrongful suspension and interruption of the above-referenced timber sale contract.

The Happy Thin Heli contract ("Happy Thin" contract) was awarded to Blue Lake on July 6, 1999. On August 2, 1999, in Oregon Natural Resources Council Action v. U.S. Forest Service and Bureau of Land Management, No. C98-942WD, the United States District Court

issued a decision and opinion on the parties' cross-motions for summary judgment in which it found that the Forest Service had acted arbitrarily and capriciously and not in accordance with the law in approving certain timber sales in violation of the President's Northwest Forest Plan's wildlife survey requirements. The court granted summary judgment against the Forest Service based on this finding and immediately suspended certain timber sales identified in the amended complaint. On August 26, 1999, the court expanded its previously entered injunction to another 25 timber sales, including the Happy Thin sale. By letter dated August 27, 1999, you directed us to suspend all operations immediately on Happy Thin, and although we were in the process of harvesting that sale, we reluctantly complied.

The Happy Thin sale remained fully suspended from August 27, 1999 until September 29, 1999. Thereafter, the Forest Service allowed Blue Lake to yard and haul some of the felled timber in various units of the sale but our yarding activities were severely restricted and hauling could not occur on non-paved Forest Service roads. Within these limitations and subject to the weather, Blue Lake did yard and haul some of this timber in the fall of 1999, but a portion of the felled timber could not be removed from the sale, and Blue Lake was not allowed to harvest the remainder of the sale as it had originally planned.

In the fall of 1999 the United States District Court also ordered the environmental activist plaintiffs, the Forest Service and the BLM to engage in settlement negotiations concerning the scope and duration of the court's injunction. As a result, on November 23, 1999, the environmental activist plaintiffs, the Forest Service and the BLM filed a stipulation and proposed order for dismissal of the case under which the Forest Service agreed, among other things, not to lift the suspension of the Happy Thin sale until certain wildlife survey requirements which the Forest Service had failed to fulfill prior to awarding Happy Thin were satisfied. The Forest Service also gave the environmental activist plaintiffs the right to review any completed surveys and to object to their sufficiency before Blue Lake's operations on the sale could resume.

To the best of our knowledge, as of the date of this claim letter, the wildlife surveys which the Forest Service failed to perform prior to awarding Happy Thin to Blue Lake have been completed, yet the sale remains suspended. The Forest Service has made no firm commitment to Blue Lake as to when the Happy Thin suspension will be lifted, but it has indicated that it may lift the suspension in mid July 2000.

When Blue Lake bought the Happy Thin sale, it was relying on the timber from that sale to supply its mill during the winter of 1999-2000 and the spring of 2000. Because Blue Lake was unable to remove most of the timber from Happy Thin, it was forced to obtain replacement

timber of equal or lesser quality at a substantially higher cost in order to supply its mill. Specifically, Blue Lake was forced to purchase 1760.61 MBF of Douglas fir timber from Crane Mills at an average delivered log cost of $794.54 and 992.87 MBF of Douglas fir from Simpson Timber Company at an average delivered log cost of $633.55 per MBF. Under both the Crane Mills and Simpson contracts, Blue Lake was required to accept and pay for all of the volume delivered by the seller under the contract. The average delivered log cost reasonably anticipated by Blue Lake for Happy Thin was $446.49 per MBF. Accordingly, the additional replacement cost incurred by Blue Lake in purchasing the Crane Mills timber was $614,540.92 ($795.54-$446.49=$349.05x1760.61 MBF=$614,540.92). Likewise, the additional replacement cost incurred by Blue Lake for the Simpson timber was $185,726.26 ($633.55-$446.49=$187.06x992.87 MBF=$185,726.26). The total additional replacement cost thus incurred by Blue Lake as a result of the Forest Service's suspension of the Happy Thin sale was $800,267.18 ($614,540.92+$185,726.26=$800,267.18).

In addition Blue Lake has incurred out-of-pocket performance bond costs of $1,645.00 and out-of-pocket payment bond costs of $3,150.00. Including standard mark-ups for overhead and profit, Blue Lake's total out-of-pocket bonding damages for this suspension are:

$1,645.00
+$3,150.00
$4,795.00
+$ 479.50 (10% overhead)
$5,274.50
+$ 527.45 (10% profit)
$5,801.95 (Total bond damages for the suspension through July 2000)

Also, in order to yard and haul the felled timber on the sale in the fall of 1999, Blue Lake was forced to perform certain roadwork which will now have to be redone before the sale is finished. This has resulted in additional out-of-pocket payments to road contractors in the amount of $420.00 to Foster Construction, $2,000.00 to Trinity River Logging and $4,501.27 to Morgan Emultech (backup documentation attached). Adding standard overhead and profit, Blue Lake's out-of-pocket roadwork damages are:

$6,921.27
+$692.13 (10% overhead)
$7,613.40
+$761.34 10% profit)
$8,374.74

In addition to incurring all of the foregoing costs, Blue Lake was forced to borrow substantial additional sums in order to finance these additional costs and was therefore forced to incur significant out-of-pocket interest costs. Blue Lake consequently borrowed $813,155.08 ($800,267.18+ $5,274.50+$7,613.40=813,155.08) more than it otherwise would have as a direct

result of the Forest Service's suspension and has incurred or will incur out-of-pocket interest costs at an average interest rate of 8.82% for one year (August 1999-August 2000) of $71,720.28.

Blue Lake's total Contract Disputes Act claim therefore comes to $886,164.15 as reflected in the attached summary. Unfortunately, Blue Lake anticipates that its damages may continue to accrue, and we therefore reserve our right to supplement this claim at a later date.

If you do not make all or any portion of the requested payment and/or if you disagree with our entitlement to any of the amounts, we request a contracting officer's final decision within 60 days of your receipt of this claim letter.

Sincerely yours,

BLUE LAKE FOREST PRODUCTS, INC.

Bruce R. Taylor
President

Enclosures

cc(w/encl.): Gary G. Stevens, Saltman & Stevens, P.C.

**CERTIFICATION**

I certify that this claim is made in good faith, that the supporting data is accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the contract adjustment for which Blue Lake Forest Products, Inc. believes the government is liable, and that I am duly authorized to certify this claim on behalf of Blue Lake Forest Products, Inc.

Dated: June 13, 2000

Bruce M. Taylor, President
Blue Lake Forest Products, Inc.

**HAPPY THIN HELI**
**TIMBER SALE CONTRACT NO. 060772**
**DAMAGE CLAIM SUMMARY**

| Damage Elements | Amounts |
|---|---|
| Replacement Timber Damages | |
| - Crane Mills | $614,540.92 |
| - Simpson Timber Company | +185,726.26 |
| | $800,267.18 |
| Payment and Performance Bond Damages | $ 5,801.95 |
| Additional Roadwork Damages | $ 8,374.74 |
| Additional Interest Damages | $ 71,720.28 |
| TOTAL HAPPY THIN CLAIM: | $886,164.15 |

United States Department of Agriculture | Forest Service | Klamath National Forest | 1312 Fairlane Road
Yreka, CA 96097-9549
(530) 842-6131
TDD (530) 841-4573

File Code: 2450

Date: October 6, 2000

RRR#: 7000 0520 0020 4860 0127

BLUE LAKE FOREST PRODUCTS
ATTN: Mr. Bruce R. Taylor
P. O. Box 1176
Arcata, CA 95518

Dear Mr. Taylor:

1. PREFACE AND DIGEST.

Decision Identification Number: 5-20-07

Location of Sale:

Pacific Southwest Region
Klamath National Forest
Happy Camp Ranger District

Sale Information:

| | |
|---|---|
| Purchaser name: | Blue Lake Forest Products |
| Contract Date: | 07/06/99 |
| Contract Number: | 060772 |
| Sale Name: | Happy Thin Heli Timber Sale (Happy Thin TS) |
| Contract Form: | 2400 – 6T |

a. Claim Summary: The claim is for damages totaling $886,164.15 incurred by Blue Lake Forest Products (Blue Lake) as a result of the Forest Service's alleged material breach, wrongful suspension and interruption of the Happy Thin TS contract.

2. PURCHASER'S CLAIM. Blue Lake claims that its operations on the Happy Thin TS were suspended or interrupted resulting in costs to the purchaser for replacement volume to supply its mill and other out-of-pocket expenses.

Specifically, Blue Lake indicates it was forced to purchase 2753.48 MBF of Douglas fir to replace the volume not received from Happy Thin TS that was needed to supply its mill. It paid an average delivered log cost of $794.54/MBF for 1760.61 MBF from Crane

associated with replacement volume are denied.

The portion of the claim to cover interest costs to borrow money to cover bond expenses is not applicable since Blue Lake is claiming costs not covered under CT6.01 at this time.

The claim for interest expenses incurred to cover money borrowed for dust abatement and winterization work is not applicable since Blue Lake is claiming costs not covered under CT6.01 at this time.

Finally, borrowing money is not a necessary and direct result of a court suspension. Consequently, interest expenses are not compensable under CT6.01.

4. DECISION.

Blue Lake's claim for $800,267.18 to cover replacement volume costs is denied.

Blue Lake's claim for $5,801.95 for bond coverage plus overhead and profit is denied.

Blue Lake's claim of $4,501.27 for dust abatement material plus overhead and profit is denied.

Blue Lake's claim for $2,420.06 associated with winterizing roads plus overhead and profit is denied.

Blue Lake's claim for interest expenses of $71,720.28 to borrow money for the above claimed costs is denied.

The Contracting Officer will consider properly documented out-of-pocket expenses caused by the delay in operations when they have been incurred. Amounts incurred to date would have been expended in the normal course of operations.

5. CONCLUDING INFORMATION.

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose a decision appeal is intended. The appeal shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the U. S. Court of Federal Claims

within 12 months of the date you receive this decision.

Sincerely,

Edward L. Matthews

EDWARD L. MATTHEWS
Contracting Officer

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BLUE LAKE FOREST PRODUCTS
ATTN: BRUCE TAYLOR
P.O. BOX 1176
ARCATA, CA 95518

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)

B. Date of Delivery 10/10/00

C. Signature
X Mary A Brewer ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Copy from service label)
7000 0520 0020 4860 0127

PS Form 3811, July 1999 Domestic Return Receipt 102595-00-M-0952

App. 29