BLUE
LAKE FOREST PRODUCTS
1589 Glendale Drive, Arcata, CA 95519 • (707) 822-2968 • FAX (707) 822-4406
MAILING ADDRESS: P.O. Box 1176, Arcata, CA 95518

November 17, 2000

Mr. Ed Mathews
Contracting Officer
Klamath National Forest
1312 Fairlane Road
Yreka, CA 96097

Dear Ed:

I am submitting the following Supplemental Contract Dispute Claim in the amount of $7964.50 arising out of the suspension of the Happy Thin Timber Sale, contract No. 060772.

On August 27th, 1999, Blue Lake Forest Products was suspended from any operations on the Happy Thin.

Blue Lake contracted with Trinity River Logging to complete all the tractor logging during the 1999 logging season. When operations were shut down on August 27,1999, Trinity River Logging had completed only one of the three tractor units and was not allowed to finish the work until notification was received on August 17, 2000, that work could resume.

Trinity River Logging had to once again move all of their equipment back to Happy Camp at an added expense of $7964.50 which would not have been incurred had the sale continued. At a minimum, we are entitled to reimbursement for this claim under CT6.01.

If you do not make all or any portion of the requested payment and/or, if you disagree with our entitlement to any of the amounts, we request a Contracting Officer's final decision within 60 days of your receipt of this claim letter.

Your help in this matter is appreciated.

Sincerely,

Jerry Broom

Jerry Broom
Timber Manager

JB:mb

United States Department of Agriculture | Forest Service | Klamath National Forest | 1312 Fairlane Road
Yreka, CA 96097-9549
(530) 842-6131
TDD (530) 841-4573

File Code: 2450

Date: January 30, 2001

RRR#: 7000 0520 0020 4860 2817

BLUE LAKE FOREST PRODUCTS
ATTN: Mr. Bruce R. Taylor
P. O. Box 1176
Arcata, CA 95518

Dear Mr. Taylor:

1. PREFACE AND DIGEST.

Decision Identification Number: 5-20-07

Location of Sale:

Pacific Southwest Region
Klamath National Forest
Happy Camp Ranger District

Sale Information:

| | |
|---|---|
| Purchaser name: | Blue Lake Forest Products |
| Contract Date: | 07/06/99 |
| Contract Number: | 060772 |
| Sale Name: | Happy Thin Heli Timber Sale (Happy Thin TS) |
| Contract Form: | 2400 – 6T |

a. Claim Summary: Blue Lake Forest Products (Blue Lake) has submitted on October 6, 2000, a Supplemental Contracts Dispute Claim for out-of-pocket damages totaling $7,964.50 incurred as a result of the Forest Service's suspension of the Happy Thin TS contract on August 27, 1999.

2. PURCHASER'S CLAIM. Blue Lake claims that when its operations were suspended in 1999, it was unable to complete ongoing tractor logging operations and it incurred additional out-of-pocket expenses related to moving equipment off the sale and then moving it back after the suspension was lifted.

3. FACTS/FINDINGS.

| | | |
|---|---|---|
| 518C Skidder | 920.00 | Move In & Out Costs |
| K.W. Water truck | 920.00 | " " " " " |
| Permit Fees | 52.00 | " " " " " |
| Pilot Car | 697.50 | " " " " " |
| | ------------ | |
| TOTAL CLAIM | 7964.50 | |

A review of the records by the Contracting Officer indicates that the above listed equipment was on the sale in 1999 and was removed from the sale before logging was completed as required in Judge Dwyer's August 26, 1999 court order. The records provided by Blue Lake also substantiate its claim that the equipment was returned to the sale in 2000 to complete the tractor logging.

4. DECISION.

Blue Lake's claim for $7964.50 is approved. PV 0505100023

5. CONCLUDING INFORMATION.

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose a decision appeal is intended. The appeal shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the U. S. Court of Federal Claims within 12 months of the date you receive this decision.

Sincerely,

Edward L. Matthews

EDWARD L. MATTHEWS
Contracting Officer

cc: J.Rosen, OGC
J.Jensen, RO

Object Code 4210
Trans Code 01
Job Code TMEF6901

per Cindy James 1/31/01

October 8, 1999

Mr. Ed Mathews
Contracting Officer
Klamath National Forest
1312 Fairlane Road
Yreka, CA 96097

Dear Ed:

This letter is a formal request for a Contract Term Adjustment on Happy Thin Heli, Contract No. 060772. Listed in the Timber Sales Contract under BT8-21, paragraph (a), such a request is being made.

On August 27, 1999, Judge William L. Dwyer issued his decision enjoining the Happy Thin Timber Sale. All work on the sale stopped until September 27, 1999, and then only work mentioned in the stipulation for the modification of the preliminary injunction was permitted. Additional work will not be permitted until surveys for the Survey and Manage Species are completed.

Thank you for your help in this matter.

Sincerely,

Jerry Broom
Blue Lake Forest Products

JB/mb

United States Department of Agriculture | Forest Service | Klamath National Forest | 1312 Fairlane Road
Yreka, CA 96097-9549
(530) 842-6131
TTY (530) 842-5725

File Code: 2450

Date: November 1, 1999

BLUE LAKE FOREST PRODUCTS
ATTN: Mr. Jerry Broom
P. O. Box 1176
Arcata, CA 95518

Dear Jerry:

Your request for Contract Term Adjustment for Happy Thin Heli Timber Sale, Contract No. 060772, is approved.

Enclosed are two copies of Agreement to Modify and Extend Contract. You will not need your surety to execute as extended term date is not greater than one year. Please execute and return to Forest Service prior to November 30, 1999 to extend your contract to July 16, 2001.

Sincerely,

Edward L. Matthews

EDWARD L. MATTHEWS
Contracting Officer

CC: Happy Camp RD

Enclosures: Agreement to Modify and Extend Contract

USDA - Forest Service FS-2400-10 (5/68)

Contract No. 050772 Happy Thin Heli Timber Sale

## AGREEMENT TO EXTEND AND MODIFY TIMBER SALE CONTRACT

1. It is mutually agreed, that the contract period of the above designated timber sale contract, signed by, Bruce Taylor, Sr., President (Name) of Blue Lake Forest Products (Company Name), hereinafter called the purchaser and by Edward L. Matthews (Name) Contracting Officer (Title) for the United States of America, as of the 19th day of July, 1999 as heretofore modified, be extended to June 18, 2002 *and it is further agreed to modify the contract as follows:*

The following is hereby deleted from the contract:

AT2 – Volume Estimate and Utilization Standards, Original Contract
AT5C – Schedule of Payment Units, Original Contract
AT16 – Termination Date, Modification Dated 2/14/00
CT2.35# - Designation of Timber. (7/86) Original Contract
CT4.264# - Periodic Payment Schedule, Modification Dated 6/8/00
Sale Area Map, Original Contract

The following is hereby added to the contract:

AT2 – Volume Estimate and Utilization Standards
AT5C – Schedule of Payment Units
AT16 – Termination Date
CT2.35# - Designation of Timber. (7/86)
CT4.264# - Periodic Payment Schedule 8/1/00
Sale Area Map

2. Pursuant to this mutual agreement, the purchaser agrees to cut and remove timber in strict accordance with all and singular the terms and provisions of the aforesaid contract as herein modified.

3. IN WITNESS WHEREOF, the parties hereto have executed this agreement to extend and modify contract as of the 27th day of August, 2000. 1/

UNITED STATES OF AMERICA

BY Edward L. Matthews (Signature of approving officer) Contracting Officer (Title)

Two Witnesses: 2/

______ (Name of Witness)

______ (Address)

______ (Name of witness)

______ (Address)

Blue Lake Forest Products (Purchaser) 3/

BY B. [signature] Sr. (Purchaser)

P O Box 1176 (Business Address)

Arcata, CA 95518 (Business Address)

4/ Kathleen M. Forsburg certify that I am the ______ Secretary of the corporation named as the purchaser herein; that Bruce M. Taylor, Sr. who signed this agreement to extend *and modify* contract on behalf of the purchaser was then President of said corporation; that said agreement to extend *and modify* contract was duly signed for and in behalf of said corporation by authority of the governing body, and is within the scope of its corporate powers.

Corporate Seal 5/

### Consent Of Surety

We, GREAT AMERICAN INSURANCE COMPANY (surety) (sureties) do hereby join in this agreement to extend the contract period and agree that our bond shall bind us, our heirs, executors, administrators, successors and assigns, and each and every one of us and them jointly and severally, in the same manner as if said extended period had been included in the original period of contract to insure compliance with which our bond was given.

Dated at EUGENE, OREGON, this 23RD. day of AUGUST, 2000

In the presence of:
Witness:

Individual Surety: ______ (Seal) (Seal)

Attest: Jody Del Priore
By: Agent
Title:

Corporate Surety: GREAT AMERICAN INSURANCE COMPANY
P.O. BOX 5440, ORANGE, CA. 92863-5440
Business Address:
[signature]
MARGARET HUFFMAN, ATTORNEY-IN-FACT Corporate Seal

United States Department of Agriculture
Forest Service
Klamath National Forest
1312 Fairlane Road
Yreka, CA 96097-9549
(530) 842-6131
TTY (530) 842-5725

**File Code:** 2450

**Date:** March 2, 1999

Certified RRR # Z 269 007 959

TIMBER PRODUCTS COMPANY
ATTN: Mr. Bill Turner
P O Box 766
Yreka, CA 96097

Dear Bill:

On November 3, 1998, the sale officer declared you the apparent high bidder on the Jack Heli Timber Sale. This award is made in accordance with FSM 2430 and the Contracting Officer has made an affirmative determination of your ability to complete this timber sale contract as required by Title 36 CFR 223.101. This sale is awarded to you as of March 2, 1999, under Klamath Contract No. 060715.

This letter will serve as your written notification to furnish within 30 days of the award date a downpayment of $11,700. The downpayment may be in the form of cash, bank draft, certified check, cashier's check, or bank or postal money order. Only effective purchaser credit may be used in lieu of cash. Failure to submit the required downpayment on time will be treated as a repudiation of contract, resulting in loss of the bid guarantee.

Enclosed are copies of the timber sale contract and performance bond for your execution.

Your attention is called to the requirement on your bid that the contract be executed and performance bond furnished within 30 days of the award date. Failure to execute the contract and furnish a satisfactory performance bond on time will be treated as a breach of contract, resulting in loss of the bid guarantee.

Your bid bond for $10,700 will be returned after Forest Service receipt of downpayment and executed contract with required performance bond.

Please furnish the Scott River Ranger District with your general plan of operation within 60 days of the first normal operating season as required under C6.3#. For this purpose, an operating plan form is enclosed. This sale requires contract scaling by a contractor employed by the Forest Service. Under the terms of this provision, total payment of scaling costs or payment of estimated scaling costs must be made in advance of scaling. Forest Service must know your estimated loads/day, planned days/month, and scaling location before billing can be made. For these reasons it is suggested you plan a preop meeting with the District as soon as possible. Upon written request, the Contracting Officer can allow you to obtain and pay for additional scaling reports directly from the scaling bureau.


Caring for the Land and Serving People
Printed on Recycled Paper

The total net bid value of this contract is in excess of $10,000.00. Therefore, the B8.63 is in effect. Enclosed is a copy of the required Poster and instructions on how to post it.

A copy of the Report of Timber Sale is enclosed for your information.

Please follow the instructions for executing the contract (Page 2) carefully and return two copies of the contract and performance bond for approval to the above address, Attention: Timber Business. We will return a contract executed by the Forest Service for your files.

Sincerely,

Edward L. Matthews

EDWARD L. MATTHEWS
Contracting Officer

Enclosures

cc: S. O.

SENDER:
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

[illegible]

3. Article Addressed to: Timber Products Co. P.O. Box 766 Yreka, CA 96097

4a. Article Number: Z 269 007 959

4b. Service Type: ☐ Registered ☑ Certified ☐ Express Mail ☐ Insured ☐ Return Receipt for Merchandise ☐ COD

7. Date of Delivery: MAR 03 1999

5. Received By: (Print Name)

6. Signature: (Addressee or Agent) X

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994 102595-97-B-0179 Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

United States Department of Agriculture

Forest Service

# Timber Sale Contract



Purchaser Timber Products Co.

Sale Name JACK HELI

Award Date 3/2/99

Contract No. 060715

Region FIVE

National Forest KLAMATH

Ranger District SCOTT RIVER

FS-2400-13(7/70)

FS-2400-6, Page 101 (9/73)

| | | | | |
|---|---|---|---|---|
| USDA - FOREST SERVICE<br>**TIMBER SALE CONTRACT**<br>(Applicable to Sales to be Scaled After Felling) | | NAME OF PURCHASER TIMBER PRODUCTS COMPANY<br>P. O. Box 766<br>Yreka, CA 96097 | | |
| NATIONAL FOREST<br>Klamath | RANGER DISTRICT<br>Scott River | REGION<br>Five (PSW) | CONTRACT NO.<br>060715 | |
| SALE NAME<br>Jack Heli Timber Sale | | SUBREGION<br>Coast Range | AWARD DATE<br>3/2/99 | TERMINATION DATE<br>03/31/01 |

The parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and Timber Products Company, a partnership consisting of W. A. Atwood, A. J. Austin, and J. H. Gonyea

1 __________

a __________
hereinafter called Purchaser.

2 Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit, was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement; and the parties hereto desiring torecord their agreement; now therefore,

In consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

This contract consists of three Divisions: A - Specific Conditions, B - Standard Provisions, and C - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division C. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division C - Special Provisions.

1 1

**IN WITNESS WHEREOF,** the parties hereto have executed this contract as of the award date.

UNITED STATES OF AMERICA

BY *Edward L. Matthews*

Edward L. Matthews, Contracting Officer *3/15/99*
(Title)

Two Witnesses:[3]

*Amy Wagner*
(Name)

*P.O. Box 766 Yreka CA 96097*
(Address)

*[illegible signature]*
(Name)

*Same*
(Address)

TIMBER PRODUCTS COMPANY
(Purchaser)[4]

BY *Bill Tim*

*Timber Procurement Manager*
(Title)

P. O. Box 766, Yreka, CA 96097
(Business Address)

I,[5] __________, certify that I am the __________

Secretary of the corporation named as Purchaser herein; that __________

who signed this contract on behalf of Purchaser, was then __________ of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

__________ CORPORATE SEAL[6]

## B8.0—OTHER CONDITIONS

**B8.1 Title and Liability.**

**B8.11 Title Passage.** All right, title, and interest in and to any Included Timber shall remain in Forest Service until it has been cut, Scaled, removed from Sale Area or other authorized cutting area and paid for, at which time title shall vest in Purchaser. For purposes of this Subsection, timber cut under cash deposit, Effective Purchaser Credit or payment guarantee under B4.3 shall be considered to have been paid for. Title to any Included Timber which has been cut, Scaled and paid for, but not removed from Sale Area or other authorized cutting area by Purchaser on or prior to Termination Date, shall remain in Forest Service.

**B8.12 Liability for Loss.** If Included Timber is destroyed or damaged by fire, wind, flood, insects, disease or similar cause, the party holding title shall bear the timber-value loss resulting from such destruction or damage, except that such losses after removal of timber from Sale Area, but before Scaling, shall be borne by Purchaser at Current Contract Rates and Required Deposits. There shall be no obligation for Forest Service to supply, or for Purchaser to accept and pay for, other timber in lieu of that destroyed or damaged. This Subsection shall not be construed to relieve either party of liability for negligence.

**B8.2 Period of Contract.** All obligations of Purchaser shall be discharged not later than "Termination Date" stated in A19, unless it is adjusted pursuant to B8.21 or extended pursuant to B8.23 or B8.33, excepting only those obligations for which Forest Service has given written permission to delay performance. Such written permission shall be considered a Contract Term Adjustment for the purpose of Purchaser completing performance of obligations covered by such permission.

**B8.21 Contract Term Adjustment.** "Contract Term Adjustment" means adjustment only as provided immediately above and for the three circumstances described in this Subsection. Under said circumstances, the contract term shall be adjusted in writing to include additional calendar days in one or more Normal Operating Seasons equal to the actual time lost, except as limited by (b) below.

To qualify for such adjustment, Purchaser shall give written notice of the lost time not later than 30 calendar days after end of Normal Operating Season in which time was lost and at least 10 calendar days before Termination Date. Forest Service shall make prompt written acknowledgement of such notice indicating its concurrence with the number of days in the notice or the number of days Forest Service considers as qualifying for the adjustment. Lost portions of days shall be disregarded in computing time lost. The three circumstances qualifying for a Contract Term Adjustment are:

(a) Purchaser experiences delay in starting scheduled operations or interruption in active operations either of which stops removal of Included Timber from Sale Area through curtailment in felling and buckling, yarding, skidding and loading, hauling or road construction, as scheduled under B6.31, for 10 or more consecutive calendar days during a Normal Operating Season due to causes beyond Purchaser's control, including but not limited to acts of God, acts of the public enemy, acts of Government, labor disputes, fires, insurrections or floods.

(b) Causes described in (a) substantially affect the disposition or processing of Included Timber during Normal Operating Season through their effects on primary timber processing facilities, with a resulting delay of 60 calendar days or more in use of such facilities. In such event, Contract Term Adjustment shall not extend for more than 12 consecutive months.

(c) Purchaser (i) accepts Forest Service written request to interrupt or delay operations for any purpose other than suspension under B4.4 or B9.3 or (ii) suffers an interruption or delay of Purchaser's Operations affecting skidding, yarding and loading because of fire emergency closure ordered by Forest Service (or another agency in its behalf), and the total of such lost time is 10 or more calendar days during any Normal Operating Season.

If A7 shows dates for scheduled rate redeterminations that are later than the beginning date of interruption or delay, and Termination Date is eligible for adjustment as described in this Subsession prior to said dates, the rate redetermination shall be made as originally scheduled. If redetermined rates plus Bid Premiums are higher than rates in effect immediately prior to the rate redetermination date, the date on which the redetermined rates shall become effective shall be adjusted by the number of days equal to the days lost prior to said rate redetermination date.

If Termination Date is adjusted as described in this Subsection and later extended under B8.23, the appraisal for the extension shall be made as of the unadjusted Termination Date, but the date on which the new rates become effective, if higher than Current Contract Rates immediately prior to Termination Date, shall be the adjusted Termination Date.

**B8.22 Termination for Catastrophe.** In event of Catastrophic Damage, this contract shall be either modified under B8.33 following rate redetermination under B3.32 or terminated under this Subsection.

**B8.221 Termination by Purchaser.** This contract shall be terminated upon election and written notice by Purchaser if Catastrophic Damage rate redetermination under B3.32 shows that the appraised weighted-average Conversion Return per unit of measure of all Included Timber remaining immediately prior to the catastrophe has been reduced through Catastrophic Damage by an amount equivalent to the normal appraised margin for profit and risk for such timber. Said "Conversion Return" is the difference between the estimated product realization value and total operating costs, including cost of development facilities, as generally used in Forest Service timber appraisals in this contract subregion at time of catastrophe.

**B8.222 Termination by Forest Service.** This contract shall be terminated by written notice from Forest Service if there is Catastrophic Damage and Purchaser does not agree under B8.33 to one or a combination of the following within 30 calendar days of receipt from Forest Service of contract modifications proposed to permit the harvest of the catastrophe-affected timber in areas outlined under B8.33:

(a) To include Catastrophically-Damaged undesignated timber that normally would be salvaged and cannot reasonably be logged separately from Included Timber; or

(b) To permit salvage operations by others; or

(c) To eliminate areas of damaged or devalued timber from Sale Area.

**B8.23 Contract Term Extension.** "Contract Term Extension" means an extension of the term of this contract made at request of Purchaser other than a Contract Term

C6.0 - Operations. (6/90) Purchaser agrees to conduct its operations under this contract and other related business activities in compliance with Federal, State, and local statutes, standards, orders, permits, or other regulations.

State and local environmental quality laws must be applicable to National Forest System lands. The contract shall govern if such laws conflict with or preclude performance of contractual requirements.

A conviction of, or a civil judgment for, any of the following offenses, shall be considered a breach of this provision and may result in termination of this contract pursuant to C9.3:

(a) Theft, forgery, bribery, embezzlement, falsification or destruction of records, making false statements, or receiving stolen property, that is in any way connected with obtaining, attempting to obtain, selling, trading, or processing public timber.

(b) Fraud, criminal offenses, or violation of Federal or State antitrust laws, any of which occurred in connection with obtaining, attempting to obtain, or performing a public contract or subcontract;

(c) Threatening, resisting, intimidating, or interfering with Forest Officers engaged in, or on account of, the performance of their official duties involving the protection, improvement, or administration of National Forest System lands.

C6.01 - Interruption or Delay of Operations. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of Contracting Officer:

(a) To prevent serious environmental degradation or resource damage that may require contract modification under C8.3 or termination pursuant to C8.2;

(b) To comply with a court order, issued by a court of competent jurisdiction; or

(c) Upon determination of the appropriate Regional Forester, Forest Service, that conditions existing on this sale are the same as, or nearly the same as, conditions existing on sale(s) named in such an order as described in (b).

Purchaser agrees that in event of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (i) Contract Term Adjustment pursuant to B8.21, or (ii) when such an interruption or delay exceeds 30 days during Normal Operating Season, Contract Term Adjustment pursuant to B8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do not include lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

C6.1 - Representatives. (7/88) Unless otherwise agreed, Purchaser shall designate, in writing, a representative, who is authorized to receive notices in regard to performance under this contract, and to take related action.

Purchaser's representative shall designate, in writing, a field supervisor, one of whose responsibilities shall be on-the-ground direction and supervision of Purchaser's Operations. This person shall be authorized to receive notices in regard to performance under this contract and take related actions. The responsibilities of this person shall include the safeguarding of National Forest resources and performance within the terms of the contract. The field supervisor will furnish Forest Service on-the-ground representatives with names of persons authorized to assume responsibilities in his/her absence. In no case shall Purchaser designate any representative to this contract who is currently debarred, proposed for debarment, or suspended by the Forest Service. Such delegations may be made a part of Purchaser's annual operating schedule under B6.31.

Operations. If relocation or removal of said improvements is necessary to avoid foreseeable damage by Purchaser's Operations, work shall be without cost to Purchaser.

C6.24# - Protection of Cultural Resources. (10/16/87) Location of known historic or prehistoric sites, buildings, objects, and properties related to American history, architecture, archaeology and culture, such as settler or Indian artifacts, protected by American Antiquities Act of 1906 (16 U.S.C. 431433), National Historic Preservation Act of 1966 (16 U.S.C. 470), and implementing regulations (36 CFR800), the American Indian Religious Freedom Act, and the Archaeological Resources Protection Act of 1979 (PL 96-95 and 36 CFR 261.9(e)) shall be identified on the ground by the Forest Service. Forest Service may unilaterally modify or cancel this contract to protect an area, object of antiquity, artifact, or similar object which is or may be entitled to protection under these Acts regardless of when the area, object or artifact is discovered or identified. Discovery of such areas or objects by either party shall be promptly reported to the other party.

In the event of contract modification under this Subsection, Purchaser shall be reimbursed for any additional protection required, provided that any work or extra protection required shall be subject to prior approval by Forest Service. Amount of reimbursement shall be determined by Forest Service and shall be in the form of a reduction in stumpage rates unless agreed otherwise in writing. However, in no event may stumpage rates be reduced below Base Rates. Purchaser shall protect Controlled Areas (CA-1) shown on the Sale Area Map, in accordance with the attached "List of Controlled Areas Subject to C6.24# and C6.25#" and all known and identified or discovered historic or prehistoric sites, buildings, objects, and properties related to American history, architecture, archaeology and culture against destruction, obliteration, removal or damage during Purchaser's Operations. Purchaser shall immediately notify Forest Service if damage occurs to any Cultural Resources and immediately halt operations in the vicinity of the Resource where damage occurred until Forest Service authorizes Purchaser to proceed. If such damage is negligently or willfully caused by Purchaser's Operations, Purchaser shall bear costs of investigation and restoration in accordance with 36 CFR 296.14(c), provided that such payment shall not relieve Purchaser from civil or criminal remedies otherwise provided by law.

Wheeled or track-laying equipment shall not be operated within such areas except on roads, landings, tractor roads or skid trails approved under B5.1 and B6.422. Unless agreed otherwise, trees will not be felled into such areas. Purchaser may be required to backblade skidtrails and other ground disturbed by Purchaser's Operations within such areas in lieu of cross ditching required under B6.6.

C6.25# - Protection of Habitat of Endangered Species. (10/78) Location of areas needing special measures for protection of plants or animals listed as threatened or endangered under the Endangered Species Act of 1973 and R-5 Sensitive Plant and Animal Species List are shown on Sale Area Map and identified on the ground. Measures needed to protect such areas have been included elsewhere in this contract or are as follows:

None

If protection measures prove inadequate, if other such areas are discovered, or if new species are listed on the Endangered Species List, Forest Service may either cancel under C8.2 or unilaterally modify this contract to provide additional protection regardless of when such facts become known. Discovery of such areas by either party shall be promptly reported to the other party.

In the event of contract modification under this Subsection, Purchaser shall be reimbursed for any additional protection required by the modification, provided that any work or extra protection required shall be subject to prior approval by Forest Service. Amount of reimbursement shall be determined by Forest Service using standard Forest Service rate redetermination methods in effect at time of agreed change and shall be in the form of a reduction in Current Contract Rates unless agreed otherwise in writing. However, in no event may Current Contract Rates be reduced below Base rates.