United States Department of Agriculture | Forest Service | Klamath National Forest | 1312 Fairlane Road
Yreka, CA 96097-9549
(530) 842-6131
TTY (530) 841-4573

**File Code:** 2450

**Date:** August 27, 1999

CERTIFIED - RETURN RECEIPT
REQUESTED # Z 112 134 783

TIMBER PRODUCTS COMPANY
ATTN: Mr. Bill Turner
P O Box 766
Yreka, CA 96097

Dear Mr. Turner:

On August 26, 1999, Judge Dwyer issued an order stating that "federal defendants are preliminary enjoined, pending a decision on the issues on which briefing is to be completed by October 22, 1999, or any earlier order of the court vacating or modifying this order, from approving a plan of operations for or proceeding with operation of the following additional timber sales...Bald Elk YG, Happy Thin Heli, Jack Heli, Beegum Rock, ..." A copy of the order is enclosed.

This court order is from the U. S. District Court, Western District Court of Washington, and is part of the Oregon Natural Resources Council Action, et al, v. U. S. Forest Service and Bureau of Land Management No. C98-942WD.

In accordance with the Court Order you are directed to SUSPEND ALL OPERATIONS, IMMEDIATELY on Jack Heli Timber Sale, Contract No. 060715.

Additional information is being sought regarding bringing affected sales to logical stopping points.

Forest Service will notify you immediately of any further developments or changes.

Sincerely,

Edward L. Matthews

EDWARD L. MATTHEWS
Contracting Officer

Enclosure

cc: Regional Office
District Rangers



Caring for the Land and Serving People
Printed on Recycled Paper

# Timber Products
COMPANY

Yreka Veneer Division
and Timberlands
P.O. Box 766
Yreka, California 96097

Ph: (530) 842-2310
Fax: (530) 842-3825

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATE GOVERNMENT WITHOUT THE EXPRESS WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

July 14, 2000

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**Z # 295-801-148**

Edward L. Matthews
Contracting Officer
Klamath National Forest
1312 Fairlane Road
Yreka, CA 96097

Re: Contract Disputes Act Claim
Jack Heli Timber Sale (Contract No. 060715)

Dear Mr. Matthews:

Pursuant to the Contract Disputes Act, I submit the following claim on behalf of Timber Products Company ("Timber Products") arising under the above-referenced contract in the amount of $1,100,799.68 plus interest from the date of your receipt of this letter. This claim is for damages incurred by Timber Products as a direct result of the Forest Service's material breach, wrongful suspension and interruption of the above-referenced timber sale contract.

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATE GOVERNMENT WITHOUT THE EXPRESS WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

all operations immediately on Jack, and although we were in the process of harvesting that sale, we reluctantly complied.

The Jack sale remained fully suspended from August 27, 1999 until September 27, 1999. Thereafter, the Forest Service agreed to allow Timber Products to yard and haul some of the felled timber in various units of the sale but our yarding activities were severely restricted and hauling could not occur on non-paved Forest Service roads. Unfortunately, due to the short notice we were unable to reschedule our helicopter logger for this time period, and it was impossible for Timber Products to conduct any harvest operations on the Jack sale.

In the fall of 1999 the United States District Court ordered the environmental activist plaintiffs, the Forest Service and the BLM to engage in settlement negotiations concerning the scope and duration of the court's injunction. On November 23, 1999, the environmental activist plaintiffs, the Forest Service and the BLM filed a stipulation and proposed order for dismissal of the case under which the government agreed, among other things, not to lift the suspension of the Jack sale until certain wildlife survey requirements which the Forest Service had failed to fulfill

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATE GOVERNMENT WITHOUT THE EXPRESS WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

prior to awarding Jack were satisfied. The government also gave the environmental activist plaintiffs the right to review any completed surveys and to object to their sufficiency before Timber Products' operations on the sale could resume. These restrictions were incorporated by the government into a Stipulation for Order Dismissing Action approved by the Court on December 17, 1999.

To the best of our knowledge, as of the date of this claim letter, the wildlife surveys which the Forest Service failed to perform prior to awarding Jack to Timber Products have not been completed, and the sale remains suspended. The Forest Service has made no firm commitment to Timber Products as to when the Jack suspension will be lifted.

When Timber Products bought the Jack sale, it was relying on the timber from that sale to supply its veneer mill and plywood operations during the late fall and early winter of 1999. This was a particularly good plywood market, and the timber from the Jack sale was vital to our ability to generate revenue from our plywood operations at that time. Unfortunately, that timber volume was not available because of the Forest Service's suspension.

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATE GOVERNMENT WITHOUT THE EXPRESS WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

The best part of the plywood market occurred in the last two months of 1999, and it would have been our objective to harvest as much of the available Jack sale logs as possible in the fall and winter of 1999 with the intent to process plywood from these logs during the last two months of 1999. At least 2,560 MBF from the Jack timber sale would have been available for our plywood operations during this period but for the Forest Service's suspension. Accordingly, as shown on the attached summary, based on our actual operating profit for the last two months of 1999 Timber Products suffered $739,143.68 in lost profits which we otherwise would have enjoyed but for the Forest Service's breach of the Jack timber sale contract.

In addition, 2,060 MBF of the Jack timber that was not appropriate for Timber Products' plywood operations would have been sold to other companies at that time but for the Forest Service's suspension. The attached summary of lost profits on sales of logs provides the details by volume and species of these lost sales which in total amount to an additional $361,656.00 in damages.

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATE GOVERNMENT WITHOUT THE EXPRESS WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

Thus, Timber Products' total Contract Disputes Act claim for lost profits comes to $1,100,799.68.

The foregoing Contract Disputes Act claim is premised upon Timber Products' contention that the provisions of the Jack timber sale contract purporting to exclude the recovery of lost profits as contract damages do not apply in this case where the suspension was due to actions by the Forest Service which were arbitrary and capricious and contrary to law. If you as the contracting officer do not concur in our view that the contract provisions purporting to exclude lost profits are not enforceable in this instance, you nevertheless should pay, at a minimum, all total out-of-pocket costs authorized by clause C6.01 which we have incurred.

These out-of-pocket costs include unamortized Purchaser Credit road work in the amount of $159,401.70 which the Forest Service has acknowledged as completed and the winterizing and rocking of roads in the amount of $38,683.75 (see attached invoices from Bob Johnson Construction). Obviously, because we were unable to harvest the timber and generate revenue

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATE GOVERNMENT WITHOUT THE EXPRESS WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

Timber Products has incurred these out-of-pocket road costs without any compensating benefit, and it is entitled to full reimbursement.

In addition, Timber Products was unable to remove any felled timber from the Jack timber sale until this spring because of the Forest Service's wrongful suspension. Unfortunately, 7.15 MBF of pine logs which were removed this spring suffered from blue stain resulting in a loss of ⅓ of their value. The market value of these logs was $4,500 but the actual market price received by Timber Products for these logs was $3,000. Therefore, Timber Products incurred a loss of $1,500 on these logs as a result of the blue stain which occurred because of the Forest Service's suspension.

Timber Products is also entitled to be reimbursed for its payment bond expenses during the suspension. The payment bond amounts allocated to the Jack Heli timber sale during this suspension period through July 15, 2000 include $10,000 for August 1999, $157,000 from September 1999 to November 1999 and $100,000 for November 1999 to present. Consequently, through July 15, 2000 Timber Products' out-of-pocket payment bond costs associated with the

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATE GOVERNMENT WITHOUT THE EXPRESS WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

Jack Heli timber sale amount to $481.78 (see attached bond cost summary). Timber Products is entitled to reimbursement for this amount.

In addition, Timber Products is entitled to reimbursement for the expense of maintaining its performance bond during the period of the suspension (currently August 27, 1999-July 15, 2000). Timber Products' annual cost of maintaining this bond is $2,175.13, which amount pro-rated over the current delay period comes to $1,918.46.

Finally, in terms of out-of-pocket costs, Timber Products is entitled to interest on its cash deposit of $10,700 for the suspension period to date (August 27, 1999-July 15, 2000). Interest computed using the Contract Disputes Act rate and the principal sum of $10,700 for this time period comes to a total out-of-pocket interest expense of $632.51.

Accordingly, even if you deny our entire claim for lost profits, we ask that you at least reimburse us for total out-of-pocket costs of $202,618.20 plus interest, as reflected above. Of course, we reserve the right to appeal any denial of our lost profit claim and any denial of our

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATE GOVERNMENT WITHOUT THE EXPRESS WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

out-of-pocket C6.01 damages to the Board of Contract Appeals or the Court of Federal Claims as permitted under the Contract Disputes Act. We further reserve the right to supplement this claim at a later date as our damages are continuing.

If you do not make all or any portion of the requested payment and/or if you disagree with our entitlement to any of the amounts claimed, we request a contracting officer's final decision within 60 days of your receipt of this claim letter.

Sincerely yours,

TIMBER PRODUCTS COMPANY

Bill Turner

Bill Turner
Timber Procurement Manager

Enclosures

cc(w/encl.): Gary G. Stevens, Saltman & Stevens, P.C.

**CERTIFICATION**

I certify that this claim is made in good faith, that the supporting data is accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the contract adjustment for which Timber Products Forest Products, Inc. believes the government is liable, and that I am duly authorized to certify this claim on behalf of Timber Products Company.

Dated: July 14, 2000

Bill Turner, Timber Procurement Manager
Timber Products Company

United States Department of Agriculture
Forest Service
Klamath National Forest
Scott River Ranger District
11263 N. Highway 3
Fort Jones, CA 96032-9702
(530) 468-5351
TDD (530) 468-1298

File Code: 2450

Date: November 9, 2000

RRR#: 7000 0520 0020 4860 2572

TIMBER PRODUCTS COMPANY
Attn: Mr. Bill Turner
P. O. Box 766
Yreka, CA 96097

Dear Bill:

1. PREFACE AND DIGEST.

Decision Identification Number: 5-20-09

Location of Sale:

Pacific Southwest Region
Klamath National Forest
Scott River Ranger District

Sale Information:

| | |
|---|---|
| Purchaser Name: | Timber Products Company |
| Contract Date: | 03/02/99 |
| Contract Number: | 060715 |
| Sale Name: | Jack Heli Timber Sale |
| Contract Form: | 2400-6 |

a. Claim Summary: On July 14, 2000, Timber Products Company (Timber Products) submitted a claim for damages totaling $1,100,799.68 incurred as a result of the Forest Service's alleged material breach, wrongful suspension, and interruption of the Jack Heli Timber Sale (Jack Heli) contract. Timber Products presented a revised claim for $1,094,394.96 in a September 11, 2000, letter responding to a July 27, 2000, Forest Service letter requesting more information. All the following claim figures are from the September 11 letter.

2. PURCHASER'S CLAIM. Timber Products claims that its operations on the Jack Heli were suspended or interrupted resulting in costs to the purchaser for lost profits and other out-of-pocket expenses.

delay, such that the costs do not represent costs incurred as a direct result of the suspension or delay. Though some bond costs might be appropriate under C6.01 if incurred in the future, the costs submitted by Timber Products were not the direct result of the suspension and therefore are not compensable under C6.01.

7) Interest Expense on Cash Deposit

Timber Products' claim for interest on its cash deposit for $731.78 is denied, as foregone interest does not constitute an "out-of-pocket expense" within the meaning of C6.01. Because a purchaser agrees to provide receipts or other documentation, which clearly identify and verify actual expenditures, recoverable costs must, in fact, have been incurred, and must not be speculative. The inability to earn interest is a foregone opportunity cost rather than an "out-of-pocket expense." The loss is anticipatory in nature, as is assumes that Timber Products would have earned a given rate on the funds in question, and C6.01 specifically states that anticipatory losses are not recoverable. Because Timber Products incurred no actual expenditures as part of its claim for lost interest and the losses it claims are anticipatory in nature, these expenses are not recoverable under C6.01.

4. DECISION.

Timber Products' claims for lost profits of $739,143.68 on plywood sales and $355,251.28 on logs sales are denied.

Timber Products' claim for $159,401.70 to cover unamortized Purchaser Road Credit work is denied.

Timber Products' claim for $38,683.75 to cover other road work and construction not covered under Purchaser Credit is denied.

Timber Products' claim for $4,490.19 to cover blue stain loss on pine is denied.

Timber Products' claim for $549.03 to cover payment bond expenses is denied.

Timber Products' claim for $2,175.13 to cover performance bond expenses is denied.

Timber Products' claim for $731.78 to cover interest on cash deposits is denied.

The Contracting Officer will consider properly documented out-of-pocket expenses caused by the delay in operations when they have been incurred. Amounts incurred to date would have been expended in the normal course of operations.

5. CONCLUDING INFORMATION.

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose a decision appeal is intended. The appeal shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the U. S. Court of Federal Claims within 12 months of the date you receive this decision.

Sincerely,

Edward L. Matthews

EDWARD L. MATTHEWS
Contracting Officer

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Timber Products
Attn: Bill Turner
P.O. Box 766
Yreka, CA 96097

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) Amy Wagner B. Date of Delivery NOV 13 2000

C. Signature X [signature] ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Copy from service label) 7000 0520 0020 4860 2572

PS Form 3811, July 1999 Domestic Return Receipt 102595-00-M-0952