United States
Department of
Agriculture

Forest
Service

# Timber Sale Contract

Purchaser CLR Timber Holdings, Inc.
Sale Name TOO WILD
Award Date May 14, 1999
Contract No. 075862
Region SIX
National Forest SISKIYOU
Ranger District GOLD BEACH

ORIGINAL

| U.S. DEPARTMENT OF AGRICULTURE - FOREST SERVICE<br>TIMBER SALE CONTRACT<br>(Applicable to Sales to be Measured Before Felling) | | NAME OF PURCHASER<br>CLR TIMBER HOLDINGS, INC. | | |
|---|---|---|---|---|
| NATIONAL FOREST<br>Siskiyou | RANGER DISTRICT<br>Gold Beach | REGION<br>Six | CONTRACT NO.<br>075862 | |
| SALE NAME<br>Too Wild | | SUBREGION<br>Douglas-fir | AWARD DATE<br>5/14/99 | TERMINATION DATE<br>12/31/01 |

The parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and
1/ CLR Timber Holdings, Inc.

a. Corporation, organized and existing under laws of the State of Oregon
hereinafter called Purchaser.

2/ Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit, was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement; and the parties hereto desiring to record their agreement; now therefore,

In consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

This contract consists of three Divisions: AT - Specific Conditions, BT - Standard Provisions, and CT - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division CT. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division CT-Special Provisions.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the award date.

UNITED STATES OF AMERICA
BY [signature]
Contracting Officer
(Title)

CLR Timber Holdings, Inc.
(Purchaser) 4/
BY [signature]
President
(Title)
P.O. Box 670
(Business Address)
Brookings, OR 97415

Two Witnesses: 3/

(Name)

(Address)

(Name)

(Address)

I, 5/ Lilace Keech, certify that I am the Assistant Secretary of the corporation named as Purchaser herein; that Ron Fallert who signed this contract on behalf of Purchaser, was then President of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers. [signature]

| CORPORATE SEAL 6/ |

App. 71

(OVER)

or prior to Termination Date, shall remain in Forest Service.

**BT8.12 Liability for Loss.** If Included Timber is destroyed or damaged by fire, wind, flood, insects, disease or similar cause, the party holding title shall bear the timber value loss resulting from such destruction or damage, except that such losses caused by insect or disease after felling of timber, shall be borne by Purchaser unless Purchaser is prevented from removing such timber for reasons that would qualify for Contract Term Adjustment. There shall be no obligation for Forest Service to supply, or for Purchaser to accept and pay for, other timber in lieu of that destroyed or damaged. This Subsection shall not be construed to relieve either party of liability for negligence.

**BT8.2 Period of Contract.** All obligations of Purchaser shall be discharged not later than "Termination Date" stated in AT16, unless it is adjusted pursuant to BT8.21 or extended pursuant to BT8.23 or BT8.33, excepting only those obligations for which Forest Service has given written permission to delay performance. Such written permission shall be considered a Contract Term Adjustment for the purpose of Purchaser completing performance of obligations covered by such permission.

**BT8.21 Contract Term Adjustment.** "Contract Term Adjustment" means adjustment only as provided immediately above and for the three circumstances described in this Subsection. Under said circumstances, the contract term shall be adjusted in writing to include additional calendar days in one or more Normal Operating Seasons equal to the actual time lost, except as limited by (b) below.

To qualify for such adjustment, Purchaser shall give written notice of the lost time not later than 30 calendar days after end of Normal Operating Season in which time was lost and at least 10 calendar days before Termination Date. Forest Service shall make prompt written acknowledgement of such notice indicating its concurrence with the number of days Forest Service considers as qualifying for the adjustment. Lost portions of days shall be disregarded in computing time lost. The three circumstances qualifying for a Contract Term Adjustment are:

(a) Purchaser experiences delay in starting scheduled operations or interruptions in active operations either of which stops removal of Included Timber from Sale Area through curtailment in felling and bucking, yarding, skidding and loading, hauling or road construction, as scheduled under BT6.31, for 10 or more consecutive calendar days during a Normal Operating Season due to causes beyond Purchaser's control, including but not limited to acts of God, acts of the public enemy, acts of Government, labor disputes, fires, insurrections or floods.

(b) Causes described in (a) substantially affect the disposition or processing of Included Timber during Normal Operating Season through their effects on primary timber processing facilities, with a resulting delay of 60 calendar days or more in use of such facilities. In such event, Contract Term Adjustment shall not extend for more than 12 consecutive months.

(c) Purchaser (i) accepts Forest Service written request to interrupt or delay operations for any purpose other than suspension under BT4.4 or BT9.3 or (ii) suffers an interruption or delay of Purchaser's Operations affecting skidding, yarding and loading because of fire emergency closure ordered by Forest Service (or another agency in its behalf), and the total of such lost time is 10 or more calendar days during any Normal Operating Season.

If AT7 shows dates for scheduled rate redeterminations that are later than the beginning date of interruption or delay, and Termination Date is eligible for adjustment as described in this Subsection prior to said dates, the rate redetermination shall be made as originally scheduled. If redetermined rates plus Bid Premiums are higher than rates in effect immediately prior to the rate redetermination date, the date on which the redetermined rates shall become effective shall be adjusted by the number of days equal to the days lost prior to said rate redetermination date.

If Termination Date is adjusted as described in this Subsection and later extended under BT8.23, the appraisal for the extension shall be made as of the unadjusted Termination Date, but the date on which the new rates become effective, if higher than Current Contract Rates immediately prior to Termination Date, shall be the adjusted Termination Date.

**BT8.22 Termination for Catastrophe.** In event of Catastrophic Damage, this contract shall be either modified under BT8.33 following rate redetermination under BT3.32 or terminated under this Subsection.

**BT8.221 Termination by Purchaser.** This contract shall be terminated upon election and written notice by Purchaser if Catastrophic Damage rate redetermination under BT3.32 shows that the appraised weighted-average Conversion Return per unit of measure of all Included Timber remaining immediately prior to the catastrophe has been reduced through Catastrophic Damage by an amount equivalent to the normal appraised margin for profit and risk for such timber. Said "Conversion Return" is the difference between the estimated product realization value and total operating costs, including cost of development facilities, as generally used in Forest Service timber appraisals in this contract subregion at time of catastrophe.

**BT8.222 Termination by Forest Service.** This contract shall be terminated by written notice from Forest Service if there is Catastrophic Damage and Purchaser does not agree under BT8.33 to one or a combination of the following within 30 calendar days of receipt from Forest Service of contract modifications proposed to permit the harvest of the catastrophe-affected timber in areas outlined under BT8.33:

(a) To include Catastrophically-Damaged undesignated timber that normally would be salvaged and cannot reasonably be logged separately from Included Timber; or

(b) To permit salvage operations by others; or

(c) To eliminate areas of damaged or devalued timber from Sale Area.

**BT8.23 Contract Term Extension.** "Contract Term Extension" means an extension of the term of this contract made at request of Purchaser other than a Contract Term Adjustment under BT8.21. This Subsection shall not obligate Forest Service to grant a Contract Term Extension.

When such extension is made, Forest Service shall make an appraisal using standard Forest Service methods and appraisal data in effect 45 calendar days prior to Termination Date. Bid Premiums shall be added to such appraised rates to establish Flat Rates or Tentative Rates for the extension period. In event rates so established would develop Current Contact Value immediately prior to such an extension that is less than Current Contract Value

CT4.222 - TEMPORARY REDUCTION OF DOWNPAYMENT. (7/96) Pursuant to the Federal Timber Contract Payment Modification Act, 16 U.S.C. 618(d), and implementing regulations at 36 CFR 223.49, Purchaser must deposit a minimum of 10 percent of the total advertised value of the sale plus 20 percent of the bid premium upon execution of the contract. This downpayment is required to assure prompt and orderly completion of the timber sale contract and to ensure the government's financial interests are adequately secured in case of default.

When, pursuant to CT6.01 or CT6.25#, Contracting Officer requests Purchaser to interrupt or delay all or any portion of Purchaser's operations under this contract for more than 60 consecutive days, the downpayment amount being held on deposit may be temporarily reduced upon the written request of the Purchaser or at the discretion of the Contracting Officer. For the period of the interruption or delay, the downpayment on deposit may be reduced to $1,000 or 2 percent of the downpayment amount listed in CT4.220#, whichever is larger.

Purchaser agrees that when the downpayment amount is reduced that Purchaser shall remit, release, and forever discharge the United States from any and all claims arising from the downpayment deposit under this contract, including but not limited to any claims of interest or other costs. With the exception that out-of-pocket expenses relating to the downpayment incurred as a direct result of interruption or delay of operations are paid when such interruption or delay exceeds 30 days during normal operating season. Out-of-pocket expenses are calculated up to the point the downpayment is returned to the purchaser.

Any downpayment amount temporarily reduced pursuant to this provision may be refunded or transferred at the request of Purchaser. However, if Purchaser has outstanding debt owing the United States, then the amount of downpayment that could be refunded must be applied by the Contracting Officer to the debt owed in accordance with the Debt Collection Act, as amended (31 U.S.C. 3701 et seq.). If the downpayment is being covered by Effective Purchaser Credit, the credit released may be transferred by the Contracting Officer for use on other sales pursuant to CT4.211#.

Upon Purchaser's receipt of Bill for Collection and written notice from Contracting Officer that the basis for the interruption or delay no longer exists, Purchaser shall restore the downpayment to the full amount shown in CT4.220# within 30 days after the date the Bill for Collection was issued. Purchaser shall not resume contract operations until the downpayment amount is fully restored. Purchaser's failure to fully restore the downpayment amount within 30 days after the date the Bill for Collection was issued is a material breach of contract pursuant to BT9.3. Purchaser shall have 30 calendar days to remedy the breach or the contract will be terminated.

Pursuant to the Debt Collection Act, as amended (31 U.S.C. 3701 et seq.), if payment restoring the full amount of the downpayment is not received by Forest Service within 30 days after the date the Bill for Collection was issued, Forest Service shall charge Purchaser interest, administrative charges, and a penalty charge, in addition to the delinquent amount due, at the rates and amounts described in CT4.41.

CT4.223 - DEPOSITS FOR CHARGES SUBJECT TO ESCALATION. (1/93) Cash deposits requested to cover estimated charges for timber subject to escalation under BT3.2 shall be based upon Current Contract Rates and related deposits in effect during previous calendar quarter, except when the most recent applicable monthly index differs from the previous quarterly index average by more than 5 percent. In such event, request for said deposits, for all Payment Units released for cutting during the current quarter and advance deposits made under CT4.221, shall be based on a rate adjustment of half of such difference, rounded to the nearest 10 cents.

ART CT6.0 - OPERATIONS

CT6.0 - OPERATIONS. (6/90) Purchaser agrees to conduct its operations nder this contract and other related business activities in compliance with ederal, State, and local statutes, standards, orders, permits, or other egulations.

tate and local environmental quality laws must be applicable to National orest System lands. The contract shall govern if such laws conflict with or reclude performance of contractual requirements.

. conviction of, or a civil judgment for, any of the following offenses, shall e considered a breach of this provision and may result in termination of this ontract pursuant to CT9.3:

(a) Theft, forgery, bribery, embezzlement, falsification or destruction of records, making false statements, or receiving stolen property, that is in any way connected with obtaining, attempting to obtain, selling, trading, or processing public timber.

(b) Fraud, criminal offenses, or violation of Federal or State antitrust laws, any of which occurred in connection with obtaining, attempting to obtain, or performing a public contract or subcontract;

(c) Threatening, resisting, intimidating, or interfering with Forest Officers engaged in, or on account of, the performance of their official duties involving the protection, improvement, or administration of National Forest System lands.

CT6.01 - INTERRUPTION OR DELAY OF OPERATIONS. (10/96) Purchaser agrees to nterrupt or delay operations under this contract, in whole or in part, upon he written request of Contracting Officer:

(a) To prevent serious environmental degradation or resource damage that may require contract modification under CT8.3 or termination pursuant to CT8.2;

(b) To comply with a court order, issued by a court of competent jurisdiction; or

(c) Upon determination of the appropriate Regional Forester, Forest Service, that conditions existing on this sale are the same as, or nearly the same as, conditions existing on sale(s) named in such an order as described in (b).

CT6.25# - PROTECTION OF HABITAT OF ENDANGERED, THREATENED, AND SENSITIVE 'ECIES. (1/93) Location of areas needing special measures for protection of .ants or animals listed as threatened or endangered under the Endangered ›ecies Act of 1973, as amended, or as sensitive by the Regional Forester under ıthority of FSM 2670, are shown on Sale Area Map and identified on the :ound. Measures needed to protect such areas have been included elsewhere in ıis contract or are as follows:

In area shown as "ATP" on Sale Area Map in Harvest Units 6A, 9A and 12, all operational activities will be kept away from those areas. These areas are layed out so that the Area to Protect are "outside" the Harvest Unit boundaries.

ε protection measures prove inadequate, if other such areas are discovered, or ε new species are listed, Forest Service may either cancel under CT8.2 or nilaterally modify this contract to provide additional protection regardless f when such facts become known. Discovery of such areas by either party shall e promptly reported to the other party.

n the event of contract modification under this Subsection, Purchaser shall be eimbursed for any additional protection required by the modification, provided hat any work or extra protection required shall be subject to prior approval y Forest Service. Amount of reimbursement shall be determined by Forest ervice using standard Forest Service rate redetermination methods in effect at ime of agreed change and shall be in the form of a reduction in Current 'ontract Rates unless agreed otherwise in writing. However, in no event may 'urrent Contract Rates be reduced below Base Rates.

CT6.3 - PLAN OF OPERATION. (10/77) Within 60 days of final award of contract, Purchaser shall furnish Forest Service a written general plan of operation which shall be in addition to the annual operating schedule required under BT6.31. The plan shall set forth planned periods for and methods of road construction, timber harvesting, and completion of slash disposal, erosion control measures and other contractual requirements. Forest Service written approval of the plan of operation is prerequisite to commencement of Purchaser's Operations. Purchaser may revise this plan of operation when necessitated by weather, markets or other unpredictable circumstances, subject to the written approval of Forest Service. In the event of delays beyond the control of Purchaser which qualify for Contract Term Adjustment, the plan of operation shall be mutually adjusted as necessary to accommodate the adjusted contract period.

United States Department of Agriculture | Forest Service | Siskiyou National Forest | 200 NE Greenfield Rd P.O. Box 440 Grants Pass, OR 97528

File Code: 2450
Route To:

Date: September 1, 1999

Subject: Too Wild Timber Sale, Contract # 075862
Dwyer Injuction 8/26/99

To: CLR Timber Holdings, Inc.
P. O. Box 670
Brookings, OR 97415

As you know, the Too Wild Timber Sale is one of 26 listed in the Oregon Natural Resources Council Action, et al v. United States Forest Service and Bureau of Land Management litigation, No. C98-942WD, in the United States District court, Western District. On, August 26, 1999, Judge William L. Dwyer, Judge for the Western District of Washington, issued a preliminary injunction stopping 25 timber sales on Federal lands from proceeding with any operations, pending a decision on the issues to be completed by October 22, 1999.

Enclosed is a copy of the Judge's order for your records Your Too Wild Timber Sale is one of those enjoined. You were notified on August 27, 1999 via phone to suspend all ongoing operations on this sale.

To continue to comply with the Order, all operations must remain suspended until further notice. We will be tracking the progress of the lawsuit, and will keep you informed. As soon as the judge makes decisions on what work may proceed, we will advise you. If you have any questions, please give me a call.

Thomas K. Link
Contracting Officer

Enclosure

cc: Gold Beach District

United States Department of Agriculture | Forest Service | Siskiyou National Forest | 200 NE Greenfield RD
P.O. Box 440
Grants Pass, OR 97528

File Code: 2450
Route To:

Date: October 5, 2000

Subject: Down Payment Reduction – Too Wild Timber Sale #075862

To: CLR Timber Holdings, Inc.
P. O. Box 670
Brookings, OR 97415

Your request of October 1, 2000 for a reduction in the Down Payment for the Too Wild Timber Sale is granted and is being processed. Pursuant to provision CT 6.01 your operations have been interrupted or delayed for more than 60 consecutive days by the order of Judge William Dwyer in ONRC Action v USFS. In accordance with CT 4.222 (Temporary Reduction of Downpayment 7/96) we will reduce your down payment of $328,200.00 to 2% of the amount deposited. This will result in a down payment of $6564.00 while your operations are suspended.

Upon notification that the basis for the interruption no longer exists, you shall have 30 days to restore the full amount of the down payment.

THOMAS K. LINK
Contracting Officer

cc: Bob Thomas


Caring for the Land and Serving People

Printed on Recycled Paper

**CLR TIMBER HOLDINGS, INC.**

17345 Carpenterville Road

P.O. BOX 670 • BROOKINGS, OREGON 97415 • TIMBER DEPT. • PHONE 541-469-3898 • FAX 541-469-0332

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

September 10, 2003

RECEIVED
SEP 15 2003
ROGUE RIVER N.F.

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
No. 7002-2410-0007-8757-3715

Robert W. Thomas
Contracting Officer
Siskiyou National Forest
333 W. 8th Street
Medford, OR 97501

Re: Too Wild Timber Sale Contract (Contract No. 075862)

Dear Mr. Thomas:

Pursuant to the Contract Disputes Act, CLR Timber Holdings, Inc. ("CLR") hereby submits the following claim regarding the above-referenced contract in the amount of $2,046,667 plus interest from the date of your receipt of this letter. This claim is for damages incurred by CLR as a direct result of the Forest Service's suspension of the Too Wild timber sale contract, which also constituted a material breach of the Too Wild contract.

**THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.**

As you know, during the summer of 1999, we commenced harvesting in Units 1 and 16 of the sale; in the process, building temporary roads in those units. However, on August 31, 1999, we were advised by telephone that the Forest Service had suspended performance on the Too Wild until an injunction issued by U.S. District Court Judge Dwyer was no longer in effect. This was confirmed by letter dated September 1, 1999. As of the date of this letter, nearly four years later, except for allowing us to remove 224 MBF of timber that had been cut but not removed prior to the suspension, the Forest Service has never advised us when performance would resume. The Forest Service's suspension of performance constituted a breach of its implied duties to cooperate and not to hinder our performance sale and a breach of the Too Wild timber sale contract. Even assuming that the Forest Service had some authority to suspend our operations under clause CT6.01 (10/96) in these circumstances (something that we do not believe is the case), it also retained an obligation to exercise that suspension authority reasonably, which it did not do, thereby breaching the contract.

We were relying on the timber from the Too Wild timber sale contract to supply logs to the plants owned and operated by our parent company and longstanding exclusive domestic log

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

processing subcontractor, South Coast Lumber Co. ("South Coast"). That is, CLR relies on South Coast to fulfill the domestic processing requirement of its Forest Service and BLM timber sale contracts and South Coast, in turn, relies on CLR to supply timber. Indeed, South Coast was relying on CLR to provide the timber from this sale to it in the third quarter of 1999 and in the 2nd and 3rd quarters of both 2000 and 2001. As a result of being denied the timber from the Too Wild sale at the time that we planned to harvest it, we incurred various unanticipated additional costs.

A. The Too Wild Timber Sale Contract

Bid opening on the Too Wild contract timber sale occurred on September 17, 1998 and the contract was awarded to us on May 14, 1999. The original termination date on the contract was December 31, 2001. Thus, the sale was originally to be approximately 31 and a half months long. The normal operating season for this sale is April 1 to October 31. As awarded, the Too Wild timber sale contained an estimated volume of 11,935 MBF, nearly 98% of which was Douglas Fir.

**THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.**

Too Wild is a tree measurement sale containing 13 payment units including the right-of-way timber, with the price of sawtimber determined at an escalated basis. It was our intention to cut and remove the timber on the sale in the 3rd quarter of 1999 and the 2nd and 3rd quarters of both 2000 and 2001. As you are aware, we have been precluded from doing so because of the Forest Service's suspension of performance.

B. <u>The Northwest Forest Plan</u>

In 1991, the Forest Service was enjoined by the U.S. District Court for the Western District of Washington for a series of environmental violations involving management of national forests within the geographic range of the Northern Spotted Owl. Similarly, in 1992, the Bureau of Land Management ("BLM") was enjoined by the District of Oregon for timber sales affecting the Northern Spotted Owl. These and other decisions led to a joint effort by the Forest Service and BLM to develop a management plan for national forests and BLM districts within the range of the Northern Spotted Owl. The agencies published and received comments on both a draft and final supplemental environmental impact statement. On April 13, 1994, the Secretaries of Agriculture and Interior issued a Record of Decision ("ROD") selecting the ninth