THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

of ten options for this regional forest plan. This plan, known as the Northwest Forest Plan, was challenged and eventually upheld by the Ninth Circuit. Among other things, the ROD identified more than 400 "at risk" species and established four levels of survey and management requirements to protect these species.

C. Judge Dwyer's Decision

Category 2 of these requirements directed that for 77 species surveys must be conducted before ground-disturbing activities "will be implemented" after particular dates. These dates were October 1, 1996 for fives species of salamander and the red tree vole, and October 1, 1998 for the other 71 Category 2 species. The agencies issued interpretive memoranda equating NEPA decisions with "implementation," as it is used in the ROD. Therefore, according to the agencies, where an EIS for a particular timber sale was completed in time to allow the contract to be offered before the cutoff date, no survey would be required. This interpretation had the effect of exempting numerous proposed sales from the survey requirement.

**THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.**

Several environmental groups challenged this interpretation arguing that the agencies violated the Northwest Forest Plan by authorizing timber sales without conducting the required wildlife surveys. On August 2, 1999, in Oregon Natural Resources Council Action v. U.S. Forest Service and Bureau of Land Management, 59 F. Supp. 2d 1085 (No. C98-942WD), Judge Dwyer of the United States District Court for the Western District of Washington agreed with these plaintiffs. Judge Dwyer found that the Forest Service had acted arbitrarily and capriciously and not in accordance with the law by authorizing timber sales based on memoranda that unlawfully exempted the sale areas from the required surveys. The court granted summary judgment against the Forest Service based on this finding and immediately suspended certain timber sales identified in the amended complaint. On August 26, 1999, the court expanded its previously entered injunction to another 25 timber sales, including the Too Wild sale. By letter dated August 31, 1999, the Forest Service advised CLR that it would not approve any plan of operations for the Too Wild sale while the injunction remained in force.

In the fall of 1999, the United States District Court also ordered the environmental activist plaintiffs, the Forest Service, and the BLM to engage in settlement negotiations

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

concerning the scope and duration of the court's injunction. As a result, on November 23, 1999, the environmental activist plaintiffs, the Forest Service, and the BLM filed a stipulation and proposed order for dismissal of the case under which the Forest Service agreed, among other things, not to lift the suspension of the Too Wild sale until certain wildlife survey requirements which the Forest Service had failed to fulfill prior to awarding Too Wild were satisfied. The Forest Service also gave the environmental activist plaintiffs the right to review any completed surveys and to object to their sufficiency before CLR's operations on the sale could resume. The court adopted this stipulation by order dated December 17, 1999.

As a result of the foregoing agreement, the Forest Service refused to permit any operations on the Too Wild sale until it finally managed to comply with the Northwest Forest Plan.[1]

---

[1]By letter dated January 3, 2001, we were also advised that the Forest Service was also suspending performance as a result of its being enjoined in the case of Pacific Coast Federation of Fishermen v. NMFS. This suspension of performance constituted an additional and alternative breach of the Forest Service's implied duties to cooperate and not to hinder our performance sale and a breach of the Too Wild timber sale contract.

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

D. The Forest Service's Liability to CLR

Although the Too Wild contract contains clause CT6.01 (10/96), which purports to allow the Forest Service to suspend a purchaser's operations with limited liability in response to a court order, it is well-established that where, as here, the Forest Service's own failure to meet its pre-award environmental obligations causes the court order to be entered, the Forest Service has breached its duty to cooperate and not to hinder a purchaser's operations. Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001); accord Superior Timber Co., Inc., IBCA No. 3459, 97-1 BCA ¶ 30,267 (contractual authority to suspend timber harvesting did not absolve the government of liability where its failure to comply with its environmental obligations was the cause of a court-ordered injunction of timber harvesting). Because the Forest Service's failure to meet its environmental obligations was the cause of the court-ordered injunction, and because the Forest Service did not bargain for the contractual right to absolve itself from liability for court orders that its improper actions caused to be entered, the Forest Service's suspension breached the Too Wild contract.

Moreover, even assuming that the Forest Service had some authority to suspend our

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

operations under clause C6.01 in these circumstances (which it did not), the Forest Service also retained an obligation to implement the suspension reasonably. Precision Pine, 50 Fed. Cl. at 64 and cases cited therein. The Forest Service's suspension of our operations, which was imposed in August 1999, has been in place for nearly four years, unquestionably an unreasonable amount of time, especially in light of the fact that the Forest Service, in its stipulation with the environmental activist plaintiffs, agreed to maintain the suspension on Too Wild until it could bring the sale area into compliance. Thus, the Forest Service's ongoing and unreasonable suspension breached the Forest Service's implied contractual duties to cooperate and not to hinder our operations.

Additionally and in the alternative, the suspension contravened the warranty represented by C6.25 that, based on all information then reasonably available, the Forest Service had already taken and specified adequate measures to protect sensitive species when it designed the sale and put it our for bid.

E. Damages

**THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.**

As a result of the Forest Service's improper suspension/breach of contract, CLR incurred the following damages for which it is entitled to compensation either pursuant to the terms of the Too Wild timber sale contract and/or as damages for the breach thereof.

1. The increased cost of replacement timber.

In this regard, because of the suspension, CLR was forced both to purchase other timber and treat some timber in its existing inventory as replacement timber in order to meet its obligations to South Coast. By doing so, we were able to maintain a flow of logs sufficient to allow South Coast to operate its anticipated level of production. The delivered log cost of this replacement timber was, however, considerably higher than that which was anticipated on Too Wild. The calculation of the damages that CLR incurred in this regard is set out in the enclosed damage materials at Tab 1.

2. Interest on deposits

At the time of the suspension, CLR had deposits on the sale totaling $328, 200. On October 1, 2000, this amount was reduced to $6, 564. Pursuant to the calculation set out in Tab

**THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.**

2 of the enclosed damage materials, interest on these sums through December 31, 2003 totals $25,291.

3. Cost of maintaining bonds during the suspension.

At the time of the suspension, CLR had a performance bond on the sale in the amount of $329,000. On July 1, 2001, this amount was reduced to $16,450. Pursuant to the calculation set out in Tab 3 of the enclosed damage materials, the cost of maintaining this bond through December 31, 2003 totals $3,066.

4. Additional move in/move out costs.

As noted above, the Forest Service's suspension of performance occurred while we were cutting and removing timber from Units 1 and 16, and as a result our logging subcontractor, Hog Mt. Equipment, was forced to leave cut timber on the ground when he removed his cutters and logging equipment from the sale area. By letter dated September 29, 1999, the Forest Service permitted us to yard and haul timber cut prior to the suspension from the sale area. Doing so, however, necessitated that Hog Mt. move in the necessary yarding and loading equipment. The cost of the unanticipated move in and move out are set forth in Tab 4.

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

5. Cost of unamortized road construction.

As indicated above, prior to the Forest Service's suspension of performance on August 31, 1999, we had constructed a number of temporary roads in Units 1 and 16. As with all federal government sales, it was our intention to amortize the cost of this road construction over the total volume of the units involved. Because were only allowed to harvest a very small portion of the timber in Units 1 and 16, amortization of some of our expenditures for temporary roads has been delayed for nearly four years. Computation of the cost of such delay is set out in Tab 5.

F. Conclusion

For the reasons set forth above, we believe that we are entitled to $2,046,667. To the extent that you disagree with all or any portion of our entitlement to this amount, we ask that you issue a contracting officer's final decision pursuant to the Contract Disputes Act within 60 days of your receipt of this letter.

Sincerely yours,

THE INFORMATION SET FORTH HEREIN AND ATTACHED HERETO CONTAINS CONFIDENTIAL INFORMATION AND TRADE SECRETS WHICH ARE PROPRIETARY TO THE SUBMITTER. NEITHER THIS SHEET NOR ANY INFORMATION SET FORTH HEREIN IS TO BE DISCLOSED IN ANY MANNER OR TO ANY EXTENT TO ANY PERSON OUTSIDE OF THE UNITED STATES GOVERNMENT WITHOUT THE EXPRESS, WRITTEN CONSENT OF THE SUBMITTER. ANY DISCLOSURE WITHOUT SUCH CONSENT CONSTITUTES A VIOLATION OF 18 U.S.C. § 1905 OF THE UNITED STATES CRIMINAL CODE.

CLR Timber Holdings, Inc.

Ronald T. Fallert
President

Enclosures

## CERTIFICATION

I certify that this claim is made in good faith, that the supporting data is accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the contract adjustment for which CLR Timber Holdings, Inc. believes the government is liable, and that I am duly authorized to certify this claim on behalf of CLR Timber Holdings, Inc.

Dated: 2/10/03

Ronald T. Fallert, President
CLR Timber Holdings, Inc.

United States Department of Agriculture | Forest Service | Rogue River National Forest
Siskiyou National Forest | Supervisor's Office
333 W. 8th Street
P.O. Box 520
Medford, OR 97501-0209

File Code: 2450

Date: November 25, 2003

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Ronald T. Fallert
President
CLR Timber holdings, Inc
P.O. Box 670
Brookings, OR 97415

RE: Too Wild Timber Sale, Contract No. 075862

Dear Ron:

CONTRACTING OFFICER'S FINDINGS AND DECISION

This decision is in response to your claim submitted by letter received in this office September 15, 2003. The decision of October 27, 2003 is hereby vacated and hereby replaced with this decision of November 25, 2003.

1. PREFACE AND DIGEST

   a. Decision Identification Number: 6-03-4

   b. Location: Region 6, Siskiyou National Forest, Gold Beach Ranger District

   c. Timber Sale: Too Wild
      Contract Date: 5/14/99
      Contract Form: 2400-6
      Purchaser: CLR Timber Holdings, Inc

   d. Purchaser's Claim:

      You claim payment in the amount of $25,291 for interest on bonds deposited, $3,066 for out of pocket bonding expense, $9,700 for unamortized moving costs and $5,019 in unamortized road construction, for the time period your operations were

suspended from September 1, 1999 to December 31, 2003. You further request increased costs for replacement timber in the amount of $2,003,592.00

2. FINDINGS

a. Too Wild Timber Sale was awarded to CLR Timber Holdings, Inc. on May 14, 1999. Contract form 2400-6 was used, which included CT6.01 (10/96) Interruption or Delay of Operations and CT9.2 Disputes (10/96).

b. By letter dated September 1, 1999, Contracting Officer, Thomas K. Link suspended all operations on this sale as directed by court order under Oregon Natural Resources Council Action et al.(ONRC), v. United States Forest Service (USFS) and Bureau of Land Management et al, No C98-942WD as per Judge Dwyer. This was the for survey and manage species.

c. On September 29, 1999, a letter was sent by Contracting Officer Thomas K. Link, allowed limited operations within units 2 and 16, under Judge Dwyer modified order of September 27, 1999.

d. By letter dated October 5, 2000, Contracting Officer Thomas K. Link reduced the Down Payment in accordance with CT4.222 (Temporary Reduction of Downpayment 7/96), due to a delay of operations for more than 60 days under Judge Dwyer injunction. (ONRC v USFS). Down Payment was reduced to $6,564.00.

e. On November 17, 2000, a Supplemental Information Report was signed by Forest Supervisor Jack E. Williams, completing the requirements for ONRC v USFS, and releasing Too Wild Timber Sale from that injunction.

f. By letter dated November 27, 2000, Contracting Officer Robert W. Thomas adjusted the Termination Date, Periodic Payment Schedule for one year, using CT8.212# Market-Related Contract Term Addition).

g. By letter dated January 3, 2001, Contracting Officer, Thomas K. Link suspended all activity on the sale as directed by court order under Pacific Coast Federation of Fishermen's Assoc. et al v. National Marine Fisheries Service, et al, (PCFFA III) No. C00-1757R as per Judge Rothstein. This letter also allowed for Contract Term Adjustment under CT6.01/BT8.21.

h. By letter dated March 7, 2001, Contracting Officer Thomas K. Link adjusted the Termination Date, Periodic Payment Schedule for three months, using CT8.212# Market-Related Contract Term Addition.

i. On June 25, 2001, a Contract Modification was executed to include CT9.110, Temporary Reduction of Performance Bond (9/99) as per your request of June 4, 2001. This amount is $16,450, which was effective June 29, 2001.

j. In July, 2002, the Biscuit Fire burnt through a large majority of the Too Wild Timber Sale.

k. By letter of January 22, 2003, Contracting Officer, Robert W. Thomas adjusted the Termination Date and Periodic Payment Schedule for two years to August 31, 2005.

l. Under court settlement on March 31, 2003, the Biological Opinion was withdrawn, thereby rendering our Decision Notice void (PCFFA III). This requires the Forest Service to reevaluate the Biological Evaluation and Decision Notice prior to activities resuming. This process is currently being examined with the Biscuit EIS, and is expected to be complete for the 2004 field season.

m. By letter of October 27, 2003, Contracting Officer Robert W. Thomas issued a Contracting Officers Decision in the amount of $35,435.00

n. Under FSM 2453.63, Cancellation by Agreement, the Regional Forester may cancel timber sales by agreement for circumstances over which the purchaser has no control making it impossible for the purchaser to continue operations.

3. DISCUSSION

Procedures outlined in Special Provision CT6.01 Interruption or Delay of Operations (10/96), provide a basis for determining the settlement amount associated with the Too Wild Timber Sale. Special Provision CT6.01 provides guidance for determining and documenting out-of-pocket expenses associated with holding the timber sale contract. The calculations that have been presented by the contractor include the out-of pocket expenses for holding bonding on the sale, the additional move-in/move-out costs and interest on cash deposits, which meet this requirement. Purchasers claim also includes unamortized costs for moving and temporary road construction, the opportunity to fully amortize those expenses still exists, as the sale is delayed, not terminated.

Special Provision CT6.01 clearly addresses the cost of replacement volume. The Purchaser has not asked for a Mutual Cancellation or termination of this contract. The Government has also not offered to terminate this sale and has granted Contract Term Adjustment under BT8.21 or CT8.212#, four times since this sale was suspended.

The costs of holding bonding will continue, until the NEPA analysis is complete for the Biscuit EIS, and the Too Wild Timber Sale can be remarked for harvest. It is anticipated that the Timber Sale will be available to the Purchaser in June of 2004.

Following the issuance of the Contracting Officers decision, several errors in the table of interest rates have been discovered, which required the original decision be vacated and replaced.

4. DECISION

It is my decision that the Purchaser is entitled to payment in the amount of $38,558.00 for out-of-pocket expenses associated with the delay of operations on this sale as a result of court action. The extent of these payments includes only those items listed in CT6.01. These out-of-pocket expenses are $3,066.00 for holding performance bonding until December 31, 2003 and $9,700.00 for additional move-in/move-out costs plus the expense of maintaining the cash down payment as measured by interest at the Prompt Payment/Contract Disputes Act rate established by the Dept of the Treasury ($25,439.00, attached worksheet) and the interest due from receipt of the claim until final payment ($353.00). This will be credited to the January Statement of Accounts.

This decision vacates the original decision of October 27, 2003, due to the errors from not including interest on the payment amount from September 15, 2003, until final payment (12/31/03) and using the incorrect bonding amount in the interest table calculations. This decision replaces the October 27, 2003 decision.

The contract (CT6.01, 10/96) does not allow for the recovery of cost associated with replacement volume and in fact the Purchaser still has the volume and neither party has discussed Mutual Cancellation in accordance with FSM 2453.63. In addition CT6.01, 10/96) clearly states that anticipatory losses are not allowed. I am therefore denying the Purchasers claim for replacement timber and unamortized road construction for $2,008,611.00

5. CONCLUDING INFORMATION

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly to the U.S. Court of Federal Claims within 12 months of the date you receive this decision.

Robert W. Thomas

ROBERT W. THOMAS
Contracting Officer
Rogue/Siskiyou National Forest
333 W. 8th Street
P.O. Box 520
Medford, OR 9701-0209
541/439-6290

cc: RO-TM (Anderson)
Claim File
Attachments