**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUE LAKE FOREST PRODUCTS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 01-570C<br>(Judge Williams) |
| TIMBER PRODUCTS COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 01-627C<br>(Judge Williams) |
| CLR TIMBER HOLDINGS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 04-501C<br>(Judge Williams) |

**PLAINTIFFS' OPPOSITION TO "DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT"**[1]

[1]Although styled as a "Cross-Motion for Partial Summary Judgment," plaintiffs interpret defendant's motion as a Motion for Summary Judgment.

**INTRODUCTION**

Defendant's cursory memorandum in support of its motion for summary judgment ignores relevant authority well-known to defendant which is adverse to defendant's position.[2] Defendant relies entirely on an interpretation of clause C(T)6.01[3] read in complete isolation from any other significant express and implied obligations of the Forest Service ("FS") under plaintiffs' contracts. In support of its motion defendant relies virtually entirely on its erroneous interpretation of Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003) (Scott IV), and Scott Timber Co. v. United States, 40 Fed. Cl. 492 (1998) (Scott I), aff'd in part & rev'd in part, 333 F.3d 1358 (Fed. Cir. 2003). Scott IV supports the validity of plaintiffs' theory that the FS can breach its duties to cooperate and not to hinder plaintiffs' performance of their timber sale contracts if it has unreasonably caused those suspensions to occur.[4] The case law and the

---

[2]The authorities utterly ignored by defendant include the following court and board cases involving federal timber sale suspensions, most of which involved plaintiffs' counsel in this case and Justice Department or agency counsel representing the FS and Bureau of Land Management: Everett Plywood Corp. v. United States, 651 F.2d 723 (Ct. Cl. 1981); Trinity River Lumber Co. v. United States, 66 Fed. Cl. 98 (2005); H.N. Wood Products, Inc. v. United States, 59 Fed. Cl. 479 (2003); Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001); Wetsel-Oviatt Lumber Co. v. United States, CoFC No. 94-389C (docket no. 215, Oct. 9, 2001); Cedar Lumber, Inc. v. United States, 5 Cl. Ct. 539 (1984); Shawn Montee, Inc. dba Shawn Montee Timber Company, AGBCA Nos. 2003-132-1 through 2003-136-1, 04-1 BCA ¶ 32,564 (2004); Shawn Montee, Inc., AGBCA No. 1004-153-R, 04-2 BCA ¶ 32,755 (2004); Tamarack Mills, LLC, AGBCA Nos. 2003-115-1 and 2003-116-1, 04-1 BCA ¶ 32,591 (2004); and Superior Timber Co., Inc., IBCA No. 3459, 97-1 BCA ¶ 27,736 (1996). All of these authorities are addressed in plaintiffs' opening brief.

[3]The parties agree that the pertinent provisions of FS contract clauses C6.01 and CT6.01 are identical. Plaintiffs' opening brief ("Pl. Br.") at 20 n.4; Defendant's opening brief ("Def. Br.") at 3 n.2. Plaintiffs refer to both clauses individually and collectively as "C(T)6.01."

[4]Plaintiffs disagree with defendant's assertion that Scott IV establishes that in no circumstances is clause C(T)6.25 a warranty. See Def. Br. at 11-12. Contrary to defendant's argument, because the ruling in Scott IV on clause C(T)6.25 arose in the context of Section 318 which deemed certain sales to be in compliance with the National Forest Management Act and the National Environmental Policy Act, the Court's interpretation of clause C(T)6.25 in that case

numerous uncontroverted facts in this case demonstrate that the Court should deny defendant's motion for summary judgment and should grant plaintiffs' motion for partial summary judgment.

## I. Clause C(T)6.01 Must Be Interpreted In The Context Of The Timber Sale Contract As A Whole, Including The Forest Service's Other Express And Implied Obligations Under The Contract

Defendant acknowledges in the abstract that the contracts in this case must be construed as a whole, that contract clauses cannot be interpreted in isolation from other parts of the contract and that a contract interpretation that gives reasonable meaning to all parts of the contract is preferred to one that leaves a portion of the contract void or meaningless. Def. Br. at 7. However, defendant does not apply these principles to its own analysis of contract clause C(T)6.01. Because defendant's interpretation of clause C(T)6.01 completely ignores the need to reconcile the interpretation of that clause with several significant implied and express obligations of the FS under plaintiffs' contracts, defendant's interpretation must be rejected.

Plaintiffs' opening brief directly addresses the appropriate interpretation of clause C(T)6.01 in light of both the FS's fundamental express obligation (to permit timber harvesting) and other equally binding and important implied obligations.[5] With respect to the FS's

clearly dealt only with and is limited to Section 318 timber sales. 333 F.3d at 1370-71. None of the subject sales are Section 318 sales. Notwithstanding the foregoing, defendant's discovery responses make clear that a C(T)6.25 warranty breach is not at issue in this case because clause C(T)6.25 applies only to threatened, endangered or sensitive ("TES") species. By its express terms, clause C(T)6.25 does not apply to Category 2 survey species or any "wildlife" other than TES species. Def. App. at 17, 42 and 75; but see Def. Br. at 2, 11-12. Because only Category 2 survey species are involved in this case, plaintiffs withdraw any claims that the FS breached its C(T)6.25 warranty.

[5]Plaintiffs respectfully refer the Court to their opening brief for a detailed discussion of how clause C(T)6.01 should be interpreted in light of each of these obligations. See Pl. Br. at 12-23 (the FS's obligations as the drafter of plaintiffs' contracts in light of the fundamental express obligation of the FS to permit the purchaser to cut and remove timber under the contract), 24-32 (the FS's breach of its implied warranty of its specifications), 32-41 (the FS's

fundamental express obligation to permit the purchaser to cut and remove timber during the Normal Operating Season ("NOS") under each contract (Pls' Appendix ("App.") Tabs 93 at A-611, 111 at A-791, and 124 at A-997), the FS cannot insulate itself from breach liability when its own acts and omissions have prevented it from making that timber available for plaintiffs to harvest, unless the FS has included a valid exculpatory clause in the contract. Because the rule in the Federal Circuit "is that the efficacy of a limitation of liability clause does not extend to those situations where the breach arises out of events within the Government's control," it may well be that the government cannot exculpate itself from such liability for actions within its control that cause harm to a contractor. C.J. Betters Corp. v. United States, 25 Cl. Ct. 674, 677 (1992) (citing Ozark Dam Constructors v. United States, 130 Ct. Cl. 354 (1955)).

In Precision Pine, and all the cases subsequently dealing with FS-caused suspensions of FS timber sales and an allegation of breach of contract based on those suspensions, this Court and the Board of Contract Appeals have agreed that clause C(T)6.01 is not a valid exculpatory clause. Trinity River, 66 Fed. Cl. at 108; H.N. Wood Products, 59 Fed. Cl. at 487; Precision Pine, 50 Fed. Cl. at 59, 64; Tamarack Mills, 04-1 BCA at 161,228; Shawn Montee, 04-1 BCA at 161,073-74. This Court should reach the same conclusion in the instant case.

Although the liability limiting provisions of clause C(T)6.01 are inapplicable where, as here, the FS has caused timber sales to be suspended, this does not mean these provisions are meaningless, because they apply in situations where the FS is not the cause of the suspension. For example, the discovery after award of an unknown TES species on the sale area which the

failure to disclose superior knowledge to plaintiffs), 42-77 (the FS's breach of its implied duties to cooperate and not to hinder plaintiffs' performance). None of the foregoing implied obligations are any less binding or important than the FS's express obligations written into each contract. See, e.g., Precision Pine, 50 Fed. Cl. at 54 & cases cited therein.

FS could not reasonably have known about prior to award could result in a suspension under clause C(T)6.01 with limited liability to the FS. Of course, the length of any such suspension and whether the FS was responsible for unduly prolonging the duration of the suspension would separately raise questions as to the applicability of the liability limitation provisions of clause C(T)6.01. Thus, clause C(T)6.01 is not rendered void or meaningless by interpreting the clause as inapplicable to limit the FS's liability to plaintiffs in this case where the FS caused the suspensions. Contrary to defendant's bald assertion, plaintiffs do not ask the Court to ignore clause C(T)6.01. See Def. Br. at 8.

The central issue raised by the instant cross-motions is the proper interpretation of clause C(T)6.01 in light of the uncontroverted facts demonstrating the FS's failure to comply with its fundamental express obligation to permit plaintiffs to harvest the timber on their sales in a timely fashion, the FS's breach of its implied warranty of its specifications, the FS's breach of its implied obligation to share its superior knowledge with plaintiffs, and the FS's breach of its implied duties to cooperate and not to hinder. Plaintiffs' interpretation of clause C(T)6.01 is reasonable, consistent with prior decisions of this Court and the Board of Contract Appeals, supported by decisions of this Court's appellate authority, and does not render the clause void or meaningless. This Court should adopt plaintiffs' interpretation of clause C(T)6.01 and should reject defendant's interpretation.

## II. Despite The Inclusion Of Clause C(T)6.01 In The Contracts, Defendant Is Not Entitled To Summary Judgment Because The Forest Service's Suspensions Of Plaintiffs' Contracts Were Unreasonable

Scott IV makes clear that the mere inclusion of clause C(T)6.01 in the FS's timber sale contracts and suspension pursuant to that clause does not entitle defendant to summary judgment because the court "must determine whether the suspensions were reasonable." 333 F.3d at 1368

(citing Scott I, 40 Fed. Cl. at 502; Thomas Creek Lumber & Log Co. v. United States, 32 Fed. Cl. 787, 790 (1995)). In Scott IV, the Federal Circuit reversed the trial court's grant of summary judgment to defendant because "[w]hether the suspensions in this case were reasonable, with respect to the C6.01 contracts, is a triable issue of fact to be adjudicated on remand." Id. at 1370.[6] See Pl. Br. at 71-76. Defendant's citation to language plucked from Scott I and Scott IV without even acknowledging the ultimate holding of the Federal Circuit is a disservice to this Court.[7] See Def. Br. at 8.

In our proposed findings of uncontroverted fact and our motion for partial summary judgment, plaintiffs have painstakingly demonstrated that the suspensions in this case were anything but reasonable. We respectfully refer the Court to our prior filings for a detailed discussion of the unreasonableness of the suspensions. In light of the holding of Scott IV, the Court should summarily deny defendant's motion for summary judgment as frivolous.

Respectfully submitted,

s/Gary G. Stevens

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiffs

[6]Some of the contracts at issue in Scott IV did not include clause C6.01. Those contracts are referred to as the non-C6.01 contracts as opposed to the C6.01 contracts which did include the clause. See, e.g., 333 F.3d at 1360, 1363, 1368.

[7]In Scott IV, the parties agreed that on the special facts of that case the FS could unilaterally suspend the contracts under C6.01 because the cause of the suspensions arose after the contracts were awarded. There was no argument that the FS caused the suspensions to occur. The focus of Scott IV was on the reasonableness of the duration of the suspensions. Scott IV, 333 F.3d at 1366, 1368-70.

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: May 2, 2008