**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUE LAKE FOREST PRODUCTS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 01-570C (Judge Williams) |
| TIMBER PRODUCTS COMPANY, Plaintiff, v. THE UNITED STATES, Defendant | No. 01-627C (Judge Williams) |
| CLR TIMBER HOLDINGS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 04-501C (Judge Williams) |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Pursuant to RCFC 56(h)(2), plaintiffs respond to Defendant's Proposed Findings of Uncontroverted Fact.

Defendant's Proposed Finding of Uncontroverted Fact No. 1

On August 2, 1999, Judge Dwyer issued an order in Oregon Natural Resources Council Action, et al. v United States Forest Service and Bureau of Land Management, No. C98-942WD (W.D. Wash) ("ONRC Action"), finding that the Forest Service and BLM did not comply with the Category 2 survey requirements as outlined in the Northwest Forest Plan ("NFP"). App. 1-5.[1] The Court issued a supplemental order on August 26, 1999, that enjoined the Forest Service from allowing operations on twenty-five timber sales, including the Happy Thin, Jack Heli, and Too Wild timber sales. App. 7-10.

Plaintiffs' Response:

Plaintiffs agree that United States District Court Judge William Dwyer issued an "Order on Motions for Summary Judgment" on August 2, 1999, published at 59 F. Supp. 2d 1085 (W.D. Wash.) ("ONRC Action") granting summary judgment to plaintiff Oregon Natural Resources Council Action and that on August 26, 1999, in that same action, Judge Dwyer issued an "Order on Additional Motions re Preliminary Injunction." The details of the court's holdings, findings and rulings are contained in these two orders which are the best evidence thereof. Defendant's proposed finding is an inappropriate partial summary of the court's orders.

[1] "App. __" refers by page number to the appendix of materials attached to defendant's motion for summary judgment filed contemporaneously with these proposed findings of uncontroverted facts.

To the extent any factual finding on this subject is appropriate, plaintiffs would revise defendant's proposed finding no. 1 as follows:

> On August 2, 1999 Judge William Dwyer issued an "Order on Motions for Summary Judgment" in Oregon Natural Resources Council Action, et al. v. United States Forest Service and Bureau of Land Management, No. C98-942WD ("ONRC Action"), 59 F. Supp. 2d 1085 (W.D. Wash.). On August 26, 1999 Judge Dwyer issued an "Order on Additional Motions re Preliminary Injunction" that enjoined the Forest Service from allowing operations on twenty-five timber sales in addition to sales previously enjoined in that action. Among those twenty-five additional timber sales were the Happy Thin, Jack Heli and Too Wild timber sales at issue in the instant action. Def. App. 1-5, 7-10; Pl. App. Tab 128.

Defendant's Proposed Finding of Uncontroverted Fact No. 2

The Forest Service awarded the Happy Thin timber sale contract to Blue Lake Forest Products ("Blue Lake") as of July 6, 1999. App. 11. The Happy Thin timber sale is located on the Klamath National Forest in California. App. 13-14.

Plaintiffs' Response:

Plaintiffs agree that the Happy Thin timber sale was awarded to Blue Lake on July 6, 1999, and that the sale is located on the Klamath National Forest in California.

Accordingly, plaintiffs agree with defendant's finding with the following grammatical change and additional record citations:

> The Forest Service awarded the Happy Thin timber sale contract to Blue Lake Forest Products ("Blue Lake") on July 6, 1999. Def. App. 11-12, 13-14; Pl. App. Tabs 122 and 124. The Happy Thin timber sale is located on the Klamath National Forest in California. Def. App. 13-14; Pl. App. Tab 124.

Defendant's Proposed Finding of Uncontroverted Fact No. 3

Blue Lake's contract included the following contract clauses:

> BT8.21 Contract Term Adjustment. "Contract Term Adjustment" means adjustment only as provided immediately above and for the three circumstances described in this Subsection. Under said circumstances, the contract term shall be adjusted in writing to include additional calendar days in one or more Normal Operating Seasons equal to the actual time lost . . . . (c) Purchaser (i) accepts Forest Service written request to interrupt or delay operations for any purpose other than suspension under BT4.4 or BT9.3 . . . and the total time lost is 10 or more calendar days during any Normal Operating Season.

App. 15.

> CT6.01 -Interruption or Delay of Operations. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of Contracting Officer . . . (b) To comply with a court order, issued by a court of competent jurisdiction . . . . Purchaser agrees that in even of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (i) Contract Term Adjustment pursuant to BT8.21, or (ii) when such an interruption or delay exceeds 30 days during Normal Operating Season, Contract Term Adjustment pursuant to BT8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do no include lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

App. 16.

> CT6.25# -Protection of Habitat of Endangered Species. (10/78) Location of areas needing special measures for protection of plants and animals listed as threatened or endangered under the Endangered Species Act of 1973 and R-5 Sensitive Plant and Animal Species List are shown on Sale Area Map and identified on the ground. Measures needed to protect such areas have been included elsewhere in this contract or are as follows: NONE. If protection measures prove inadequate, if other such areas are discovered, or if new species are listed on the Endangered Species

> List, Forest Service may either cancel under CT8.2 or unilaterally modify this contract to provide additional species protection regardless of when such facts become known . . . .

App. 17.

Plaintiffs' Response:

Plaintiffs agree that contract clauses B8.21, C.601 and C6.25# as reproduced at Def. App. 16-17 and at Pl. App. Tab 124 at A-1037 to A-1039 were included in Blue Lake's Happy Thin contract. However, both parties' appendices contain complete copies of these clauses and no "fact" stipulation is necessary. Plaintiffs object that defendant references only incomplete versions of each clause.

Accordingly, plaintiffs submit that defendant's proposed finding no. 3 should be restated as follows:

> The following clauses were included in Blue Lake's Happy Thin timber sale contract: B8.21, C6.01 and C6.25#, as these clauses are reproduced in their entirety at Def. App. 16-17 and at Pl. App. Tab 124 at A-1037 to A-1039.

Defendant's Proposed Finding of Uncontroverted Fact No. 4

On August 27, 1999, Ed Matthews, contracting officer for the Happy Thin timber sale, sent Blue Lake a letter informing the timber purchaser that work on the sale must be suspended due to a court order. App. 18. The letter included a copy of the ONRC Action August 26, 1999, preliminary injunction order, and informed Blue Lake that operations were suspended in accordance with that order. Id.

Plaintiffs' Response:

Plaintiffs agree that on August 27, 1999 Ed Matthews, contracting officer for the Happy Thin timber sale, sent Blue Lake a letter stating that Blue Lake was "DIRECTED TO SUSPEND ALL OPERATIONS IMMEDIATELY" on Happy Thin "in accordance" with Judge Dwyer's August 26, 1999 Court Order. Otherwise the letter speaks for itself.

Accordingly, plaintiffs submit that defendant's proposed finding no. 4 should be restated as follows:

> On August 27, 1999, Ed Matthews, contracting officer for the Happy Thin timber sale, sent Blue Lake a letter directing Blue Lake to "SUSPEND ALL OPERATIONS IMMEDIATELY" on the Happy Thin timber sale in accordance with the Court's August 26, 1999 Order. Def. App. 18.

Defendant's Proposed Finding of Uncontroverted Fact No. 5

On June 13, 2000, Blue Lake submitted a claim for damages in the amount of $886,164.15, plus interest. App. 19-26. Ed Matthews denied the claim in its entirety on October 6, 2000, while noting that the "Contracting Officer will consider properly documented out-of-pocket expenses caused by the delay in operations when they have been incurred." App. 27-29.

Plaintiffs' Response:

Plaintiffs agree that Blue Lake submitted a Contract Disputes Act claim on June 13, 2000 in the amount of $886,164.15 plus interest and that Contracting Officer Ed Matthews denied the claim in its entirety on October 6, 2000. As to any other content of the documents cited, the documents speak for themselves.

Accordingly, plaintiffs submit that defendant's proposed finding no. 5 should be restated as follows:

> On June 13, 2000, Blue Lake submitted a claim for Contract Disputes Act damages in the amount of $886,164.15, plus interest. Contracting Officer Ed Matthews denied that claim in its entirety on October 6, 2000. Def. App. 27-29; Pl. App. Tab 137.

Defendant's Proposed Finding of Uncontroverted Fact No. 6

Blue Lake filed a supplemental claim on November 17, 2000, requesting $7,964.50 in out-of-pocket expenses pursuant to CT6.01. App. 30. Ed Matthews, contracting officer, approved the $7,964.50 claim for out-of-pocket expenses on January 30, 2001. App. 31-32.

Plaintiffs' Response:

Plaintiffs agree.

Defendant's Proposed Finding of Uncontroverted Fact No. 7

On October 8, 1999, Blue Lake requested a Contract Term Adjustment ("CTA") under BT8.21. App. 33. On November 1, 1999, Ed Matthews, contracting officer, approved the CTA to July 16, 2001. App. 34. On August 29, 2000, the parties executed a modification to the contract, which included a CTA that extended the contract term to June 18, 2002. App. 35.

Plaintiffs' Response:

Plaintiffs agree.

Defendant's Proposed Finding of Uncontroverted Fact No. 8

Blue Lake filed its complaint in this Court on October 2, 2001, claiming that the Forest Service breached the Happy Thin timber sale contract by wrongfully suspending operations on August 27, 1999. Blue Lake Compl., ¶ 9.[2]

Plaintiffs' Response:

Blue Lake's complaint is a part of the record in this case and speaks for itself. Defendant's proposed finding no. 8 is not appropriate.

Defendant's Proposed Finding of Uncontroverted Fact No. 9

The Forest Service awarded the Jack Heli timber sale contract to Timber Products Company ("Timber Products") as of March 2, 1999. App. 36-37. The Jack Heli timber sale is located on the Klamath National Forest in California. App. 38-39.

Plaintiffs' Response:

Plaintiffs agree with defendant's proposed finding no. 9 with the following grammatical change plus additional record citations:

> The Forest Service awarded the Jack Heli timber sale to Timber Products Company ("Timber Products") on March 2, 1999. The Jack Heli is located on the Klamath National Forest in California. Def. App. 36-37, 38-39; Pl. App. Tabs 91 and 93 at A-610 to A-611.

[2] "Compl. ¶ #" refers to plaintiff's complaint filed in this Court.

Defendant's Proposed Finding of Uncontroverted Fact No. 10

Timber Products' contract included the following contract clauses:

> B8.21 Contract Term Adjustment. "Contract Term Adjustment" means adjustment only as provided immediately above and for the three circumstances described in this Subsection. Under said circumstances, the contract term shall be adjusted in writing to include additional calendar days in one or more Normal Operating Seasons equal to the actual time lost . . . . (c) Purchaser (i) accepts Forest Service written request to interrupt or delay operations for any purpose other than suspension under B4.4 or B9.3 . . . and the total time lost is 10 or more calendar days during any Normal Operating Season.

App. 40.

> C6.01 -Interruption or Delay of Operations. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of Contracting Officer . . . (b) To comply with a court order, issued by a court of competent jurisdiction . . . . Purchaser agrees that in even of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (i) Contract Term Adjustment pursuant to B8.21, or (ii) when such an interruption or delay exceeds 30 days during Normal Operating Season, Contract Term Adjustment pursuant to B8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do no include lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

App. 41.

> C6.25# -Protection of Habitat of Endangered Species. (10/78) Location of areas needing special measures for protection of plants and animals listed as threatened or endangered under the Endangered Species Act of 1973 and R-5 Sensitive Plant and Animal Species List are shown on Sale Area Map and identified on the ground. Measures needed to protect such areas have been included elsewhere in this contract or are as follows: NONE. If protection measures prove inadequate, if other such areas are discovered, or if new species are listed on the Endangered Species

> List, Forest Service may either cancel under C8.2 or unilaterally modify this contract to provide additional species protection regardless of when such facts become known . . . .

App. 42.

Plaintiffs' Response:

Plaintiffs agree that contract clauses B8.21, C6.01 and C6.25# as reproduced at Def. App. 16-17 and at Pl. App. Tab 124 at A-1037 to A-1039 were included in Timber Products' Jack Heli contract. However, both parties' appendices contain complete copies of these clauses and no "fact" stipulation is necessary. Plaintiffs object that defendant references only incomplete versions of each clause.

Accordingly, plaintiffs submit that defendant's proposed finding no. 10 should be restated as follows:

> The following clauses were included in Timber Products' Jack Heli timber sale contract: B8.21, C6.01 and C6.25#, as these clauses are reproduced in their entirety at Def. App. 16-17 and at Pl. App. Tab 124 at A-1037 to A-1039.

Defendant's Proposed Finding of Uncontroverted Fact No. 11

On August 27, 1999, Ed Matthews, contracting officer for the Jack Heli timber sale, sent Timber Products a letter informing the timber purchaser that work on the sale must be suspended due to a court order. App. 43. The letter included a copy of the ONRC Action August 26, 1999, preliminary injunction order, and informed Timber Products that operations were suspended in accordance with that order. Id.

Plaintiffs' Response:

Plaintiffs agree that on August 27, 1999 Ed Matthews, contracting officer for the Jack Heli timber sale, sent Timber Products a letter stating that Timber Products was "DIRECTED TO SUSPEND ALL OPERATIONS IMMEDIATELY" on Jack Heli "in accordance" with Judge Dwyer's August 26, 1999 Court Order. Otherwise, the letter speaks for itself.

Accordingly, plaintiffs submit that defendant's proposed finding no. 11 should be revised to state:

> On August 27, 1999, Ed Matthews, contracting officer for the Jack Heli timber sale, sent Timber Products a letter directing Timber Products to "SUSPEND ALL OPERATIONS IMMEDIATELY on Jack Heli timber sale, contract no. 060715." That letter is reproduced at Def. App. 43 and at Pl. App. Tab 129.

Defendant's Proposed Finding of Uncontroverted Fact No. 12

On July 14, 2000, Timber Products submitted a claim for damages in the amount of $1,100,799.68, plus interest. App. 44-52. Ed Matthews denied the claim in its entirety on November 9, 2000, while noting that the "Contracting Officer will consider properly documented out-of-pocket expenses caused by the delay in operations when they have been incurred." App. 53-55. On June 13, 2007, Timber Products submitted a supplemental claim that included out-of-pocket expenses for the Forest Service's consideration. App. 56-61.

Plaintiffs' Response:

Plaintiffs agree that on July 14, 2000 Timber Products submitted a Contract Disputes Act claim for damages in the amount of $1,100,799.68 plus interest to the contracting officer and that

Contracting Officer Ed Matthews denied Timber Product's claim in its entirety on November 9, 2000. Plaintiffs also agree that on June 13, 2007 Timber Products submitted to the Forest Service contracting officer a supplemental Contract Disputes Act claim that included out-of-pocket expenses. However, defendant's proposed finding fails to note that on August 24, 2005, Timber Products submitted a supplemental Contract Disputes Act claim that, like the June 13, 2007 letter, included the out-of-pocket expenses that Timber Products had started incurring once it began operating on the Jack sale. Finally, the referenced documents speak for themselves.

Accordingly, plaintiffs submit that defendant's proposed finding no. 12 should be restated as follows:

> On July 14, 2000, Timber Products submitted a Contract Disputes Act claim for damages in the amount of $1,100,799.68 plus interest, and Contracting Officer Ed Matthews denied this claim in its entirety on November 9, 2000. Def. App. 44-52; Pl. App. Tab 139. On August 24, 2005, Timber Products submitted to the Forest Service contracting officer a supplemental Contract Disputes Act claim that included out-of-pocket expenses. Pl. App. Tab 165. On June 13, 2007, Timber Products submitted to the Forest Service's contracting officer another supplemental Contract Disputes Act claim letter that included added out-of-pocket expenses. Def. App. 56-61; Pl. App. Tab 165.

Plaintiffs note that the copy of Timber Products' July 14, 2000 Contract Disputes Act claim letter included in defendant's appendix is incomplete. A complete copy of this claim letter is found at Pl. App. Tab 139.

Additionally, plaintiffs note that the contracting officer effectively denied all of Timber Products' supplemental Contract Disputes Act claims as of the date of Timber Products' initial claim, July 14, 2000. All of Timber Products' supplemental claims arise from the same set of operative facts as those in its initial claim and thus are subsumed within it although Timber

Products presented these supplemental claims to the contracting officer out of an abundance of caution. Further, even if they are considered separate claims, the failure of the contracting officer to issue final decisions on the supplemental claims results in the deemed denial of those claims which have been pending before the contracting officer for well in excess of 60 days.

Defendant's Proposed Finding of Uncontroverted Fact No. 13

On December 7, 1999, Timber Products requested a Contract Term Adjustment ("CTA") under B8.21. App. 62. On January 3, 2000, the parties executed a modification of the contract, which included a CTA that extended the contract term to July 3, 2001. App. 63. On March 30, 2000, Timber Products requested a second CTA. App. 64. On December 7, 2000, the parties executed a modification that extended the contract to July 1, 2002. App. 65.

Plaintiffs' Response:

Plaintiffs agree.

Defendant's Proposed Finding of Uncontroverted Fact No. 14

Timber Products filed its complaint in this Court on November 6, 2001, claiming that the Forest Service breached the Jack Heli timber sale contract by wrongfully suspending operations. Timber Products Compl. ¶ 27.

Plaintiffs' Response:

Timber Products' complaint is in the record of this case and speaks for itself. Defendant's proposed finding no. 14 is not appropriate.

Defendant's Proposed Finding of Uncontroverted Fact No. 15

The Forest Service awarded the Too Wild timber sale contract to CLR Timber Holdings, Inc. ("CLR") as of May 14, 1999. App. 66-69. The Too Wild timber sale contract is located on the Siskiyou National Forest in Oregon. App. 70-71.

Plaintiffs' Response:

Plaintiffs agree with defendant's proposed finding no. 15 with the following grammatical change and additional record citations:

> The Forest Service awarded the Too Wild timber sale contract to CLR Timber Holdings, Inc. ("CLR") on May 14, 1999. Def. App. 66-69; Pl. App. Tab 110 and 111 at A-790, A-791. The Too Wild timber sale is located on the Siskiyou National Forest in Oregon. Def. App. 70-71; Pl. App. Tab 111 at A-790 to A-791.

Defendant's Proposed Finding of Uncontroverted Fact No. 16

CLR's contract included the following contract clauses:

> BT8.21 Contract Term Adjustment. "Contract Term Adjustment" means adjustment only as provided immediately above and for the three circumstances described in this Subsection. Under said circumstances, the contract term shall be adjusted in writing to include additional calendar days in one or more Normal Operating Seasons equal to the actual time lost . . . . (c) Purchaser (i) accepts Forest Service written request to interrupt or delay operations for any purpose other than suspension under BT4.4 or BT9.3 . . . and

the total time lost is 10 or more calendar days during any Normal Operating Season.

App. 72.

CT4.222 <u>Temporary Reduction of Downpayment</u>. (7/96) . . . . When, pursuant to CT6.01 or CT6.25#, Contracting Officer requests Purchaser to interrupt or delay all or any portion of Purchaser's operations under this contract for more than 60 consecutive days, the downpayment amount being held on deposit may be temporarily reduced upon the written request of the Purchaser or at the discretion of the Contracting Officer . . . .

App. 73.

CT6.01 -<u>Interruption or Delay of Operations</u>. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of Contracting Officer . . . (b) To comply with a court order, issued by a court of competent jurisdiction . . . . Purchaser agrees that in even of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (i) Contract Term Adjustment pursuant to BT8.21, or (ii) when such an interruption or delay exceeds 30 days during Normal Operating Season, Contract Term Adjustment pursuant to BT8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do no include lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

App. 74.

CT6.25# -<u>Protection of Habitat of Endangered Species</u>. (10/78) Location of areas needing special measures for protection of plants and animals listed as threatened or endangered under the Endangered Species Act of 1973 and R-5 Sensitive Plant and Animal Species List are shown on Sale Area Map and identified on the ground. Measures needed to protect such areas have been included elsewhere in this contract or are as follows: NONE. If protection measures prove inadequate, if other such areas are discovered, or if new species are listed on the Endangered Species List, Forest Service may either cancel under CT8.2 or unilaterally

> modify this contract to provide additional species protection regardless of when such facts become known . . . .

App. 75.

Plaintiffs' Response:

Plaintiffs agree that contract clauses B8.21, C6.01 and C6.25# as reproduced at Def. App. 72, 73, 74, 75 and at Pl. App. Tab 111 at A-836, A-846, A-870 to A-871 and A-874 were included in CLR's Too Wild contract. However, both parties' appendices contain complete copies of these clauses and no "fact" stipulation is necessary. Plaintiffs object that defendant references only incomplete versions of each clause.

Accordingly, plaintiffs submit that defendant's proposed finding no. 16 should be restated as follows:

> The following clauses were included in CLR's Too Wild timber sale contract: B8.21, C6.01 and C6.25#, as these clauses are reproduced in their entirety at Def. App. 72, 73, 74, 75 and at Pl. App. Tab 111 at A-836, A-846, A-870 to A-871 and A-874.

Defendant's Proposed Finding of Uncontroverted Fact No. 17

On August 27, 1999, Thomas Link, contracting officer for the Too Wild timber sale, informed CLR that work on the sale must be suspended due to a court order. App. 76. On September 1, 1999, Mr. Link sent CLR a letter confirming that the Too Wild timber sale was suspended. Id. The letter included a copy of the preliminary injunction order and informed CLR that operations were suspended in accordance with that order. Id.

Plaintiffs' Response:

CLR received a letter dated September 1, 1999 from Thomas Link, contracting officer, stating that "all operations must remain suspended until further notice" as a result of the August 26, 1999 Order in the ONRC Action lawsuit and a telephone call on August 27, 1999 informing CLR that the sale was suspended. CLR has no record indicating that any reference was made in the phone call to a court order.

Accordingly, plaintiffs submit that defendant's proposed finding no. 17 should be revised to read:

> On August 27, 1999, Thomas Link, contracting officer for the Too Wild sale, called CLR and said that work on the sale must be suspended. On September 1, 1999, Mr. Link sent CLR a letter directing CLR to suspend all operations "until further notice" on its Too Wild timber sale because that sale was named in a preliminary injunction order issued on August 26, 1999 by U.S. District Court in the ONRC Action lawsuit. Def. App. 76; Pl. App. Tab 130.

Defendant's Proposed Finding of Uncontroverted Fact No. 18

On October 5, 2000, Thomas Link, contracting officer, granted CLR's request for a reduction in down-payment for the Too Wild timber sale pursuant to CT4.222, and reduced CLR's down-payment from $328,200, to $6,564.00. App. 77.

Plaintiffs' Response:

Plaintiffs agree.

Defendant's Proposed Finding of Uncontroverted Fact No. 19

On September 13, 2003, CLR submitted a claim for damages in the amount of $2,046,667, plus interest. App. 78-91. On November 25, 2003, Robert Thomas, contracting officer for the Rogue/Siskiyou National Forest, issued his final decision. App. 92-96. Mr. Thomas determined that CLR was entitled to $38,558.00 for out-of-pocket expenses pursuant to CT6.01. App. 95. Mr. Thomas denied the remainder of the claim, noting that the "contract (CT6/01, 10/96) does not allow for the recovery of cost associated with replacement volume and in fact the Purchaser still has the volume . . . . In addition CT6.01, 10/96) [sic] clearly states that anticipatory losses are not allowed." Id.

Plaintiffs' Response:

Plaintiffs agree that on September 13, 2003 CLR submitted a claim for damages in the amount of $2,046, 667 plus interest; that on November 25, 2003 Robert Thomas, contracting officer for the Rogue/Siskiyou National Forest, issued his final decision which determined that CLR was entitled to $38,588.00 for out-of-pocket expenses computed in accordance with clause CT6.01 and denied the remainder of the claim. Plaintiffs object to defendant's selected extracts from the documents cited. Plaintiffs further note that the copy of CLR's September 13, 2003 Contract Disputes Act claim letter included in defendant's appendix is incomplete. A complete copy of this claim letter is found at Pl. App. Tab 153.

Accordingly, plaintiffs submit that defendant's proposed finding no. 19 should be restated as follows:

> On September 13, 2003, CLR submitted a Contract Disputes Act claim to the Forest Service contracting officer for damages in the amount of $2,046,667 plus interest. On November 25, 2003, Robert Thomas, contracting officer for the Rogue/Siskiyou National Forest, issued his final decision and determined that CLR was entitled to $38,558 for out-of-pocket expenses computed pursuant to the terms of CT6.01 and denying the remainder of CLR's claim. Def. App. 78-91, 92, 96; Pl. App. Tabs 153 and 158.

Defendant's Proposed Finding of Uncontroverted Fact No. 20

CLR filed its complaint in this Court on March 9, 2004, claiming that the Forest Service breached the Too Wild timber sale contract by wrongfully suspending operations. CLR Compl. ¶ 9.

Plaintiffs' Response:

CLR's complaint is in the record of this case and speaks for itself. Defendant's proposed finding no. 20 is not appropriate.

Respectfully submitted,

s/Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiffs

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: May 2, 2008