61. C/CT6.22 – Protection of Improvements Not Owned by Forest Service is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.221.

62. C/CT6.221 – Protection of Property is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.222.

63. C/CT6.24# – Protection of Cultural Resources is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division replacing B/BT6.24 – Protection of Historic Sites. A new C/CT provision, C/CT6.24# – Site Specific Protection Measures for Cultural Resources, had been added.

64. C/CT6.25# – Protection of Habitat of Endangered Species is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division and it has been renamed to be B/BT6.25 – Protection of Threatened, Endangered, and Sensitive Species. A new C/CT provision, C/CT6.25# – Site Specific Protection Measures for Threatened, Endangered, and Sensitive Species, has been added.

65. C/CT6.26# – Protection of Cave Resources is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.26 – Protection of Cave Resources. A new C/CT provision, C/CT6.26# – Site Specific Protection Measures for Cave Resources, has been added.

66. C/CT6.3 – Plan of Operations is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.311. A phrase from the instructions was added to state that this Item only applies to sales of 2 or more years between award and termination date.

67. C/CT6.311 – Plan of Operations for Road Construction is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.312.

68. C/CT6.33 – Safety is no longer approved as a C/CT provision. Its text has been combined with B/BT6.33 and incorporated into the B/BT Division as B/BT6.33 – Safety.

69. C/CT6.341 – Prevention of Oil Spills is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.341.

70. B/BT6.35 – Acceptance of Work has one sentence moved to new B provision B/BT6.361 – Acceptance of Specified Roads. It has also been renumbered as B/BT6.36.

71. C/CT6.351 – Acceptance of Specified Roads and C/CT6.35 – Final Acceptance of Specified Roads are no longer approved as C/CT provisions. Their text has been combined and incorporated into the B/BT Division as B/BT6.361. In addition, one sentence from B/BT6.35 – Acceptance of Work has been added.

72. C/CT6.36 – Equipment Cleaning is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.35.

73. C6.4 – Conduct of Logging has a cross reference added, making it consistent with CT6.4.

74. C/CT6.41 – Felling and Bucking is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division, replacing B/BT6.41.

75. C/CT6.61# – Wetlands Protection is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.62 – Wetlands Protection. A new C/CT provision, C/CT6.62# – Site Specific Wetland Protection Measures, has been added. Subsequent subsections (B/BT6.62 through B/BT6.66) have been renumbered to allow for the insertion of this subsection.

76. C/CT6.621 – Temporary Roads to Remain Open is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT6.631.

77. C6.81 – Scaling Services is no longer approved as a C provision. Its text has been incorporated into the B Division, replacing B6.81.

78. C6.812 – Weighing Services is no longer approved as a C provision. Its text has been incorporated into the B Division as B6.811.

79. C6.813 – Third Party Scaling Services is updated to reflect revised provision references and renumbered as C6.812.

80. C6.82 – Product Identification Options 1 and 2 are no longer approved as C provisions. Their text has been combined and incorporated into the B/BT Division as B6.842. The phrase "West of the 100th meridian," has been added at the beginning of paragraph (b).

81. CT6.82 – Product Identification is no longer approved as a CT provision. Its text has been incorporated into the BT Division as BT6.81. The phrase "For timber sales west of the 100th meridian," has been added at the beginning.

82. C6.841 – Route of Haul is no longer approved as a C provision. Its text has been incorporated into the B Division as B6.841.

83. C6.85 – Scaling Lost Products is no longer approved as a C provision. Its text has been incorporated into the B Division, replacing B6.85.

84. C6.851 – Scaling Lost Sample Loads is no longer approved as a C provision. Its text has been incorporated into the B Division as B6.851.

85. C/CT6.9 – Requirement for Small Business Processing is updated to reflect revised provision references and is renumbered C/CT6.91.

86. C/CT6.91 – SSTS Processing Requirements and Records is updated to reflect revised provision references and is renumbered C/CT6.92.

87. C/CT8.11 – Title Passage is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division, replacing B/BT8.11.

88. B/BT8.2 – Period of Contract has a reference to B/BT8.212 added as one of the authorities for adjusting the termination date.

89. C/CT8.2 – Termination is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT8.24.

90. C/CT8.21 – Delay in Reconstruction of Processing Facilities is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT8.211.

91. C/CT8.211 – Delay of Award is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT8.213.

92. C/CTC8.212# – Market-Related Contract Term Addition is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT8.212. The index is now stated in A26 or AT23.

93. C/CT8.221 – Termination by Purchaser is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division, replacing B/BT8.221. Paragraph (b) of the C/CT provision is eliminated since it is always met if paragraph (a) is met.

94. C/CT8.23 – Contract Term Extension is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division, replacing B/BT8.23.

95. C/CT8.23-1 – Contract Term Extension (Option 1) is renamed and renumbered C/CT8.232 – Contract Term Extension with Environmental Modification.

96. C/CT8.231 – Conditions for Contract Term Extension is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT8.231.

97. C/CT8.3 – Contract Modification is no longer approved as a C/CT provision. Its text has been combined with B/BT8.3 and incorporated into the B/BT Division as B/BT8.3. The term Forest Service Officer was changed to Contracting Officer. The phrase "except as provided in B/BT8.24" was also added to reflect that only the Chief has authority to terminate a contract under this provision.

98. C/CT8.32 – Changed Conditions is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division, replacing B/BT8.32.

99. B/BT8.4 – Performance by Other Than Purchaser has the term Forest Service Officer changed to Contracting Officer.

100. C/CT8.6 – Debarment and Suspension Certification, Lower Tiered Covered Transactions is no longer approved as a C/CT provision. Its title has been shortened and its text has been incorporated into the B/BT Division as B/BT8.64 – Debarment and Suspension Certification.

101. B/BT8.63 – Nondiscrimination in Employment has a reference to Executive Order No. 12086 of October 5, 1978 added to update it to reflect current Executive Orders.

102. C/CT8.63 – Nondiscrimination in Employment is no longer approved as a C/CT provision. Its text has been combined with B/BT8.63 and incorporated into the B/BT Division as B/BT8.63.

103. C/CT8.641# – Use of Timber is renumbered as C/CT6.85#.

104. C/CT9.1 – Letters of Credit is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT9.12.

105. C/CT9.11 – Bond Reduction is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division, replacing B/BT9.11.

106. C/CT9.2 – Disputes is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division, replacing B/BT9.2.

107. C/CT9.21 – Submission of Claim is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT9.21.

108. C/CT9.22 – Contract Documents is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT9.22.

109. B/BT9.3 – Breach has the term Forest Service Officer changed to Contracting Officer. The last two sentences of BT9.3 have been incorporated into B/BT9.31.

110. C/CT9.3 – Breach is no longer approved as a C/CT provision. Its text has been renamed and incorporated into the B/BT Division as B/BT9.31 – Termination for Breach.

111. C/CT9.4 – Failure to Cut is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division, replacing B/BT9.4.

112. C/CT9.41 – Failure to Execute Contract is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT9.41.

113. C/CT9.5 – Settlement is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT9.52 – Settlement for Other Environmental

Termination. The relevant paragraphs of B/BT8.24 are referenced, as well as clarifying that it is the Chief, rather than the Forest Service, that has this authority.

114. C/CT9.51 – Settlement for Administrative Appeal or Litigation is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT9.53. A reference to provision B/BT8.24 has been added since damages are calculated under this provision.

115. C/CT9.52 – Settlement for Environmental Cancellation is no longer approved as a C/CT provision. Its text has been incorporated into the B/BT Division as B/BT9.51 – Settlement for Threatened, Endangered, or Sensitive Species Termination.

116. B/BT9.6 – Contract Closure has the term Forest Service Officer changed to Contracting Officer.

These revised B/BT Divisions would supersede the B and BT Divisions dated 9/73 and 10/73, respectively. The revised A/AT Division Special Condition pages and C/CT Division Special Provisions would also supersede previous versions.

Enclosed are complete sets of the proposed A/AT Special Conditions, B/BT Standard Provisions, and C/CT Special Provisions. We would like to discuss these proposals with you in Flagstaff, but if you have questions before then, please contact Rex Baumback at (202) 205-0855.

/s/ William E. Timko
for
ANN M. BARTUSKA
Director, Forest and Rangeland Staff

Enclosures
FS-2400-6/6T B/BT Division Standard Provisions (1/01)
Updated A/AT Division Special Conditions (all)
Updated C/CT Division Special Provisions (all)

cc (w/ enclosures):
Chris West, Northwest Forestry Assoc., 1500 S.W. First Ave., Suite 330, Portland, OR 97201
Frank Gladics, Independent Forest Products Assoc., 14780 S.W. Osprey Dr., Suite 270, Beaverton, OR 97007
Tom Troxel, Intermountain Forest Industry Assoc., 2040 W. Main St., Suite 315, Rapid City, SD 57702

*Baumback:202-205-0855:October 19, 2000*
*I Concur:RBaumback:Thursday,October 19, 2000*
*I Concur: RFitzgerald:October 30, 2000*

AMERICAN FOREST RESOURCE COUNCIL

Ann Bartuska
Director of Forest Management
USDA Forest Service
P.O. Box 96090
Washington, D.C. 20090-6090

March 22, 2001

Dear Ann,

At the November meeting of the Federal Timber Purchasers Committee meeting, Rex Baumback presented the group with proposed new 2400-6 and –6T contracts. He explained to us that this new contract did not contain anything "new" but was rather a cleaning up of the existing contract. This cleaning up would consist of incorporating the long standing required "C" provisions into the "B" provisions and deleting the currently inapplicable "B" provisions. This sounded like a reasonable evolution of the contract so we made a commitment to provide you with our comments by April 1st.

On December 5th, Rex sent me the proposed contract as well as all of the current (7/00) "C" provisions. I proceeded to construct a side-by-side analysis to verify that the new contract was "as advertised." The result of that analysis found that the new contract was as it had been described except for some minor differences I feel we could have worked out.

On February 12th, I received an email from Rex informing me that the Forest Service had approved a revised (12/00) list of "C" provisions for the 2400-6 and –6T contracts. At that time, he sent an updated proposed new contract and list of "C" provisions. He also provided me with an updated side-by-side. These documents were distributed to the FTPC without my review as time was running short.

**Ross Mickey**
*Western Oregon Manager*
2300 Oakmont Way Suite 205 • Eugene, OR 97401
Tel. (541) 342-1892 • Fax (541) 342-5492
Email: rmickey@afrc.ws

Exhibit 16

I have received numerous comments back from the Committee and have come to the conclusion that we will require an extension in the comment period to August 1st. This is approximately one month after our next to-be-scheduled FTPC meeting. The reasons for this need for an extension are as follows:

1. Many changes and additions were made to the "C" provisions between the 7/00 and 12/00 versions. FTPC was neither asked for or gave any comments on these changes, many of which are unacceptable to the industry.
2. Many of the changed and added "C" clauses issued in December were incorporated as "B" provisions in the proposed new contract. This violates the spirit and intent of creating a "new" neutral contract.
3. The side-by-side that was done by Rex did not clearly reflect the changes being proposed between the status quo (what existed as of 7/00) and the proposed new contract. The side-by-side merely showed the changes between the Decembers modified "C" clauses and proposed contract language. The members of the FTPC, therefore, have not received a true picture of the magnitude of the changes being proposed in the new contract.

I now must prepare a new side-by-side to send out to the FTPC and solicit comments. The timing of this process will coincide with the next meeting of the FTPC in June or July. I would then like another month to compose our detailed comments.

Please call me if you have any questions. I hope to here from you soon regarding our request.

Sincerely,

Ross Mickey
Chair, Contract Sub-committee
FTPC

Cc: Rex Baumback

**Ross Mickey**
*Western Oregon Manager*
2300 Oakmont Way Suite 205 • Eugene, OR 97401
Tel. (541) 342-1892 • Fax (541) 342-5492
Email: rmickey@afrc.ws

March 29, 2001

Ross:

I have included the following documents:

2400-6 Contract incorporating C provisions as of July 2000 (modified from what you were sent before to remove C provisions not current in July 2000.

2400-6T Contract incorporating C provisions as of July 2000 (modified from what you were sent before to remove C provisions not current in July 2000.

A(AT) and C(CT) Provisions that would be necessary to implement the July 2000 Contract.

A Crosswalk from the propose B Section (first document above) to C provisions in effect in July 2000 (I used your crosswalk as a starting point and made changes to reflect only incorporating the C provisions in effect in July 2000. In other words, I did not check your document for accuracy. In addition, I did not compare today's C provisions with those in existence in July 2000, Since today's C provisions have already been implemented.)

Our October 31, 2000 letter to AFPA.

One of the principal objectives the Forest Service had in proposing a revision of the contract was to reduce the number of C provisions and the number of provisions that are made inapplicable. It was hoped that this objective would make the contract easier to understand and use. Now, based on your demand, that either we not include the December 2000 C provisions in the contract revision, or industry would not support the revisions and would do everything possible to stop the revision, I have added 25 C provisions to the list of C provisions that must be used with the July 2000 contract. There will also be about 25 inapplicable B provisions with the July 2000 contract. I guess that's better than the approximately 100 that we currently have, but it still does not make sense to only update the contract to a point approximately 1 year prior. Those December C provisions will be just as valid contractually (In fact C provisions take precedence over B provisions if there is a conflict.) as they would be if they were B provisions. They are not "temporary" as you suggested.

The revised contract has undergone extensive review within the Forest Service. I had planned on incorporating these review suggestions (All of which would be beneficial to industry or neutral.) into the revised contract, but will defer this, since none of the revisions are critical and the revised contract would end up with even more C provisions and deleted B provisions. They can all wait until there is a subsequent revision of the B Section. Many of the revisions in December and all of the C provisions that I was preparing for release were attempts to "perfect" the C provisions prior to incorporating them into the revised contract. Specifically, I had been planning to propose the following changes for approval:

<u>C/CT3.3#</u> – <u>Scheduled Rate Redetermination After Environmental or Catastrophic Damage Modification</u>. The procedure for determining redetermined rates after

Exhibit 17

catastrophic damage would be corrected to assure that stumpage is reduced to reflect the reduced value due to catastrophic damage when a sale is extended.

C/CT4.221 – Advance Deposits. The requirement to suspend operations when the credit balance in Timber Sale Account is less than the amount due for timber estimated to be cut in 10 days would be moved from C/CT4.4 to this provision.

C/CT4.229 – Temporary Reduction of Downpayment. This provision would be modified to provide that the downpayment be restored within 15 days after the bill for collection is issued to make it consistent with C/CT4.4 and other payment procedures. The restriction that out of pocket expenses must have been incurred during the normal operating season would be removed. Purchasers currently are not reimbursed for out of pocket expenses incurred outside of the normal operating season.

C/CT4.254 – Extension Deposits. The time for making the initial extension deposit would be clarified to make it clear that it is due prior to the Forest Service executing the contract modification, rather than prior to the effective date of the contract term extension, which is often much earlier.

C/CT4.4 – Payments Not Received. The requirement to suspend operations when the credit balance in Timber Sale Account is less than the amount due for timber estimated to be cut in 10 days would be moved from this provision to C/CT4.221.

C/CT5.4# – Road Maintenance. A sentence from B/BT5.4 (which is always inapplicable) would be added to make it clear that maintenance does not include road reconstruction and repairs of an extraordinary nature.

C/CT6.02 – Interruption or Delay of Operations. This provision would be modified to remove the restriction that out of pocket expenses must have been incurred during the normal operating season and to allow unused temporary roads as an out of pocket expense. Purchasers currently are not reimbursed for out of pocket expenses incurred outside of the normal operating season.

C/CT6.36 – Equipment Cleaning. This provision would be modified to clarify that it is administered on a species by species basis. It would also be modified so that the sale area map identifies cutting units infested with weeds, rather than cutting units that are free of infestation. It would be modified to remove the purchaser responsibility to report new infestations of noxious weeds on the haul route. Finally, it would be modified to provide for reimbursing the purchaser if the contract is modified to provide additional protection.

C/CT6.61 – Meadow Protection. This provision would be modified to add a requirement to show protected meadows on the sale area map.

C6.813 – Interrupted or Delayed Scaling Services. The restriction that out of pocket expenses must have been incurred during the normal operating season would be removed. Purchasers currently are not reimbursed for out of pocket expenses incurred outside of

the normal operating season. The provision would also be modified so that if scaling services are interrupted, the purchaser must discontinue hauling, rather than suspend operations. Finally, rather than discontinuing hauling outside of the scaling services schedule, the provision would state that logs will not be presented for scaling outside of this schedule.

C/CT9.31 – Termination for Breach. The paragraph authorizing the Contracting Officer to immediately terminate the contract if the purchaser designates or Marks timber would be removed.

You stated adamantly that we had not informed industry that it was our intent to keep the B section updated with new provisions that are applicable to all contracts. This is a quote of the 2nd paragraph from our October 31, 2000 letter to AFPA. I also gave you a copy of this letter on December 5, 2000:

> "This proposal to revise the contracts is due to changes in computer and word processing technology. **If adopted, in the future, changes in contract provisions that are applicable to all contracts would result in a revised B/BT Division and changes in contract provisions that are applicable in only specific situations would result in new or revised C/CT provisions.** The B/BT Divisions would not be commercially printed, but would be available in electronic format." (emphasis added)

I hope that you are willing to reconsider your position concerning updating the July 2000 contract with C provisions. Perhaps a compromise would be to update the contract with all existing C provisions, then in the future just update the B section for changes in C provisions on an annual basis.

Rex

# BUYER'S GUIDE

## to

## Forest Service Timber Sale Contracts

SECOND EDITION

National Forest Products Association

Exhibit 18

# BUYER'S GUIDE
(Second Edition)
To
FOREST SERVICE TIMBER
SALE CONTRACTS

Form 2400-6 (1970 edition)
Form 2400-6 (1973 edition)
Form 2400-6T (1972 edition)
Form 2400-6T (1973 edition)

**The information appearing herein has been obtained from reliable sources but we do not under any condition guarantee its accuracy. A timber sale contract is a legal document. Persons should refer legal questions to their own attorney.**

Published By

National Forest Products Association
1619 Massachusetts Avenue, N.W.
Washington, D.C. 20036
1974

# CHAPTER I
# INTRODUCTION TO THE SECOND EDITION

The second edition of the *Buyer's Guide* to Forest Service Timber Sale Contracts is designed to inform and help *Purchasers* of National Forest timber understand the intent and the requirements contained in the contracts written on contract forms 2400-6 (1970 edition), 2400-6 (1973 edition), 2400-6T (1972 edition), and 2400-6T (1973 edition). This guide is keyed to the timber sale contract form 2400-6 (1970 ed.), (Applicable to Sales to be Scaled After Felling). Differences between contract form 2400-6 (1970 ed.) and the three other types of contract forms are explained in separate chapters of the guide.

Contract form 2400-6 (1970 ed.) is a result of extended discussions between NFPA's Federal Timber Purchasers Committee and the Forest Service, and represents a complete revision of timber sale contract form 2400-5, issued July, 1965. Contract form 2400-6 (1970 ed.), issued July, 1970 and initially used for contracts advertised after June 30, 1971, is an improved version of its predecessor, and not a departure of the principles established in the old contract form 2400-5.

After only two years of use, contract form 2400-6 (1970 ed.) was revised in 1973 to include required removal of all material meeting *Utilization Standards* from *Sale Area* and to incorporate some of the existing National Division C Provisions in the revised contract's Division B section. The contract was reissued as contract form 2400-6, issue date of September, 1973, and has been in use for most scaled timber sale contracts advertised and awarded since July, 1974.

The old tree measurement contract, form 2400-5T, issued September, 1965, was also subject to extensive revisions at two separate occasions during the past three years. It was revised in 1971 and issued January, 1972 as contract form 2400-6T (1972 ed.), (Applicable to Sales to be Measured Before Felling). In 1973, this contract form, together with contract form 2400-6 (1970 ed.), was modified to incorporate changes of the contract's utilization provisions. The contract was reissued as contract form 2400-6T, issue date of October, 1973, and is now used for most tree measurement contracts awarded since July, 1974.

The first edition of the *Buyer's Guide* is still the appropriate reference for contracts written on contract forms 2400-5 and 2400-5T, which will remain in effect for several years until completed. However, the first edition may confuse rather than help *Purchasers*, if they try to use the

# FEDERAL TIMBER PURCHASERS COMMITTEE

## MONDAY, TUESDAY, & WEDNESDAY
## September 21 - 23, 1998

## Sheraton Four Points Hotel
## North Conway, New Hampshire

Exhibit 19

# *AGENDA*

Monday, September 21 (10:00 am) - FTPC (Industry Only)

| | | TAB |
|---|---|---|
| 1. | Federal Timber Purchasers Committee Membership Roster............................ | 1 |
| 2. | Welcome & Introductions (Crouch) | |
| 3. | Antitrust Statement (Bierer) | |
| 4. | Approval of May 1, 1998 Reno FTPC Meeting Minutes (Crouch)..................... | 2 |
| 5. | C Clause Provisions Eliminating Purchaser Credit (Bierer) | |
| 6 | Road Moratorium Update (Bierer) | |
| 7. | Committee of Scientists Report &New Forest Service Planning Regulations Update (Bierer)............................................................... | 3 |
| 8 | Public Land and Timber Issues Updates (Bierer) | |
| 9. | Results of AF&PA's VISTA Research (Watson & Dewitt) | |
| 10. | New Hampshire Timberland Owners Association Issues (Kingsley) | |
| 11. | Other Business:<br>-Tree measurement vs. scale sales (Simon)<br>-Special project funding (Crouch) | |

HOSTED RECEPTION at 6:30 pm & BANQUET at 7:00 pm

Tuesday, September 22 (9:00 am) - FTPC Joint Meeting With Agencies

| | | |
|---|---|---|
| 1. | Welcome & Introductions (Crouch) | |
| 2. | Antitrust Statement (Bierer) | |
| 3. | Summary of 1999 Forest Service & BLM Timber Sale Plans (Agencies) | |
| 4. | Elimination of Purchaser Credit in FY 1999 (Forest Service) | |
| 5. | FY 1999 Appropriations Items<br>-Restrictions on overhead charges to off-budget accounts<br>-All resources cost reporting to replace TSPIRS<br>-Allocation of timber sale funds to regions with highest likelihood of attaining forest plan goals, objectives, and merchantable volume<br>-More use of scale sales | |
| 6. | Stewardship Contracts (Forest Service) | |
| 7. | Small Diameter Log Utilization (Forest Service) | |
| 8. | Other Business:<br>-Timber Information Manager system briefing (Forest Service).............<br>-Updates on new regulations (Forest Service) | 4 |

Wednesday, September 23 (8:00 am) - FIELD TOUR

1. Leave North Conway, NH
2. Travel to White Mtn. National Forest - Langdon Horn Timber Sale
3. Examine and Discuss Sale and Heavy Ice Damage
4. Travel to Bethel, MN
5. Visit Bethel Furniture Stock Facility
6. Return to North Conway, NH

# FEDERAL TIMBER PURCHASERS COMMITTEE
AND
# NATIONAL FOREST PLANNING COMMITTEE

**THURSDAY, FRIDAY, & SATURDAY**
**APRIL 30 - MAY 2, 1997**

**Peppermill Hotel & Casino**
**Reno, Nevada**

*AGENDA*
*Peppermill Hotel - Reno, Nevada*

Thurs. April 30 (10:00 am) - NATIONAL FOREST PLANNING COMMITTEE MEETING

| | | TAB |
|---|---|---|
| 1. | National Forest Planning Committee Membership Roster........ | 1 |
| 2. | Antitrust Statement........ | 2 |
| 3. | Approval of April 9, 1997 San Antonio NFPC Meeting Minutes........ | 3 |
| 4. | Overview of Committee of Scientists (Roger Sedjo) | |
| 5 | New Planning Regulations (Chris Risbrudt) | |
| 6. | Corporate Resource Information Project (Chris Risbrudt)........ | 4 |
| 7 | Ecoregion Assessment/EIS Updates (Chris Risbrudt)........ | 5 |
| 8. | Interior Columbia Basin Ecosystem Management Project Overview (Andy Brunelle) | |
| 9. | Update on the California Owl EIS (John Hofmann) | |
| 10. | Overview of the Quincy Library Group (Susan Barrymore) | |
| 11. | Other Business | |

Friday, May 1 (1:00 pm) - FEDERAL TIMBER PURCHASERS COMMITTEE MEETING (WITH AGENCIES)

| | | |
|---|---|---|
| 1. | Federal Timber Purchasers Committee Roster........ | 6 |
| 1. | Antitrust Statement | |
| 3. | Approval of October 14, 1997 Cedar City FTPC Meeting Minutes........ | 7 |
| 2. | Phase-out of Purchaser Credits (Bob Lynn) | |
| 3. | Proposal to Delink County Payments from Timber Sale Receipts (Bob Lynn)........ | 8 |
| 4. | Effects of the Roads Moratorium (Bob Lynn) | |
| 5. | FY 1998 Mid-Year Timber Sale Accomplishments (Bob Lynn & Bill Torgersen) | |
| 6. | Updates: | |
| | -Pilot vegetation management projects (Bob Lynn)........ | 9 |
| | -Status of regulation revisions (Bob Lynn) | |
| | -New Forest Service timber sale contract (Bob Lynn) | |
| | -Results of Rynearson study on cruising (Dick Fitzgerald) | |
| | -Chief's watershed/forest health initiative (Bob Lynn) | |
| 7. | Other Business | |

Saturday, May 2 (7:30 am) - Field Tour

1. Collins Pine Mill at Chester, California
2. Quincy Library Group Projects (Lassen National Forest)



# Federal Timber Purchasers Committee

Monday, Tuesday, & Wednesday
October 13 - 15, 1997

Holiday Inn Hotel
Cedar City, Utah

# AGENDA

## FEDERAL TIMBER PURCHASERS COMMITTEE MEETING
TUESDAY, OCTOBER 14, 1997
8:30 am to 5:00 pm
(INDUSTRY MEETING with FOREST SERVICE & BLM)

I. Opening Remarks And Introductions

II. Antitrust Statement

III. Comments By Bob Joslin

IV. FY 1997 Timber Sale Accomplishments & FY 1998 Timber Sale Targets

V. Overview Of Old-Growth Ponderosa Pine Restoration Research By Dr. Wally Covington

VI. Status Of Rulemaking:

-Stumpage Rate Adjustments (SRA)
-Market Related Contract Term Adjustments (MRCTA)
-Contract Cancellation

VII. New Forest Service Timber Sale Contract

VIII. Recommended Forest Service Liability Clause When Purchasers Are Denied Sale Area Access By Third Parties

IX. Other Business:

-Status Of Pilot Project Proposals
-Status Of Non-Harvest Petition
-Summary Of Rynearson Study Re: Scale Sales vs. Tree Measurement Sales
-Cubic Cull Log Rule
-Purchaser Road Credits

X. Adjourn

# FEDERAL TIMBER PURCHASERS COMMITTEE
AND
# NATIONAL FOREST PLANNING COMMITTEE

MONDAY, TUESDAY, & WEDNESDAY
APRIL 7 - 9, 1997

Homewood Suites River Walk
San Antonio, Texas

AMERICAN FOREST & PAPER ASSOCIATION

# MEETING AGENDA

## Tuesday (9:00AM-4:00PM): FTPC - Agencies Joint Meeting

| | | TAB |
|---|---|---|
| I. | Opening Remarks and Introductions | |
| II. | Antitrust Statement | 1 |
| III. | FTPC Membership List | 2 |
| IV. | Approval of October 22, 1996 FTPC Meeting Minutes | 3 |
| V. | Forest Service Efforts To Eliminate Or Minimize Government Financial Liability When Canceling Or Modifying Contracts<br><br>-Changes in Timber Sale Contract "C" Provisions Without Providing Comment Period<br>-Final Rule Combining Two Existing Regulations Covering Contract Modifications to Prevent Environmental Damage or to Conform to Forest Plans<br>-Proposed Rule Limiting Purchasers to Out-of-Pocket Expenses When Canceling or Modifying a Contract | 4 |
| VI. | Proposed SRA and MRCTA Rule Changes | 5 |
| VII. | 1998 Appropriations Issues<br><br>-Heissenbuttel's Testimony<br>-Roads<br>-Forestland Management<br>-Forest Ecosystem Restoration & Maintenance Fund | 6 |
| VIII. | Modification of the Cubic Rule | 7 |
| IX. | Metric Conversion Implementation Plan | 8 |

United States
Department of
Agriculture

Forest
Service

# Timber Sale Contract

Purchaser Timber Products Co.

Sale Name JACK HELI

Award Date 3/2/99

Contract No. 060715

Region FIVE

National Forest KLAMATH

Ranger District SCOTT RIVER

A-610 FS-2400-13(7/70)

FS-2400-6, Page 101 (9/73)

| USDA - FOREST SERVICE<br><br>**TIMBER SALE CONTRACT**<br>(Applicable to Sales to be Scaled After Felling) | | NAME OF PURCHASER TIMBER PRODUCTS COMPANY<br>P. O. Box 766<br>Yreka, CA 96097 | | |
|---|---|---|---|---|
| NATIONAL FOREST<br>Klamath | RANGER DISTRICT<br>Scott River | REGION<br>Five (PSW) | CONTRACT NO.<br>060715 | |
| SALE NAME<br>Jack Heli Timber Sale | | SUBREGION<br>Coast Range | AWARD DATE<br>3/2/99 | TERMINATION DATE<br>03/31/01 |

The parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and Timber Products Company, a partnership consisting of W. A. Atwood, A. J. Austin, and J. H. Gonyea

1 ______

a ______

hereinafter called Purchaser.

2 Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit, was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement; and the parties hereto desiring torecord their agreement; now therefore,

In consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

This contract consists of three Divisions: A - Specific Conditions, B - Standard Provisions, and C - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division C. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division C - Special Provisions.

I **WITNESS WHEREOF**, the parties hereto have executed this contract as of the award date.

UNITED STATES OF AMERICA

BY Edward L. Matthews

Edward L. Matthews, Contracting Officer 3/15/99
(Title)

Two Witnesses:[3]

Amy Wagner
(Name)

P.O. BOX 766 YREKA CA 96097
(Address)

[signature]
(Name)

SAME
(Address)

TIMBER PRODUCTS COMPANY
(Purchaser)[4]

BY Bill T[illegible]

TIMBER PROCUREMENT MANAGER
(Title)

P. O. Box 766, Yreka, CA 96097
(Business Address)

I,[5] ______, certify that I am the ______

Secretary of the corporation named as Purchaser herein; that ______

who signed this contract on behalf of Purchaser, was then ______
of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

______ CORPORATE SEAL[6]

A-611

C6.3# - Plan of Operation. ( 5) Within 60 days of first normal op ting season, Purchaser shall furnish Forest Service a written general plan of operation which shall be in addition to the annual operating schedule required under B6.31. The plan shall set forth planned periods for and methods of road construction, timber harvesting, and completion of slash disposal, erosion control measures and other contractual requirements. Forest Service written approval of the plan of operation is prerequisite to commencement of Purchaser's Operations. Purchaser may revise this plan of operations when necessitated by weather, markets or other circumstances, subject to the written approval of Forest Service. In the event of delays beyond the control of Purchaser which qualify for Contract Term Adjustment, the plan of operations shall be mutually adjusted as necessary to accommodate the adjusted contract period.

C6.311 - Plan of Operation for Road Construction. (6/80) Annually, prior to start of construction, Purchaser shall submit a supplement to plan of operation which shall include a schedule of proposed progress, and a description of planned measures to be taken to provide erosion control for work in progress, including special measures to be taken on any segments of construction not Substantially Completed prior to periods of seasonal precipitation or runoff. When Purchaser proposes a significant deviation from the progress schedule, Purchaser shall submit a revised schedule.

Prior to beginning construction on any portion of Specified Roads identified as sensitive on Drawings, Purchaser and Forest Service shall agree on proposed method of construction.

C6.313# - Limited Operating Period. (1/84) Except when agreed otherwise, Purchaser's Operations shall be limited as follows: No Purchaser's Operations in Unit 31 from March 1 through August 31. No Purchaser's Operations in Unit 57 from February 1 through July 31. No hauling of more than 5 loads per day on Road 41N16 between Jackson Creek and Little Jackson Creek from February 1 through August 31. No hauling of more than 5 loads per day on Road 41N14 in T40N, R9W, Section 20; M.D.M., from February 1 through August 31. No Purchaser's Operations in Units 98, 100, 102, and 104 from May 23 through September 7, or during first 7 days of deer season. Purchaser is required to give Forest Service 30 day's notice before beginning operations in these units.

C6.316 - Helicopter Transport of Forest Service Personnel. (10/30/97) Unless otherwise agreed, Purchaser shall provide helicopter transportation for Forest Service personnel as needed for the purpose of timber designation and contract administration at no charge to Forest Service.

Such helicopters and operators shall be approved for transporting Forest Service personnel under the rules prescribed by Forest Service in Region 5. A copy of these rules are available in the Forest Supervisor's Office, Yreka, CA.

Forest Service and Purchaser shall agree on a transportation schedule which facilitates timely timber designation and contract administration.

The rules shall include Title 5700 of the Forest Service Manual and Forest Service Handbook 5709.12 (Helicopter Operations Handbook).

C6.33 - Safety. (6/78) Unless otherwise agreed in writing, when Purchaser's Operations are in progress adjacent to or on Forest Service controlled roads and trails open to public travel, Purchaser shall furnish, install and maintain all temporary traffic controls which provide the user with adequate warning of hazardous or potentially hazardous conditions associated with Purchaser's Operations. A specific traffic control plan for each individual project shall be agreed to by Purchaser and Forest Service prior to commencing operations. Devices shall be appropriate to current conditions and shall be covered or removed when not needed. Except as otherwise agreed, flagperson and devices shall be as specified in the "Manual on Uniform Traffic Control Devices for Streets and Highways" (MUTCD), and as shown on Drawings, Sale Area Map or in specifications attached hereto.