**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUE LAKE FOREST PRODUCTS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 01-570C<br>(Judge Williams) |
| TIMBER PRODUCTS COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 01-627C<br>(Judge Williams) |
| CLR TIMBER HOLDINGS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 04-501C<br>(Judge Williams) |

**PLAINTIFFS' ADDITIONAL PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Plaintiffs submit the following additional proposed findings of uncontroverted fact, all of which rely entirely upon the district court's opinion in Oregon Natural Resources Council Action v. United States Forest Service ("ONRC Action"), 59 F. Supp. 2d 1085 (W.D. Wash. 1999).

210. The district court in ONRC Action held that the Forest Service's and BLM's actions in issuing and relying upon the "NEPA decision equals implementation" interpretation were "arbitrary and contrary to the plain language of the ROD . . . [and] are unlawful and must be set aside under the APA, 5 U.S.C. § 706(2)(A)." 59 F. Supp. 2d at 1093.

211. The district court in ONRC Action found that "equat[ing] the NEPA decision with the implementation of ground-disturbing activities would arbitrarily exempt a large number of timber sales from the plan's survey requirements. It would also create an incentive to rush NEPA decisions to avoid conducting surveys." 59 F. Supp. 2d at 1093.

212. Summarizing defendant's argument that the "NEPA decision equals implemented" interpretation was reasonable, the district court in ONRC Action said: "Defendants argue that their interpretation is reasonable and entitled to deference because the plan gives them 'a maximum of four full fiscal years (FYs 1995, 1996, 1997, and 1998) in which to develop and apply survey protocols for these species.'" 59 F. Supp. 2d at 1093. The district court rejected the argument, stating, "But that 'maximum [of four full fiscal years referred to in the ROD]' is a ceiling, not a floor, and is consistent with the specific, phased-in requirements stating that surveys must be conducted prior to ground-disturbing activities being implemented after fiscal years 1996 and 1998." Id.

213. The district court in ONRC Action recognized the importance of the site-specific analysis required by the NFP for Category 2 species: "Far from being minor or technical violations, widespread exemptions from the survey requirements would undermine the management strategy on which the ROD depends. The surveys are designed to identify and locate species; if they are not done before logging starts, plants and animals listed in the ROD will face a potentially fatal loss of protection." 59 F. Supp. 2d at 1093.

214. The district court in ONRC Action found the ROD's Category 2 survey requirements to be "clear, plain, and unmistakable." 59 F. Supp. 2d at 1093.

215. The district court in ONRC Action found that the "net result" of the RTV Directive was "to exempt about ninety percent of the red tree voles' habitat, including all of its California habitat, from the survey requirements." 59 F. Supp. 2d at 1094.

216. Summarizing defendant's argument that the RTV Directive was reasonable, the district court in ONRC Action said: "Defendants argue that the protocol is reasonable because where habitat is abundant management of particular red tree vole sites is not necessary, and where populations already are isolated, with no potential for the creation of connective corridors, trying to protect the voles would be futile. Stating that site-specific surveys were adding little to scientific knowledge, and that the risk to species viability from foregoing surveys would be small, the red tree vole memorandum concludes that 'field surveys are not needed' in widespread areas." 59 F. Supp. 2d at 1094.

217. Regarding the legality of the RTV Directive, the district court in ONRC Action concluded, "The decision not to conduct red tree vole surveys in areas where habitat is abundant or isolated has no basis in law. The ROD gives the Forest Service and BLM the discretion to conduct surveys 'at a scale most appropriate to the species' (ROD at C-5), but does not allow the agencies to forgo surveys altogether, or to exempt broad areas from the requirements." 59 F. Supp. 2d at 1094-95.

218. The district court in ONRC Action found that the NFP "requires that surveys be conducted within the [RTV's] '*known or suspected ranges and within the habitat types or vegetation communities associated with' it* . . . [and] provides explicit instruction as to where red tree vole surveys must be conducted." 59 F. Supp. 2d at 1095, 1095 n.8 (emphasis in original). However, the district court concluded that the RTV Directive "adopted by the defendants does exactly the opposite." Id. at 1095. Accordingly, the Court held that the Forest Service's and BLM's actions in issuing and relying upon the RTV Directive were arbitrary and capricious and contrary to law.

Respectfully submitted,

s/Gary G. Stevens

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiffs

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 27, 2008