# In the United States Court of Federal Claims

Nos. 01-570C, 01-627C, 04-501C
(Filed: January 21, 2010)
(Not for Publication)

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                            *
TIMBER PRODUCTS COMPANY,                    *
                                            *
                Plaintiff,                  *
                                            *
        v.                                  *
                                            *
UNITED STATES OF AMERICA,                   *
                                            *
                Defendant.                  *
                                            *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE TRIAL EXHIBITS**

**WILLIAMS**, Judge.

      This matter comes before the Court on Defendant's motion to strike seven of Plaintiff's exhibits from the record.[1] Defendant objects to the admissibility of exhibits containing the prior testimony of three government witnesses which the Court conditionally admitted as admissions by a party-opponent under Fed. R. Evid. 801(d)(2)(D). Def.'s Opp'n to the Admission of Pl.'s Trial Exhibits 163A, 164A, 165A, 166A, 167A, 169A, and 170A as Party Admissions ("Def.'s Opp'n"). Defendant argues that the subject matter of the prior testimony of Ms. Susan Zike, Mr. Ted Boling, and Mr. Tom Hussey, the three witnesses in question, is outside the scope of their employment and thus not admissible pursuant to Rule 801(d)(2)(D). Defendant further argues that such testimony, even if nonhearsay, is cumulative or inconsistent with the common law preference for live testimony.

      For the reasons stated below, Defendant's motion to strike is denied.

---

[1] Given the volume of the contents of these exhibits -- some 347 pages -- the Court conditionally admitted the exhibits at trial but permitted Defendant to move to strike these exhibits post-trial.

**Background**

Plaintiff brings this action alleging breach of its timber sale contract by the United States Forest Service. Plaintiff claims that the Government acted unreasonably in provoking the suspension of the contract because it awarded the timber sales without performing requisite environmental surveys. Specifically, Plaintiff claims that the Government knew and failed to disclose that the sales were "at risk" due to the pendency of a district court action challenging the Government's determination that such surveys were unnecessary. Plaintiff claims that Defendant knew that its interpretation of law which led it to forego the surveys was not likely to prevail in the pending litigation, and acted unreasonably in awarding the contracts in the face of this knowledge.

Prior to this action, the United States District Court for the Western District of Washington found that the Government's interpretation of law and failure to perform the surveys was unreasonable. Oregon Natural Res. Council Action v. United States Forest Service, 59 F. Supp. 2d 1085 (W.D. Wash. 1999) ("ONRC Action"). The Forest Service was enjoined from allowing operations on various timber sale sites, including the sites on which Plaintiff was operating. The Forest Service suspended performance on those sites and then negotiated a settlement with the environmental plaintiffs in the District Court action, agreeing to maintain the suspensions until the surveys had been conducted. As a result, Plaintiff was barred from operating its timber sale for 11 months before it filed a timely claim under the Contract Disputes Act seeking costs for replacement timber and lost profits.

Trial was held in Portland, Oregon, from September 22, 2009, to October 2, 2009, and Plaintiff proffered the prior testimony of Ms. Zike and Messrs. Hussey and Boling. The prior testimony of Ms. Zike details her knowledge of various decisions and strategies discussed among the DOJ attorneys and Forest Service personnel in conjunction with the ONRC Action litigation. The prior testimony of Mr. Hussey concerns his role in the development of the "NEPA decision equals implementation" interpretation which led to the ONRC Action litigation. Finally, the prior testimony of Mr. Boling concerns the government's conduct in the ONRC Action litigation, in which Mr. Boling was lead counsel.

**Discussion**

**The Prior Testimony As Admissions Against A Party-Opponent**

Federal Rule of Evidence ("FRE") 801(d)(2)(D) provides that "a statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." In applying the rule, it is "'widely accepted that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility.'" Globe Sav. Bank v. United States, 61 Fed. Cl. 91, 96-97 (2004) (quoting Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (7th Cir. 2003)); Yankee Atomic Elec. Co.

v. United States, No. 98-126C, 2004 WL 2450874, at *8 (Fed. Cl. 2004); 2 Charles McCormick, McCormick on Evidence § 254, at 137 (John W. Strong ed., 5th ed. 1999). Admissions are not considered exceptions to the general rule against hearsay, but are "classed as nonhearsay, and excluded from the hearsay rule." Globe Sav. Bank, 61 Fed. Cl. at 94; see First Annapolis Bancorp, Inc. v. United States, 72 Fed. Cl. 369, 376 (2006).

As the court in United States v. United Shoe Machinery Corp. explained:

> The hearsay rule is a feature of the adversary system of the common law. It allows a party to object to the introduction of a statement not made under oath and not subject to cross-examination. Its purpose is to afford a party the privilege if he desires it of requiring the declarant to be sworn and subjected to questions. That purpose does not apply, and so the hearsay rule does not apply, where the evidence offered against a party are his statements.

89 F. Supp. 349, 352 (D. Mass. 1950).[2]

In order to be admissible under Rule 801(d)(2)(D), the statement must be offered against a party and (1) must be the statement of the party's agent or servant, (2) must concern a matter within the scope of the agency or employment, and (3) must have been made during the existence of the agency or employment relationship. Long Island Sav., 63 Fed. Cl. at 163 n. 9. The second requirement, which is the one in contention here, requires that the admission concern a matter within the scope of the witness' employment, i.e., that "the subject matter of the admission match the subject matter of the employee's job description." Long Island Sav., 63 Fed. Cl. at 164.[3]

---

[2] As a preliminary matter, Defendant contends that, because these three witnesses gave live testimony at trial, their depositions and prior testimony in the Scott Timber trial should not be admitted, citing the "common law's preference for live testimony." Tr. 187:9-191:10, 371:1-374:7, 839:11-853:4, 1066:19-1068:24. As the court held in Long Island Savings, however, "[the profferor] need not demonstrate that any of the declarants whose deposition testimony it seeks to admit at trial [as admissions by party-opponent] will be unavailable as witnesses at trial." 63 Fed. Cl. at 164. Rather, if a written statement is admissible under the evidence rules, it is not excludable on the grounds that the statement could also have been presented in the form of live oral testimony. See Globe Sav. Bank, 61 Fed. Cl. at 95; Wisconsin Elec. Power Co. v. United States, 2007 WL 5209538, at *13 (Fed. Cl. 2007) (citing Rodriguez v. United States, 69 Fed. Cl. 487, 494 n.8 (2006)).

[3] The Government concedes that, at the times of their prior testimony, all three witnesses were employees of the United States -- thus, elements (1) and (3) are met here. See Def.'s Opp'n at 4.

**Prior Testimony of Ms. Susan Zike**

The prior testimony of Ms. Zike, found in Exhibits 163A-165A, concerns her involvement in various litigation decisions made by Forest Service ("FS") and Department of Justice ("DOJ") staff regarding the <u>ONRC Action</u> litigation, where she addressed and transmitted DOJ's and agency counsel's views regarding the risks of taking certain legal positions and coordinated among counsel and agency personnel deliberating on which course of action to take. Tr. 394-95; PX 163A at 1165:2-16.

Ms. Zike holds a J.D. from Northwestern School of Law and was employed by DOJ as the Regional Litigation Coordinator for the Pacific Northwest Region (Region 6) of the Forest Service in Portland, Oregon. Tr. 107-08, 396; Zike Dep., Jan. 4, 2007 at 6; Decl. of Susan M. Zike (Oct. 14, 2005) ¶ 1. Ms. Zike's position is titled "Paralegal Specialist," and her position description states that an individual in this position "serves as the Regional Litigation and FOIA Coordinator responsible for <u>preparing Regional evaluations to legal challenges resulting from lawsuits</u> against the Agency . . . ." PX 190 at 8 (emphasis added). The primary duties of the Litigation Coordinator consist of acting as a liaison between the DOJ, the Department of Agriculture, and multiple Forest Service offices in connection with lawsuits filed against the Forest Service in Region 6. <u>Id.</u> at 2-3. The position also required Ms. Zike to confer with agency and trial counsel, prepare litigation reports and give recommendations for their use, and provide Forest Service officials with information on potential or current litigation, legal strategies, and case assessments. <u>Id.</u> Ms. Zike began working on the <u>ONRC Action</u> lawsuit shortly after it was filed and was designated by the Regional Foresters for Regions 5 and 6 as the "primary Forest Service contact in the field for the Department of Justice" in mid-July 1998. PX 190 at 3; <u>see also</u> <u>Blue Lake Forest Prods. Inc. v. United States</u>, 75 Fed. Cl. 779, 796 (2007).

At the times of her depositions on January 4, 2007, and August 20-21, 2007, and her trial testimony in <u>Scott Timber Inc. v. United States</u>, 86 Fed. Cl. 102 (2009), on July 9-10, 2008, Ms. Zike was employed as a litigation coordinator. Tr. 385:12-386:7, 389:4-10; PX 163A at 1160:13-1162:7. As Ms. Zike and others testified, her duties at the time of the <u>ONRC Action</u> suit included providing information and recommendations for action to and from Forest Service decisionmakers on the timber sales and the DOJ attorneys handling the <u>ONRC Action</u> litigation, and transmitting direction to the <u>ONRC Action</u> coordinators and others in the field, including the contracting officer, Ed Matthews.

Defendant claims that because Ms. Zike served as a paralegal and litigation coordinator, and thus "did not . . . have a role in making decisions for the [Forest Service]," her statements regarding the government's conduct in the <u>ONRC Action</u> litigation are not admissions of the Government. Def.'s Opp'n at 4-5.[4] The Court disagrees. It is well established that in order for a

---

[4] The bulk of Ms. Zike's prior testimony concerns her role in "passing along" information among legal and non-legal staff, such as requests from the DOJ to notify potential bidders that certain sales were implicated in the <u>ONRC Action</u> litigation. PX 163A at 1200:18-1202:13.

4

statement to be within the scope of employment, the employee generally must play some role in the decision-making process regarding the subject matter; however, direct authority or control over the subject matter is not required. See Carter v. Univ. of Toledo, 349 F.3d 269, 276 (6th Cir. 2003) (vice provost had no authority in a race-based firing, but ensuring compliance with the school's affirmative action policies was within the provost's duties); see also Simple v. Walgreen Co., 511 F.3d 668, 672 (7th Cir. 2007) (declarant was not involved in employment decision, but was consulted leading up to the decision); Williams v. Pharmacia, Inc., 137 F.3d 944, 950-51 (7th Cir. 1998), Zaben v. Air Prods. & Chemicals, Inc., 129 F.3d 1453, 1456-57 (11th Cir. 1997), United States v. Rioux, 97 F.3d 648, 660-61 (2d Cir. 1996) (the declarant "need only be an advisor or other significant participant in the decision-making process that is the subject matter of the statement").

As the Seventh Circuit held in Williams, "[w]e are reluctant to . . . read into the rule a generalized 'personal involvement' requirement, especially in light of the Advisory Committee's admonition that the 'freedom which admissions have enjoyed . . . calls for generous treatment of this avenue to admissibility.'" 137 F.3d at 950 (quoting Fed. R. Evid. 801(d) advisory committee note (2)). Thus, if the witness played a significant role in the subject matter of his or her testimony, such testimony would be "within the scope of [his or her] agency or employment," regardless of whether that witness was directly involved in the action in question. Fed. R. Evid. 801(d)(2)(D).

Defendant objects to testimony where Ms. Zike provides insight into and describes various factual and legal developments in FS litigation, particularly the ONRC Action litigation, such as her discussion of a press release from the ONRC Action plaintiffs or the DOJ's position on defending certain Forest Service actions. Def.'s Opp'n at Appendix A 1-3; PX 163A 1233:14-1239:4; 1256:4-1258:15. While Ms. Zike did not possess authority to decide the direction of the ONRC Action litigation or timber sales awards, her role as Regional Litigation Coordinator required that she be familiar with and provide insight into all ongoing litigation, both among legal and non-legal staff, and provide evaluations of and recommendations for litigation strategies that would be implemented by DOJ and FS legal staff. Tr. 394-95; PX 163A at 1165:2-16. Because Ms. Zike was directly involved in the legal strategy discussions between the DOJ and FS with respect to the ONRC Action litigation and provided analysis as to how litigation decisions would affect FS operations, she was closely involved in the "decision-making process," and as such, her testimony regarding that process is within the scope of her employment and admissible as an admission by a party-opponent under Rule 801(d)(2)(D).

### Prior Testimony of Messrs. Boling and Hussey

Defendant argues that Plaintiff failed demonstrate that the prior testimony of Messrs. Boling and Hussey was within the scope of their employment. Def.'s Opp'n at 5.

---

This testimony is clearly within the scope of her employment.

The prior testimony of Mr. Boling is found in Exhibits 166A and 167A, which contain his deposition and trial testimony in Scott Timber concerning his role in the ONRC Action litigation. At the time of Mr. Boling's deposition on August 24, 2007, and at the time of his Scott Timber trial testimony on June 30, 2008, he was employed by the United States as Deputy General Counsel of the Council on Environmental Quality ("CEQ"), an agency of the Executive Office of the President. Tr. 62:3-23, 64:1-65:20; PX 166A at 136:24-137:5. Mr. Boling's prior testimony involves his prior position as lead counsel for the Government in the ONRC Action litigation. In his prior testimony, Mr. Boling discusses his role in that litigation, as well as his involvement in and reaction to the "NEPA decision equals implementation" interpretation. PX 166A at 166:2-169:9. As Plaintiff correctly argues: "Mr. Boling testified about conduct while he was the chief trial attorney for the United States in the ONRC Action litigation. The fact that he was in a different position at the time that he testified in the earlier cases does not diminish that." Tr. 189. Thus, inasmuch as the prior testimony offered by Plaintiff concerns Mr. Boling's role in and knowledge of that litigation, such testimony is within the scope of Mr. Boling's employment and is an admission by party-opponent.

Similarly, Mr. Hussey at the time of his deposition on January 4, 2007, and his Scott Timber trial testimony on July 7, 2008, was employed by the United States as a planner for the Forest Service. Tr. 1070:7-1071:12; PX 169A at 691:19-692:1. All of Mr. Hussey's testimony relates to the development of "NEPA Decision Equals Implementation," in which Mr. Hussey played an "intimate" role as a planner for the Forest Service. Pl.'s Post-Trial Br. at 8, n.5. He was part of the Issue Resolution Team ("IRT") for the FS, which was created to handle questions from the Regional Ecosystem Office ("REO") regarding interpretation of the Northwest Plan. PX 169A at 696:11-697:13. In the event that the IRT was unable to answer a question, Mr. Hussey and the other members of the IRT would provide their analysis and recommendations to higher managers and eventually the "decision-makers" at the Federal officer level. Id. at 700:12-23. Because all of Mr. Hussey's prior testimony concerns his role on the IRT and his interpretation of Northwest Plan and this testimony falls within the scope of his employment.

**Defendant's Rule 403 Cumulative Evidence Objection**

Defendant argues that, even if the prior testimony is admissible as admissions of the Government, such testimony is cumulative of the live testimony given at trial in this case, and is therefore unnecessary and inadmissible pursuant to Rule 403. Def.'s Opp'n at 5-6. The Court disagrees. The evidence proffered by Plaintiff is not so duplicative of other evidence admitted at trial as to substantially outweigh its probative value. See United States v. Jamil, 707 F.2d 638, 643 (2d Cir. 1983); United States v. Davis, 639 F.2d 239, 243-44 (5th Cir. 1981).

**Defendant's Counter-Designations**

Defendant requests that, in the event Plaintiff's proffered exhibits are admitted into evidence, certain counter-designations from those exhibits be entered, as well. Def.'s Opp'n at 5. As Plaintiff does not object, the following counter-designations will be admitted: PX 163A 1183:7-1183:21, 1305:9-1305:12, and 1393:4-1393:22; PX 166A 276:7-276:13.

**Defendant's Requests to Strike Additional Testimony and Exhibits**

Defendant requests "in the interest of judicial economy" that the Court "strike from the record any prior testimony not relied upon by plaintiff in its post-hearing brief." Def.'s Opp'n at 6. However, Defendant provides no support for its request, and retaining in the record evidence not expressly cited by Plaintiff in its Post-Trial Brief will not impede resolution of this matter or amorphous notions of judicial economy.

Defendant next argues that "testimony that refers to exhibits not offered into evidence in the recent trial" likewise should be stricken from the record. Def.'s Opp'n at 6. Defendant asserts that, because certain exhibits were not identified on Plaintiff's exhibit list, testimony referencing those exhibits should not be admitted. Id. at 6-7. Many of the exhibits to which Defendant objects were actually admitted into evidence at trial, albeit under newly assigned exhibit numbers. Pl.'s Post-Trial Br. at 10-11.[5] As to those exhibits, Defendant's request is denied.

Plaintiff admits that deposition exhibits 41A, 44, 46, 53, 82C, 103, and 115, and Scott Timber trial exhibits PX 116, 125, and 128 were not admitted into evidence during trial. Pl.'s Post-Trial Br. at 11. However, such exhibits were not offered into evidence by Plaintiff as Defendant asserts, but were simply referenced in the prior testimony of Ms. Zike and Messrs. Hussey and Boling. As such, any references to such exhibits are part of the witnesses' admissions by a party-opponent and will not be excluded.[6]

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendant's Motion to Strike Plaintiff's Trial Exhibits 163A, 164A, 165A, 166A, 167A, 169A, and 170A.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**JUDGE**

---

[5] Scott Timber PX 24, 29, 39, and 82 were admitted at trial as JX 9, JX 10, PX 66, and PX 80, respectively. Additionally, Scott Timber Deposition Exhibits 21, 42, and 51 were admitted as PX 41, PX 80, and DX 171, respectively.

[6] Plaintiff withdrew testimony relating to those exhibits, addressing matters associated with Blue Lake's Happy Thin timber sale, which was settled in principle before trial commenced. Pl.'s Post-Trial Br. at 12. As such, the Court strikes the following portions of testimony from the record: PX 164A: 195:6-196:5, 196:15-21, 246:25-247:1, 247:11-248:2, 249:15-25, 262:23-265:1; PX 165A: 35:24-36:31, 39:12-40:15, 43:5-20, 50:6-11, 52:15-19, 53:11-16, 56:12-21; from PX 166A: 202:20-203:21, 204:2-206:24, 208:2-211:15, 212:16-215:12, 215:25-218:3, 218:10-21, 219:2-221:5, 223:4-224:16, 229:21-231:2, 231:7-231:25, 254:8-20, 254:24-255:25, 259:4-23. Pl.'s Post-Trial Br. at 12.